## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHARLES NEGY,

    *Plaintiff,*

v.                                                              CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; S. KENT BUTLER,
individually and in his official capacity;
ALEXANDER CARTWRIGHT,
individually and in his official capacity;
TOSHA DUPRAS, individually and in
her official capacity; MICHAEL
JOHNSON, individually and in his
official capacity; NANCY MYERS,
individually and in her official capacity,

    *Defendants.*

_____/

### DEFENDANTS' DISPOSITIVE MOTION TO DISMISS, OR ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE PUNITIVE DAMAGES

        Defendants, Board of Trustees of the University of Central Florida ("Board"), S. Kent Butler, Alexander Cartwright, Tosha Dupras, Michael Johnson, and Nancy Myers ("Individual Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(e), respectfully request this Honorable Court to render an Order dismissing Plaintiff's Complaint in its entirety against the Board and the Individual Defendants, or alternatively, dismissing the entire Complaint as a shotgun pleading and directing Plaintiff to file a more definite statement, and striking the punitive

damages claim as more specifically set forth below, and in support of same, state[1]:

## I.    <u>Background</u>

Plaintiff, Charles Negy, is an Associate Professor of Psychology at the University of Central Florida ("UCF"). Plaintiff has sued UCF's Board, the 13-member board that governs UCF, and the Individual Defendants, current and former UCF officials, whom he alleges were responsible for his termination in January 2021. (Doc. 1 at 21). Plaintiff arbitrated his termination under the Collective Bargaining Agreement between UCF and the United Faculty of Florida ("CBA"), which resulted in his full reinstatement with back pay, tenure, and benefits from the date of his termination. (Doc. 1 at 24).

Here, Plaintiff seeks to re-litigate the same facts grieved in arbitration in an attempt to collect damages beyond what was bargained for in the CBA and awarded at arbitration.  In doing so, Plaintiff asserts two constitutional claims under 42 U.S.C. §1983 for alleged violations of his free speech rights under the First and Fourteenth Amendments and retaliation for his constitutionally-protected speech, or more specifically, comments he posted on Twitter (Counts I and II). (Doc. 1 at 25-28).

Plaintiff also asserts a state law claim in Count III against the Board for negligence.  That claim is premised on the Board's alleged breaches of UCF's duty to ensure it complies with "laws, rules, regulations, and requirements," which primarily

---

[1] Plaintiff filed his Complaint and Demand for Jury Trial (Doc. 1) on April 12, 2023. The Wavier of Service of Summons was sent to the Board on April 12, 2023 and the Individual Defendants on April 26, 2023. All Defendants waived service on April 26, 2023. Under Rule 4(d)(3), the deadline for the Board to respond to the Complaint is June 12, 2023 and the deadline for the Individual Defendants to respond to the Complaint is June 26, 2023. As such, this Motion filed on behalf of all Defendants timely responds to the Complaint.

stem from its duties under the CBA. (Doc. 1 at 31-34).

In Count IV, Plaintiff asserts a state law claim for intentional infliction of emotional distress ("IIED") against the Board, Myers, and Dupras. (Doc. 1 at 34).  In this claim, Plaintiff asserts the Board is liable for the negligent or wrongful acts of its employees. (Doc. 1 at 34).  Plaintiff alleges Myers subjected him "to more than 8 hours of repetitive and harassing questions," denied him information he "needed to prepare for that interrogation, . . . charge[d] him with providing false information during an investigation," and "allowed her investigation to drag on for months without providing Plaintiff any information about the cause of the repeated delays . . .." (Doc. 1 at 35).  As to Dupras, Plaintiff alleges she not only terminated him, but "intentionally and maliciously" denied him six months' notice of his termination by "purposely distort[ing] an inapplicable section" of the CBA that permits termination without notice when "continued employment would 'jeopardize the safety or welfare of . . . students.'" (Doc. 1 at 36).  Plaintiff also alleges Dupras "tormented Plaintiff by treating him like a common criminal, requiring him to be escorted by campus police while retrieving his belongings and informing him that any university property not returned within 48 hours 'will be considered stolen.'" (Doc. 1 at 36).

Finally, Plaintiff asserts a state law claim for abuse of process against the Board, Myers, Dupras, Cartwright, and Johnson. (Doc. 1 at 38-40).  Again, Plaintiff alleges the Board is liable for the negligent or wrongful acts of its employees, but claims the actions of the individual defendants were committed "in bad faith or with malicious purpose." (Doc. 1 at 38). Plaintiff claims Myers and Dupras "willfully and

intentionally misused" the school's Prohibition of Discrimination, Harassment and Related Interpersonal Violence and the CBA "to retaliate against Plaintiff for his expression of views of Twitter," and that the Board permitted such retaliation. (Doc. 1 at 38-39). As to Cartwright and Johnson, Plaintiff claims they "made public statements implying that Plaintiff would face consequences for his constitutionally-protected tweets," and retaliated against him by "posting a public solicitation on UCF's website inviting people to lodge complaints about Plaintiff's classroom conduct, even anonymously[,] . . . with the expectation that at least some of the many students loudly demanding that Plaintiff be fired for his tweets would file complaints." (Doc. 1 at 39). Plaintiff appears to seek compensatory and punitive damages, as well as declaratory and injunctive relief, against all Defendants. (Doc. 1 at 40).

## II.    **Summary of the Argument**

Plaintiff's Complaint is subject to fatal procedural and substantive deficiencies. According to the Complaint's caption, Plaintiff has sued the Individual Defendants in both their individual and official capacities, but he does not identify any particular official capacity claim in his Complaint. Nor does he identify the particular types of relief sought against each named Defendant. In addition, Plaintiff incorporates each of the 102 paragraphs of factual allegations into each of his five causes of action. As such, the Complaint is subject to dismissal as a shot-gun pleading. Further, Plaintiff does not have standing to seek prospective injunctive relief as his claim is strictly limited to alleged past violations of his constitutional rights. His claims have been remedied through arbitration and he has not alleged the violations are ongoing.

The Board should be dismissed from this suit in its entirety based on the immunities conferred by the Eleventh Amendment to the United States Constitution, as well as Section 768.28, *Florida Statutes,* and the Individual Defendants sued in their individual capacities should be dismissed based on qualified immunity. Moreover, the claims asserted against the Individual Defendants in Counts IV and V should be dismissed with prejudice for failure to state a claim as Plaintiff has not and cannot assert all of the elements of these claims. In the alternative, Defendants move this Court to order Plaintiff to file a more definite statement based on the shotgun pleading grounds and request that any claim for punitive damages against the Board be stricken.

## III.    <u>Argument</u>

### A.    General Deficiencies Applicable to all Counts

**i.    The Complaint should be dismissed as a shotgun pleading or, alternatively, this Court should order Plaintiff to file a more definite statement.**

A "shotgun" pleading fails "to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Plaintiff's Complaint should be dismissed as a shotgun pleading for two reasons.

First, Plaintiff asserts five causes of action, each of which incorporate all 102 paragraphs of factual allegations. (Doc. 1 at ¶¶103, 117, 129, 143, 160). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath

innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001).  Plaintiff's Complaint is a perfect example of a shotgun pleading "in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *c.f., Phillips v. FedEx Ground Package Sys., Inc.*, 2020 WL 10458522, at *1 (declining to dismiss complaint that "[a]lthough not perfectly pled, . . . separates each claim for relief into separate counts, incorporates only the facts for each claim, and includes facts relevant to Defendant's allegedly discriminatory conduct.").

Second, the Complaint indicates the Individual Defendants are sued both in their individual and official capacities (Doc. 1 at 1 and ¶¶9-13), but throughout his five causes of action, Plaintiff asserts only claims against them in their individual capacity. (Doc. 1 ¶¶103-69).  A court must be able to determine whether a plaintiff is suing defendants in their individual or official capacities to ensure those defendants have received sufficient notice with respect to the capacity in which they are sued. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33TBM, 2016 WL 3196474, at *6 (M.D. Fla. June 9, 2016); *Huggins v. Sch. Dist. of Manatee Cnty.*, No. 8:22-CV-1183-WFJ-TGW, 2022 WL 2343057, at *4 (M.D. Fla. June 29, 2022). Plaintiff's failure to distinguish which, if any claims, are directed against the Individual Defendants in their official capacity renders his Complaint a shotgun pleading, warranting dismissal.

Alternatively, Defendants respectfully request the Court to direct Plaintiff to file

a more definite statement[2] that: (i) contains a short and plain statement of each claim and the specific supporting factual allegations for each claim; (ii) incorporates into each Count just the factual allegations relevant to each such Count; and (iii) either identifies which claims are made against the individual Defendants in their official capacity or dismiss the individuals in their official capacity from this proceeding.

### ii.   Plaintiff lacks standing to seek injunctive relief against the Board or the Individual Defendants in their official capacity.

To meet the case or controversy requirement of Article III, Plaintiff must assert "some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *O'Shea v. Littleton*, 414 U. S. 488, 493 (1974); *see also Jacobs v. The Fla. Bar*, 50 F.3d 901, 903 (11th Cir. 1995). A plaintiff seeking to invoke a federal court's jurisdiction must demonstrate three things to establish standing under Article III: injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). More specifically, the asserted injury must arise out of the invasion of a legally protected interest that is sufficiently concrete and particularized, rather than abstract and indefinite. *See id.*

Plaintiff here lacks standing to seek prospective injunctive relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), because he does not and cannot allege that

---

2 Alternatively, Rule 12(e) provides that a party may move for a more definite statement if a "pleading to which a responsive pleading is allowed . . . is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  Although "motions for more definite statement are disfavored," they are "appropriate in response to a 'shotgun' pleading." *Doctrine v. Equifirst Corp.*, No. 1:09-CV-1389-RWS-RGV, 2009 WL 10712214, at *6 (N.D. Ga. Dec. 3, 2009), report and recommendation adopted *Ambrose Doctrine v. EquiFirst Corp.*, No. 1:09-CV-1389-RWS, 2010 WL 11647670 (N.D. Ga. Jan. 22, 2010).

there is an actual or imminent injury this Court could redress.  In *Lyons*, the Supreme Court declared that, in most cases, a plaintiff seeking injunctive relief under Section 1983 must allege that he or she will be subject again to the challenged conduct. *See id.* at 102. Absent such allegations, the Court held that a plaintiff does not have standing to seek an injunction, and thus, that aspect of the case is not justiciable. *See id; Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir. 1984). Instead, "[a] threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citations omitted).

Here, Plaintiff pleads 25 pages of factual allegations that he admits were remedied through arbitration. (Doc. 1 ¶96). Plaintiff fails, however, to allege any continuing constitutional violation or inability to currently exercise his constitutional rights.[3] Moreover, because he seeks declaratory and injunctive relief, "the injury-in-fact requirement insists that . . . [he] allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Strickland v. Alexander*, 772 F.3d 876, 887 (11th Cir. 2014) (citations omitted). "This is because injunctions regulate future conduct only. . . . So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury." *Id.*

In addition, as pleaded, the injunctive relief Plaintiff seeks would be nothing

---

[3] To the contrary, since his reinstatement at UCF, Plaintiff has actively engaged in expressing his personal views via his personal twitter account, as referenced in the Complaint.  (Doc. 1 ¶¶ 2, 3, 17); https://twitter.com/charlesnegy/.

more than an "'obey the law' injunction," which is "unenforceable." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1222–23 (11th Cir. 2000); *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999). Therefore, Plaintiff fails to properly assert an actual or imminent injury in fact sufficient to establish standing under Article III for injunctive relief.

**B.  The Board and the individual defendants sued in their individual capacities should be dismissed from this action in their entirety based on Eleventh Amendment Immunity and Qualified Immunity.**

**i.  The Board[4] should be dismissed with prejudice from Counts I and II based on Eleventh Amendment Immunity.**

Plaintiff's Complaint raises both federal constitutional claims and state law tort claims against the Board. This Court lacks jurisdiction to hear either type of claim. UCF is a Florida state university and political subdivision of the State of Florida. *See* Fla. Stat. §§ 1000.21(6)(g), 1004.67, 1001.63. Under the Eleventh Circuit's "arm of the state" test, the Board is entitled to Eleventh Amendment immunity as UCF is an instrumentality of the state. *See Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc.,* 861 F.3d 1234, 1235 (11th Cir. 2017). Rule 12(b)(1) enables a defendant to move to dismiss a complaint for lack of subject matter jurisdiction based on Eleventh Amendment immunity. Fed. R. Civ. Pro. 12(b)(1); *Smith v. Avino*, 91 F.3d 105, 107 (11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

The Eleventh Amendment has been interpreted to bar suits against a state, state

---

[4] As explained above, it is unclear to what extent the Individual Defendants have been sued in their official capacity. To the extent any of Plaintiff's claims are made against the Individual Defendants in their official capacity, they are also entitled to Eleventh Amendment immunity.

agency, or state official acting in their official capacity in federal court by its own citizens, as well as those of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). But three exceptions—none of which apply here—allow suits against a state, state agency, or state officials: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex Parte Young*[5] doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1301 (11th Cir. 2007); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–42 (11th Cir. 1999) (applying *Ex Parte Young*).

"In Florida, sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). However, Section 768.28, *Florida Statutes*, provides a very narrow waiver of the State's sovereign immunity, only as to certain actions. And in *Hill v. Dep't. of Corr.*, the Florida Supreme Court held that Section 768.28 was not intended to waive immunity for "constitutional torts." 513 So.

---

[5] Based on a good-faith conferral with Plaintiff's counsel prior to filing this Motion, Defendants anticipate Plaintiff will argue *Ex Parte Young*, 209 U.S. 123 (1908) allows the Board, as an arm of the state, to be a defendant in an action for prospective injunctive relief. However, Plaintiff's argument that "*Ex parte Young* extends not only to state officials sued in their official capacities for prospective relief, but to States and state agencies . . . is simply incorrect. The theory behind *Ex Parte Young* is that 'a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment. The exception does not extend to the state or state agencies." *Camm v. Scott*, 834 F. Supp. 2d 1342, 1348 (M.D. Fla. 2011) (internal citations omitted); *Eubank v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006).

Further, there is no "prospective relief" available against either the Board or the Individual Defendants in their official capacity as there is no ongoing constitutional violation and the Plaintiff's efforts to litigate a past event do not fall within the *Ex Parte Young* doctrine. *See supra* Section A(ii).

2d 129, 133 (Fla. 1987); *Lafleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832, at *6 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3725243 (M.D. Fla. Aug. 23, 2021) (citing *Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA 1997)). "While Florida is at liberty to waive its immunity from section 1983 actions, it has not done so. The recovery ceilings in section 768.28 were intended to waive sovereign immunity for state tort actions, not federal civil rights actions commenced under section 1983." *Hill*, 513 So.2d at 129; s*ee also Shuler v. Bd. of Trustees of Univ. of Ala.*, 480 Fed. Appx. 540, 544 (11th Cir. 2012) (affirming district court's judgment in favor of board of trustees because it was entitled to Eleventh Amendment immunity).

Nor has Congress abrogated the Board's Eleventh Amendment immunity for Section 1983 claims.  To the contrary, the United States Supreme Court has clearly and unambiguously held that "a State is not a person within the meaning of § 1983." *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.").

Finally, to the extent Plaintiff attempts to assert claims against the individual defendants in their official capacities under *Ex Parte Young*, Plaintiff has failed to allege an ongoing violation of federal law that could be remedied by prospective injunctive relief. Accordingly, the Board and the Individual Defendants in their official capacity should be dismissed, with prejudice, from Counts I and II under Section 1983 as they are clearly and unambiguously entitled to Eleventh Amendment sovereign immunity.

ii.    **The Individual Defendants should be dismissed with prejudice**

**from Count I and Defendant Myers should be dismissed with prejudice from Count II based on qualified immunity.**

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000) (citations omitted). Qualified immunity may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334,1337 (11th Cir. 2002) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

The question of qualified immunity should be resolved in the defendant's favor on a motion to dismiss if the plaintiff fails to allege the violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232–33 (1991); *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997). This is a question of law, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Williams,* 102 F.3d at 1182. To obtain qualified immunity, the defendant must first establish that he acted within his discretionary authority; "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations omitted). Here, the Complaint's allegations clearly show that each of the Individual Defendants took action as UCF senior employees and acted within their discretionary authority.

When there is no dispute that a state officer was acting in his or her discretionary

capacity, the burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). Overcoming the official's qualified immunity defense ordinarily involves a two-part inquiry: "(1) [whether] the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated; and (2) whether the right violated was clearly established." *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011).

For Plaintiff to show his Free Speech rights were violated, he must, in accordance with the balancing test in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will. Cnty., Illinois*, 88 S.Ct. 1731, 1734–35 (1968), allege and show by a preponderance of the evidence that: (1) his speech is on a matter of public concern; (2) his First Amendment interest in engaging in the speech outweighs UCF's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" UCF's decision to discharge Plaintiff. If he succeeds in showing these factors, UCF must prove by a preponderance of the evidence that (4) it would have reached the same decision even in the absence of the protected conduct. *Leslie v. Hancock Cnty. Bd. of Educ.,* 720 F.3d 1338 (11th Cir. 2023).

Because *Pickering* employs a balancing test rather than a bright-line rule to determine when a public employee's right to free speech is violated, "the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989). In this case,

Plaintiff has not alleged, nor can he allege, sufficient facts to show his free speech rights as an employee override UCF's interest in maintaining an efficient and non-disruptive work environment. The Complaint clearly shows the disruption caused to UCF as a result of Plaintiff's comments was substantial. As such, Plaintiff cannot allege that his constitutional rights have been violated.

Even assuming Plaintiff is able to allege a violation of his First Amendment rights under *Pickering*, he cannot allege or show those rights were clearly established at the time of his termination. The controlling question in the "clearly established" prong of the analysis is whether the individual Defendants received "fair warning" that their conduct was unconstitutional. *Wade v. United States,* 13 F.4th 1217, 1225 (11th Cir. 2021). Plaintiff has failed to allege the existence of opinions by the Supreme Court, Court of Appeals for the Eleventh Circuit, or Florida Supreme Court finding a faculty member who makes public comments that cause substantial disruption to a university may not be fired for such comments without violating the First Amendment. He also cannot allege that a broader, clearly established principle is at stake, or that the conduct of the Individual Defendants "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Because he cannot show his constitutional rights were clearly established, each Individual Defendant is entitled to qualified immunity and Counts I and II should be dismissed with prejudice.

### iii. The Board should be dismissed with prejudice from Counts III, IV, and V based on Eleventh Amendment Immunity.

The Board should also be dismissed from Counts III, IV, and V as it did not consent to suit for state tort actions in federal court. "[A]bsent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." *Wells v. Bd. of Trustees of Fla. Gulf Coast Univ.*, 2021 WL 883333 (M.D. Fla 2021) (*citing Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003)). "The test to determine if a state has waived its sovereign immunity 'is a stringent one.'" *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012). A "waiver of Eleventh Amendment immunity must specifically permit suits in federal court." *Id.* at 1308. "[A] waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Florida's sovereign immunity statute is clear that the State has not waived its Eleventh Amendment Immunity:

> ***No provision of this section, or of any other section of the Florida Statutes***, whether read separately or in conjunction with any other provision, ***shall be construed to waive the immunity of the state or any of its agencies from suit in federal court***, ***as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States***, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court . . .

Fla. Stat. § 768.28 (18) (emphasis added). And therefore, the plain language of the statute warrants dismissal of the Board from Counts III, IV, and V.

However, Plaintiff's inability to bring claims in federal court is not the only jurisdictional issue with these claims. Even if Plaintiff brought these claims in state court, his IIED (Count IV) and abuse of process (Count V) claims still fail against the Board as they are barred by sovereign immunity.

In addition to providing immunity from suit in federal court, Section 768.28 explicitly *reserves* sovereign immunity for actions committed by state employees "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* at §768.28(9)(a). Any action against the state for such an act is expressly prohibited, and the wronged party's available recourse is limited to an action against the employee. *Id.; see also McGhee v. Volusia Cnty.*, 679 So. 2d 729, 730 (Fla. 1996).

Plaintiff cites Section 768.28 as a basis to hold the Board liable for torts committed by Myers, Dupras, Cartwright, and Johnson in the scope of their employment. (Doc. 1 at ¶¶145, 162). But Plaintiff cites a string of tortious acts allegedly committed by Myers, Dupras, Cartwright, and Johnson both *maliciously* and in *bad faith. Id.* at ¶¶147-48, 150-52, 154, 164, 166-67. In doing so, he misconstrues the language and intent of Section 768.28(9)(a). Courts have consistently dismissed claims against the state when the employee's conduct is alleged to be malicious or willful and wanton in nature. *See, e.g., Anderson v. City of Groveland*, No. 5:15-CV-26-OC-PRL, 2015 WL 6704516, at *8 (M.D. Fla. Nov. 2, 2015).[6] As such, Counts IV and V against the Board are subject to dismissal with prejudice.

### C. Alternatively, the Board should be dismissed with prejudice from Count III for failure to state a claim.

---

[6] *See also Weiland*, 792 F.3d at 1330 ("Florida courts have long recognized that Fla. Stat. § 768.28(9)(a) . . . bars claims for both [IIED] and malicious prosecution."); *Williams v. City of Minneola*, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (finding IIED claim constituted willful and wanton conduct and was barred by sovereign immunity); *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018) (dismissing IIED claim with prejudice as barred by Section 768.28(9)(a)).

Plaintiff also sued the Board for negligence in Count III, asserting it is liable for the negligence of its employees (Butler, Cartwright, Johnson, Myers, and Dupras) acting within the scope of their employment, pursuant to Section 768.28. As discussed above, the Board is a state agency immune from suit under Florida's sovereign immunity statute. *See* Fla. Stat. §728.68. The statute clearly explains that tort actions may only be prosecuted "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state…subject to the limitations specified in this act." *Id.*

Moreover, Florida courts have routinely held that certain policy and planning level functions ("discretionary" functions) of the states and their agencies remain immune from tort liability, even if the claim is otherwise viable under Section 768.28. *Kaisner v. Kolb*, 543 So. 2d 732, 736–37 (Fla. 1989) ("[I]t would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decision-making of the executive and legislative branches of government, including the agencies and municipal corporations they have created.") Accordingly, when a state agency is sued in negligence, a court must first determine whether the plaintiff's allegations would subject a private person to liability under Florida law.

The threshold issue here is whether any duty of care was owed in relation to the alleged negligent conduct because there can be no liability unless a common law or statutory duty existed that would have applied to an individual. *See Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009); Fla. Stat. §768.28(1). The question of whether a duty

was owed to a plaintiff is a question of law. *Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 410 (Fla. 4th DCA 2006).  If the court finds there is no underlying common law or statutory duty, the process stops there. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985).

In this case, Plaintiff asserts a single negligence count against the Board, citing three separate underlying duties.  The first is the Board's purported duty to oversee the administration of UCF and ensure the school "complies with 'laws, rules, regulations and requirements." (Doc. 1 at ¶ 132). Plaintiff adds that "adopting reasonable employment practices in general" is specifically encompassed within this duty. *Id.* at ¶132.  He does not clarify the source of this alleged duty (i.e. arising from common law or statute), but it appears to derive from Board of Governors Regulation 1.001, which states: "Each board of trustees is responsible for compliance with all applicable laws, rules, regulations, and requirements." The Board of Governors is empowered to establish the duties and responsibilities of state university boards of trustees pursuant to Article IX, Section 7, of the Florida Constitution.

Based on Plaintiff's allegations, the Board has, at most, been endowed with some power to ensure compliance with "laws" by virtue of the Board of Governors Regulation. Ensuring compliance with laws is consistently deemed a discretionary function for which there is no applicable duty of care. "How a governmental entity . . . exercises its discretionary power to enforce compliance with the laws . . . is a matter of governance, for which there never has been a common law duty of care." *Trianon Park*, 468 So. 2d at 919.  Moreover, "the enactment of a statute giving a governmental

entity the power to enforce compliance with the law does not, in and of itself, give individuals a new right of action that previously never existed." *Id.* at 922.  Similarly, determining whether to enact or adopt certain employment practices, as Plaintiff alleges, is a policy-making matter that would be considered discretionary. "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that *implement* policy." *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1021 (Fla. 1979)(emphasis added).  Any claims relating to these underlying "duties" are clearly barred by sovereign immunity.

The other two duties cited in Count III are specifically alleged to arise by virtue of a contract: "Defendants have assumed numerous duties under the collective bargaining agreement that governs the relationship between UCF and its employees." (Doc. 1 at ¶133). Plaintiff identifies these contractual duties as "not terminating a tenured faculty member without 'just cause'" and "not limiting the rights of employees 'to express their opinions to the larger community on any matter of social, political, economic, or other public interest.'" *Id.*  In fact, Plaintiff directly *quotes* language from Sections 16.7 and 5.3 of the CBA. He then cites various acts committed by Butler, Cartwright, Johnson, Myers, and Dupras that supposedly breached these duties, such as conducting an administrative investigation Plaintiff felt was unnecessarily lengthy, and terminating him without "just cause." *Id.* at ¶¶134-39.

Under Florida's independent tort doctrine, a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Altamonte Pediatric*

*Associates, P.A. v. Greenway Health, LLC*, 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020).  In other words, to set forth a claim in tort between parties also in contractual privity, a plaintiff must allege an action that, standing alone, amounts to an actionable tort. *Pastor v. Bank of Am., N.A.*, No. 22-24121-CIV, 2023 WL 2646817 (S.D. Fla. Mar. 27, 2023). Plaintiff has failed to adequately plead the existence of an independent tort, as his negligence claim is based solely on duties arising from the CBA, which is prohibited by Florida's independent tort doctrine.

Moreover, though currently pled as a tort claim, the same issues were arbitrated as contract claims. As referenced in his Complaint, Plaintiff initiated arbitration against the Board upon his termination and ultimately prevailed. (Doc. 1 at ¶¶139, 140).  During arbitration, Plaintiff contended the Board breached Sections 5, 6, and 16 of the CBA, which addressed the same subject matter at issue in his "negligence" claim. Plaintiff's claim should be dismissed with prejudiced as barred by res judicata, which prohibits parties from re-litigating claims previously decided in arbitration.

### D. Counts IV and V should be dismissed against the Individual Defendants for failure to state a claim.

#### i. Intentional Infliction of Emotional Distress (Count IV)

Plaintiff fails to state a claim upon which relief can be granted, as he has not identified any conduct by Myers or Dupras that rises to the level of outrageousness necessary to maintain an IIED claim under Florida law. Florida law requires that "a plaintiff must prove that the wrongdoer's conduct was intentional or reckless; the conduct was outrageous; the conduct caused emotional distress; and the emotional

distress was severe." *Horizons Rehab., Inc. v. Health Care and Ret. Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002). "The standard in Florida for outrageous conduct—which is a question of law—is extremely high." *Cottam v. City of Wildwood*, 750 Fed. Appx. 791, 795 (11th Cir. 2018). The plaintiff must show the defendant's actions "were 'so extreme in degree as to go beyond all possible bounds of decency.'" *Id.* (citations omitted).

Here, Plaintiff claims Myers subjected him to a lengthy administrative investigation. (Doc. 1 at ¶¶146-47).  As to Dupras, Plaintiff asserts she terminated him, failed to comply with the pre-termination notice in the CBA, and had police escort him on campus to collect his belongings.  *Id.* at ¶¶149-51.

This conduct is insufficient to state a claim for IIED. A review of the Complaint shows that none of the claimed misconduct is "atrocious, and utterly intolerable in a civilized community.'" *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985)); *see also Blount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1371 (S.D. Fla. 1996)(holding Florida and the Eleventh Circuit have been extremely reluctant to recognize outrageous conduct in the employment context); *Lay v. Roux Laboratories, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980)(finding no cause of action where employer threatened plaintiff with termination and verbally attacked him with racial epithets). Indeed, just the opposite is true. Terminations of employment and being escorted from the workplace following termination are common. *See Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)(termination of employment was not outrageous conduct sufficient to state a claim for IIED); *State Farm Mut. Auto.*

*Ins. Co. v. Novotny*, 657 So. 2d 1210 (Fla. 5th DCA 1995) (interview of employee regarding complaints about that employee deemed not sufficiently egregious to give rise to IIED). Plaintiff's IIED claim should be dismissed with prejudice.

### ii.    Abuse of Process (Count V)

Abuse of process "involves the use of criminal or civil legal proceedings against another primarily to accomplish a purpose for which it was not designed, such as extorting payment for a debt." *Bembry v. City of Tallahassee*, No. 4:05-CV-286-SPM, 2006 WL 1080676, at *8 (N.D. Fla. Apr. 24, 2006). Process includes actions initiated independently, such as the commencement of a suit, or those initiated collaterally, such as a counterclaim. *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983). The abuse facet "consists not in the issuance of process, but rather in the perversion of the process after its issuance." *Id.* Yet "[t]he fact that a party may be motivated by incidental or concurrent benefits of the use of process is not sufficient to constitute an abuse." *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017).

In Florida, abuse of process consists of three elements: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *EMI Sun Vill., Inc. v. Catledge*, 779 Fed. Appx. 627, 635 (11th Cir. 2019). Here, Plaintiff's abuse of process claim fails to satisfy the first element, as none of the allegations in his Complaint show "the defendant made an illegal, improper, or perverted use of process." *Id.* at 636.

In fact, at *no point* in the Complaint is there any allegation that Defendants abused any civil or criminal process. In Count V, Plaintiff simply recites the legal elements of an abuse of process claim, then entirely ignores those elements and instead pleads a hybridized version of Count III (Negligence) and Count IV (IIED).[7] Specifically, Plaintiff alleges Myers and Dupras "misused UCF's Prohibition of Discrimination, Harassment and Related Interpersonal Violence" and the CBA to retaliate against him for his speech on Twitter. (Doc. 1 at ¶ 164).  Lastly, Plaintiff claims Cartwright and Johnson "made public statements implying that Plaintiff would face consequences for his constitutionally protected tweets" and retaliated against him "by posting a public solicitation on UCF's website . . ." *Id.* at ¶¶ 166-67.

None of these allegations involve process. The law is clear that abuse of process requires "the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989). A violation of a UCF campus policy does not constitute an abuse of civil or criminal process, nor does a breach of the CBA, an administrative investigation into Plaintiff's conduct, or a public post about his tweets. Such allegations are insufficient to state a claim for abuse of process. *See Miami Herald Pub. Co., Div. of Knight-Ridder Newspaper v. Ferre,* 636 F. Supp. 970, 975 (S.D. Fla. 1985); *Blue Dolphin, Inc. v. United States*, 666 F. Supp. 1538, 1541 (S.D. Fla. 1987). Accordingly, Count V should be dismissed with prejudice.

---

[7] Nearly identical allegations are asserted as the basis for Plaintiff's negligence and intentional infliction of emotional distress claims.  (Doc. 1 at ¶¶134, 137, 138, 140, 148, 151, 157).

**E.     Plaintiff's claim for punitive damages should be stricken to the extent he seeks such damages against the Board or the Individual Defendants in their Official Capacity.**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike "is to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1250 (M.D. Fla. 2013) (citations omitted). Here, Plaintiff's claim for punitive damages should be stricken to the extent such damages are pleaded against the Board or are included among the relief sought against any Individual Defendant in their official capacity. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008)("In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities.")(citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981)).

Additionally, state agencies are not liable for punitive damages per subsection 768.28(5)(a), Florida Statutes, which provides that while the state and its agencies are liable for tort claims in the same manner and extent as private individuals, liability shall not include punitive damages. Plaintiff is foreclosed from any award of punitive damages against the Board or the Individual Defendants in their official capacity.

**WHEREFORE**, the Board respectfully requests that the Court render an Order dismissing with prejudice Counts I-V of Plaintiff's Complaint for lack of subject matter jurisdiction, or alternatively, ordering Plaintiff to file a more definite statement and striking his claim for punitive damages against the Board. The Individual Defendants

respectfully request that the Court render an Order dismissing with prejudice Counts I and II based on qualified immunity and Counts IV and V for failure to state a claim, or alternatively, ordering Plaintiff to file a more definite statement and striking his claim for punitive damages against the Individual Defendants in their official capacity.

## Local Rule 3.01(g) Certification

The undersigned counsel certify that on May 1, 2023, attorneys Spradley and Hatcher-Bolin conferred with counsel for Plaintiff, Samantha Harris (via phone and email) in an effort to resolve the issues raised in this motion, yet the parties were unable to agree on the resolution of any matters addressed in this motion.

Respectfully submitted on this 9th day of June, 2023.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on June 9, 2023, a true and correct copy of the foregoing was filed through the CM/ECF system, which will serve an electronic copy on all parties of record.

|  |  | */s/  SUSAN T. SPRADLEY* |
|---|---|---|
| **KRISTIE HATCHER-BOLIN** |  | **SUSAN T. SPRADLEY** |
| FLB No. 521388 |  | FLB No.: 0818712 |
| Kristie.Hatcher-bolin@gray-robinson.com |  | Susan.Spradley@gray-robinson.com |
|  | **KATHERINE KATZ** | **JULIE M. ZOLTY** |
|  | FLB No. 1022526 | FLB No.: 1036454 |
|  | Katherine.Katz@gray-robinson.com | Julie.Zolty@gray-robinson.com |

| **GRAY ROBINSON, P.A.** | **GRAY ROBINSON, P.A.** |
|---|---|
| Post Office Box 3 | Post Office Box 3068 |
| Lakeland, Florida 33802 | Orlando, Florida  32802 |
| Telephone: (863) 284-2251 | Telephone:  (407) 843-8880 |
| Facsimile: (863) 683-7462 | Facsimile:  (407) 244-5690 |
| *Counsel for Defendants* | *Counsel for Defendants* |