## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHARLES NEGY,

    *Plaintiff,*

v.                                                    CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; in their official capacities;
S. KENT BUTLER, ALEXANDER
CARTWRIGHT, TOSHA DUPRAS,
MICHAEL JOHNSON, NANCY
MYERS, in their individual capacities,

    *Defendants.*

_____/

### DEFENDANTS' DISPOSITIVE MOTION TO DISMISS, OR ALTERNATIVELY, MOTION TO STRIKE PUNITIVE DAMAGES

    Defendants, Board of Trustees of the University of Central Florida ("Board"), S. Kent Butler, Alexander Cartwright, Tosha Dupras, Michael Johnson, and Nancy Myers ("Individual Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(e), request that this Honorable Court dismiss Plaintiff's Amended Complaint with prejudice, or alternatively, strike the punitive damages claim, and state:

## I.   Background

    Plaintiff, Charles Negy, is an Associate Professor of Psychology at the University of Central Florida ("UCF"). Plaintiff sued UCF's Board[1], the 13-member

---

[1] Plaintiff names the Board in its "official capacity." However, as an arm of the State, the Board is a "public body corporate," a legal entity pursuant to Section 1001.72, *Florida Statutes,* and does not have

board that governs UCF, and the Individual Defendants, current and former UCF officials, whom he alleges were responsible for his termination in January 2021. (Doc. 26 at 21). Plaintiff arbitrated his termination under the Collective Bargaining Agreement between UCF and the United Faculty of Florida ("CBA"), which resulted in his full reinstatement with back pay, tenure, and benefits from the date of his termination. (Doc. 26 at 24).

Here, Plaintiff seeks to re-litigate the same facts grieved in arbitration in an attempt to collect damages beyond what was bargained for in the CBA and awarded at arbitration. He asserts two constitutional claims under 42 U.S.C. §1983 for alleged violations of his free speech rights under the First and Fourteenth Amendments and retaliation for his constitutionally-protected speech, or more specifically, comments he posted and continues to post on his personal Twitter account (Counts I and II). (Doc. 26 at 25-31).

Plaintiff also asserts a state law claim in Count III against the Board for negligence. That claim is premised on the Board's alleged breaches of UCF's duty to ensure it complies with "laws, rules, regulations, and requirements." (Doc. 26 at 31-35). In Count IV, Plaintiff asserts a state law claim for intentional infliction of emotional distress ("IIED") against the Myers and Dupras or, "in the alternative," against the Board. (Doc. 26 at 35-39). Finally, Plaintiff asserts a state law claim for abuse of process against Myers, Dupras, Cartwright, and Johnson, or "in the

---

official or individual capacities. Naming the Board in its "official capacity" is neither proper nor legally accurate.

alternative," against the Board. (Doc. 26 at 39-41). Plaintiff appears to seek compensatory and punitive damages, as well as declaratory and injunctive relief, against all Defendants. (Doc. 26 at 41-42).

## II.   <u>Summary of the Argument</u>

Plaintiff's Amended Complaint remains subject to fatal procedural and substantive deficiencies. While Plaintiff's Amended Complaint remedies the shot gun pleading issues found in the original, it fails to address the substantive deficiencies in each of his five causes of action. (Doc. 1, 19, and 26).   Because Plaintiff failed to remedy these defects, Defendants seek dismissal of Plaintiff's Amended Complaint with prejudice.   First, Plaintiff does not have standing to seek injunctive relief, as his claim is strictly limited to alleged past violations of his constitutional rights.   His claims have been remedied through arbitration and he has not alleged that Defendants have engaged in any conduct since his reinstatement, or that the alleged violations of his constitutional rights are ongoing.

Further, the Board should be dismissed from this suit in its entirety based on the immunities conferred by the Eleventh Amendment to the United States Constitution, as well as Section 768.28, *Florida Statutes*. The Individual Defendants sued in their individual capacities should be dismissed based on qualified immunity.  Moreover, the claims asserted against the Individual Defendants in Counts IV and V should be dismissed with prejudice for failure to state a claim as Plaintiff has not and cannot assert all of the elements of these claims. In the alternative, Defendants move this Court to strike Plaintiff's claim for punitive damages against the Board and that any

claims for injunctive relief be dismissed for lack of standing.

III.   **Argument**

    **A.   Plaintiff lacks standing to seek injunctive relief against all Defendants.**

    To meet the case or controversy requirement of Article III, Plaintiff must assert "some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *see also Jacobs v. The Fla. Bar*, 50 F.3d 901, 903 (11th Cir. 1995). A plaintiff seeking to invoke a federal court's jurisdiction must demonstrate three things to establish standing under Article III: injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). More specifically, the asserted injury must arise out of the invasion of a legally protected interest that is sufficiently concrete and particularized, rather than abstract and indefinite. *See id.*

    Plaintiff here lacks standing to assert injunctive relief for two main reasons. First, Plaintiff lacks standing under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), because he does not and cannot allege that there is an actual or imminent injury this Court could redress.  In *Lyons*, the Supreme Court declared that, in most cases, a plaintiff seeking injunctive relief under Section 1983 must allege that he or she will be subject again to the challenged conduct. *See id.* at 102. Absent such allegations, a plaintiff does not have standing to seek an injunction, and thus, that aspect of the case is not justiciable. *See id; Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir. 1984). Instead, "[a] threatened injury must be 'certainly impending' to constitute injury in fact."

4

*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citations omitted).

Here, Plaintiff pleads 25 pages of factual allegations that he admits were remedied through arbitration. (Doc. 26 at 24, ¶ 96). Plaintiff fails, however, to allege any continuing constitutional violation or inability to currently exercise his constitutional rights, leaving him without any concrete or particularized injury in fact.[2] Moreover, because he seeks declaratory and injunctive relief, "the injury-in-fact requirement insists that [he] allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Strickland v. Alexander*, 772 F.3d 876, 887 (11th Cir. 2014) (citations omitted). "This is because injunctions regulate future conduct only . . . So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury." *Id.*

While the Eleventh Circuit has recognized that the chilling effect on speech and resulting self-censorship are types of injuries which may suffice for standing purposes, Plaintiff's bald assertions that Defendants' have chilled his speech cannot suffice as a concrete and particularized injury. *C.f. Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) ("[A] violation of the right to free speech, can be concrete."). Plaintiff has not alleged conduct by any of the Defendants that has chilled his speech since his termination over two years ago, for which he has already been made whole.

---

[2] To the contrary, since his reinstatement at UCF, Plaintiff has actively engaged in expressing his personal views via his personal twitter account, as referenced in the Amended Complaint.  (Doc. 26 ¶¶ 2, 3, 17); https://twitter.com/charlesnegy/.

Therefore, "if no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes. A party's subjective fear that he may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998).  In fact, as pleaded, the injunctive relief Plaintiff seeks would be nothing more than an "obey the law injunction," which is "unenforceable." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1222–23 (11th Cir. 2000); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999). Plaintiff fails to allege an actual or imminent injury in fact to establish standing for prospective injunctive relief.

Further, Plaintiff lacks standing to seek injunctive relief against Butler and Dupras in their individual capacities because injunctive relief against them individually would not redress the harms Plaintiff alleges. Individual capacity relief goes to both Defendants, individually, while official capacity injunctive relief goes to the entity as a whole. *Neville v. Classic Gardens*, 141 F. Supp. 2d 1377, 1379 (S.D. Ga. 2001). Butler is currently a professor for UCF, but he is being sued for his involvement as UCF's former Chief Equity, Inclusion, and Diversity Officer. (Doc. 26 at 4, ¶ 9). Similarly, Dupras is being sued for her involvement as UCF's former Interim Dean of the College of Science, a position she no longer holds.  (Doc. 26 at 5, ¶ 11).

Neither Butler nor Dupras have the authority they once held in their former leadership roles to discipline or chill Plaintiff's speech. Further, since the requested relief is only against them individually, any injunction against them would not bind

the leadership offices they formerly held, but only them individually. As such, the claim for injunctive relief against Butler or Dupras lacks the redressability element as they have no power to direct or control Plaintiff's employment. *See, e.g.*, *Barnes v. Dunn*, No. 419CV00558ACASGC, 2022 WL 10264034, at *5 (N.D. Ala. Aug. 17, 2022), *report and recommendation adopted*, No. 419CV00558ACASGC, 2022 WL 4365709 (N.D. Ala. Sept. 21, 2022) (noting claims against former commissioners, who "have no power in their individual capacities to take any action with respect to the conditions of ADOC facilities" failed for lack of standing because "any order directing them as individuals to address prison conditions would not redress the plaintiff's alleged injury."). Again, any such injunction would be an "obey the law" injunction, which would not redress Plaintiff's alleged hypothetical harm because they are both powerless to "injure" Plaintiff for any protected speech in their current roles.

**B.     The Board and the Individual Defendants sued in their individual capacities should be dismissed from this action in their entirety based on Eleventh Amendment Immunity and Qualified Immunity.**

**i.     The Board should be dismissed with prejudice from Counts I and II based on Eleventh Amendment Immunity.**

Plaintiff's Amended Complaint raises both federal constitutional claims and state law tort claims against the Board. This Court lacks jurisdiction to hear either type of claim. UCF is a Florida state university and political subdivision of the State of Florida. *See* Fla. Stat. § 1000.21(6)(g).  The Board of Trustees is a public body corporate and public instrumentality and is the proper party defendant in any suit against UCF. *See* Fla. Stat. § 1001.72(1) and (2).  However, under the Eleventh Circuit's "arm of the

state" test, the Board is entitled to Eleventh Amendment immunity as an instrumentality of the state. *See Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc.,* 861 F.3d 1234, 1235 (11th Cir. 2017).   Rule 12(b)(1) enables a defendant to move to dismiss a complaint for lack of subject matter jurisdiction based on Eleventh Amendment immunity. Fed. R. Civ. Pro. 12(b)(1); *Smith v. Avino,* 91 F.3d 105, 107 (11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998).

The Eleventh Amendment has been interpreted to bar suits against a state, state agency, or state official acting in their official capacity in federal court by its own citizens, as well as those of another State. *See Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974); *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44 (1996). But three exceptions—none of which apply here—allow suits against a state: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex Parte Young*[3] doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1301 (11th Cir. 2007); *Summit Med.*

---

[3] To the extent Plaintiff argues *Ex Parte Young*, 209 U.S. 123 (1908) allows the Board, as an arm of the state, to be a defendant in an action for prospective injunctive relief, such an argument misses the mark.   An argument that "*Ex parte Young* extends not only to state officials sued in their official capacities for prospective relief, but to States and state agencies . . . is simply incorrect. The theory behind *Ex Parte Young* is that a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment. The exception does not extend to the state or state agencies." *Camm v. Scott*, 834 F. Supp. 2d 1342, 1348 (M.D. Fla. 2011) (internal citations omitted); *Eubank v. Leslie*, 210 F. App'x. 837, 844 (11th Cir. 2006).

Further, there is no "prospective relief" available against either the Board or the Individual Defendants in their individual capacity as there is no ongoing constitutional violation and the Plaintiff's efforts to litigate a past event do not fall within the *Ex Parte Young* doctrine.  *See supra* Section A(ii).

*Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–42 (11th Cir. 1999) (applying *Ex Parte Young*).

"In Florida, sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).  However, Section 768.28, *Florida Statutes*, provides a very narrow waiver of the State's sovereign immunity, only as to certain actions.  And, in *Hill v. Dep't. of Corr.*, the Florida Supreme Court held that Section 768.28 was not intended to waive immunity for "constitutional torts." 513 So. 2d 129, 133 (Fla. 1987); *Lafleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832, at *6 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3725243 (M.D. Fla. Aug. 23, 2021) (citing *Garcia v. Reyes*, 697 So. 2d 549, 550 (Fla. 4th DCA 1997)). "While Florida is at liberty to waive its immunity from section 1983 actions, it has not done so. The recovery ceilings in section 768.28 were intended to waive sovereign immunity for state tort actions, not federal civil rights actions commenced under section 1983." *Hill*, 513 So.2d at 129; s*ee also Shuler v. Bd. of Trustees of Univ. of Ala.*, 480 F. App'x. 540, 544 (11th Cir. 2012) (affirming district court's judgment in favor of board of trustees because it was entitled to Eleventh Amendment immunity).

In fact, section 768.28 provides:

> ***No provision of this section, or of any other section of the Florida Statutes***, whether read separately or in conjunction with any other provision, ***shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States***, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its

agencies from suit in federal court . . .

Fla. Stat. §768.28 (emphasis added).   Nor has Congress abrogated the Board's Eleventh Amendment immunity for Section 1983 claims.  To the contrary, the United States Supreme Court has clearly and unambiguously held that "a State is not a person within the meaning of § 1983." *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.").

Finally, to the extent Plaintiff attempts to assert claims against the individual board of trustee members in their official capacities under *Ex Parte Young* by virtue of naming the Board, a state instrumentality, in its "official capacity," he has failed. Plaintiff has also failed to allege an ongoing violation of federal law that could be remedied by prospective injunctive relief. Accordingly, the Board should be dismissed, with prejudice, from Counts I and II under Section 1983 as it is clearly and unambiguously entitled to Eleventh Amendment sovereign immunity.

### ii.  The Individual Defendants should be dismissed with prejudice from Count I and Defendant Myers should be dismissed with prejudice from Count II based on qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000) (citations omitted). Qualified immunity may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334,1337 (11th

10

Cir. 2002) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

The question of qualified immunity should be resolved in the defendant's favor on a motion to dismiss if the plaintiff fails to allege the violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991); *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997). This is a question of law, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Williams,* 102 F.3d at 1182. To obtain qualified immunity, the defendant must first establish that he acted within his discretionary authority; "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations omitted).

Here, Plaintiff's allegations show the Individual Defendants were acting within the scope of their discretionary authority when they engaged in the allegedly wrongful acts that are the subject of Plaintiff's allegations. For instance, the Amended Complaint's allegations show each of the Individual Defendants took action as UCF senior employees and acted within their discretionary authority. (Doc. 26 ¶¶ 9-13, 32-41, 51, 56, 60-63, 65-68, 77-78, 81-83) (outlining the Individual Defendants' official positions and actions taken within their capacity as UCF administrators, including but not limited to, using UCF's official Twitter account and website to communicate on behalf of school leadership, conducting a town hall with and sending administration communications to students, conducting investigations of student allegations, and administering discipline).

The Eleventh Circuit in *Chesser*, *supra*, set forth the process for a court to determine on a motion to dismiss whether a plaintiff has alleged sufficient facts to overcome a state official's qualified immunity. The Court must utilize a two-step analysis of whether (1) the facts, construed in the light most favorable to the plaintiff, show a constitutional right has been violated and (2) that the right allegedly violated was clearly established. *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011). Where qualified immunity is raised and addressed on a motion to dismiss, the motion "will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (citing *Chesser,* 248 F.3d at 1122); *see also Jones v. United States,* 484 F. Supp. 3d 1238, 1247 (S.D. Fla. 2020) ("The qualified immunity defense may be raised in a motion to dismiss and will be granted if the complaint fails to allege the violation of a clearly established constitutional right."). A constitutional right is clearly established if controlling precedent has recognized the right in a "concrete and factually defined context". *Chesser,* 248 F.3d at 1122; *see also Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.").

For the Court to determine whether Plaintiff has alleged a violation of his clearly established Free Speech rights, it must determine, in accordance with the balancing test in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will. Cnty., Illinois*, 88 S. Ct. 1731, 1734–35 (1968), that he alleged: (1) his speech is on a matter of public concern; (2) his First Amendment interest in engaging in the speech outweighs UCF's interest

in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) his speech played a "substantial part" in UCF's decision to discharge him. *Chesser,* 248 F.3d at 1123. If the Court finds Plaintiff successfully alleged these facts, it must then analyze whether UCF would have reached the same decision even in the absence of the protected conduct. *Id.*

Because *Pickering* employs a balancing test rather than a bright-line rule to determine when a public employee's right to free speech is violated, "the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989). In this case, Plaintiff has not alleged, nor can he allege, sufficient facts to show his free speech rights as an employee override UCF's interest in maintaining an efficient and non-disruptive work environment. The Amended Complaint clearly shows the disruption caused to UCF as a result of Plaintiff's comments was substantial, resulting in many student protests calling for Plaintiff's termination and complaints not only about Plaintiff's comments on Twitter, but comments he made during lectures that students found discriminatory, harassing, and demeaning. (Doc. 26 ¶¶ 23-27, 29-30, 33, 37, 39, 42, 45). Even assuming Plaintiff is able to allege a violation of his First Amendment rights under *Pickering*, he cannot allege or show those rights were clearly established at the time of his termination. *See Williams v. Alabama State Univ.*, 102 F.3d 1179, 1183–84 (11th Cir. 1997) (finding plaintiff's complaint had not shown a violation of clearly established law where, in addition to the professor's comments about a textbook not

being about a matter of public concern, the university, "just as clearly, . . . had an interest in making efficient academic and administrative decisions," and "[g]iven these competing interests, we cannot say that the *Pickering* balancing test inevitably weighs in Williams's favor.") (citing *Dartland*, 866 F.2d at 1321).

The Court must ask whether the individual Defendants received "fair warning" that their alleged conduct was unconstitutional. *Wade v. United States,* 13 F.4th 1217, 1225 (11th Cir. 2021). Plaintiff has failed to allege the existence of opinions by the Supreme Court, Court of Appeals for the Eleventh Circuit, or Florida Supreme Court finding a faculty member who makes public comments that cause substantial disruption to a university may not be fired for such comments without violating the First Amendment. He also cannot allege that a broader, clearly established principle is at stake, or that the conduct of the Individual Defendants "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Because he cannot show his constitutional rights were clearly established, each Individual Defendant is entitled to qualified immunity and Counts I and II should be dismissed with prejudice.

### iii. The Board should be dismissed with prejudice from Counts III, IV, and V based on Eleventh Amendment Immunity.

The Board should also be dismissed from Counts III, IV, and V as it did not consent to suit for state tort actions in federal court. "[A]bsent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." *Wells v. Bd. of Trustees of Fla. Gulf Coast Univ.*, No. 2:19-CV-859-JLB-NPM, 2021

WL 883333 (M.D. Fla 2021) (*citing Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003)). "The test to determine if a state has waived its sovereign immunity 'is a stringent one.'" *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012). A "waiver of Eleventh Amendment immunity must specifically permit suits in federal court." *Id.* "[A] waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Again, the language Florida's sovereign immunity statute is clear that the State has not waived its Eleventh Amendment Immunity. *See* Fla. Stat. § 768.28 (18). The plain language of the statute warrants dismissal of the Board from Counts III, IV, and V.

However, Plaintiff's inability to bring claims in federal court is not the only jurisdictional issue with these claims. Even if Plaintiff brought these claims in state court, his IIED (Count IV) and abuse of process (Count V) claims still fail against the Board as they are barred by sovereign immunity. In addition to providing immunity from suit in federal court, Section 768.28 explicitly *reserves* sovereign immunity for actions committed by state employees "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* at § 768.28(9)(a). Any action against the state for such an act is expressly prohibited, and the wronged party's available recourse is limited to an action against the employee. *Id.; see also McGhee v. Volusia Cnty.*, 679 So. 2d 729, 730 (Fla. 1996).

In Count IV and Count V of the Amended Complaint, Plaintiff cites to Section 768.28 as an "alternative" basis to hold the Board liable for torts committed by Myers,

15

Dupras, Cartwright, and Johnson in the scope of their employment. (Doc. 26 at 36, ¶¶ 150-51, 167-68). However, he cites a string of tortious acts allegedly committed by Myers, Dupras, Cartwright, and Johnson both *maliciously* and in *bad faith*. *Id.* at ¶¶ 152-53, 155-57, 159, 169, 171-72. In doing so, Plaintiff misconstrues the language and intent of Section 768.28(9)(a). Courts have consistently dismissed claims against the state when the employee's conduct is alleged to be malicious or willful and wanton in nature. *See, e.g., Anderson v. City of Groveland*, No. 5:15-CV-26-OC-PRL, 2015 WL 6704516, at *8 (M.D. Fla. Nov. 2, 2015). In addition, Florida courts have routinely held that section 768.28(9)(a) bars claims against state agencies for IIED. *See Williams v. City of Minneola*, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (finding IIED claim constituted willful and wanton conduct and was barred by sovereign immunity); *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018) (dismissing IIED claim with prejudice as barred by Section 768.28(9)(a)). As such, Counts IV and V against the Board, in the alternative, are subject to dismissal with prejudice.

### C. Alternatively, the Board should be dismissed with prejudice from Count III for failure to state a claim.

In Count III, Plaintiff has sued the Board for negligence on two grounds: first, that the Board is liable for breaching its own duty of care, and second, that the Board is liable under section 768.28 for the negligence of its employees (Butler, Cartwright, Johnson, Myers, and Dupras) acting within the scope of their employment. The Board is a state agency typically immune from suit under Florida's sovereign immunity statute, as discussed above. *See* Fla. Stat. § 728.68. The statute provides that tort actions

may be prosecuted only "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state . . . subject to the limitations specified in this act." *Id.*

However, even if a claim may otherwise be viable under Section 768.28, Florida courts have routinely held that certain policy and planning level functions ("discretionary" functions) of the State and its agencies remain immune from tort liability. *See Kaisner v. Kolb*, 543 So. 2d 732, 736–37 (Fla. 1989) ("[I]t would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decision-making of the executive and legislative branches of government, including the agencies and municipal corporations they have created.").

It is for this reason that, when a state agency is sued in negligence, a court must first determine whether a plaintiff's allegations would subject a private person to liability under Florida law, and then determine if the claim is nonetheless barred because the underlying act was a discretionary function. *See Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009); Fla. Stat. § 768.28(1). This is a question of law for the court. *See Fla. Power & Light Co. v. Morris*, 944 So. 2d 407, 410 (Fla. 4th DCA 2006). If the court finds there is no underlying common law or statutory duty, the process stops there. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985).

Plaintiff claims the Board owed a duty of "of at least reasonable care in the governance of UCF, including the duty that it has taken upon itself to ensure that [UCF] complies with 'laws, rules, regulations and requirements.'" (Doc. 26 at 32, ¶ 135). This purportedly encompasses "adopting reasonable employment practices,

reasonably overseeing employees, especially those who exercise investigatory and disciplinary authority over other employees . . ." *Id.* He cites a page from UCF's website (https://bot.ucf.edu/about-the-board/) in support of his claim, which indicates the Board of Governors of the State University System endowed the Board with the power to ensure UCF's compliance with laws and regulations.

Ensuring compliance with laws is consistently deemed a discretionary function for which there is no applicable duty of care: "How a governmental entity . . . exercises its discretionary power to enforce compliance with the laws . . . is a matter of governance, for which there never has been a common law duty of care." *Trianon Park*, 468 So. 2d at 919. Also, the enactment of a "statute giving a governmental entity the power to enforce compliance with the law does not, in and of itself, give individuals a new right of action that previously never existed." *Id.* at 922. Likewise, determining whether to enact or adopt certain "reasonable employment practices" is a policy-making matter that would also be considered discretionary. *See Wilson v. Miami-Dade Cnty.*, 370 F. Supp. 2d 1250, 1255 (S.D. Fla. 2005) (holding County's decision whether or not to adopt or create program or policy for police officers was fundamental question of planning for which the County was immune from liability). Planning level functions "are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1021 (Fla. 1979). Plaintiff's claims against the Board are barred because the underlying acts amount to discretionary functions.

The Board does note that, in his Amended Complaint, Plaintiff has inserted a

new, seemingly unrelated, allegation that "[u]pon information and belief, UCF was aware of problems with Defendant Myers' job performance and ability to observe others' individual rights. However, UCF failed to adequately train or supervise Defendant Myers." (Doc. 26 at 33, ¶ 142). Plaintiff has provided no other allegations about these supposed "problems," nor does he give any detail about Myers' alleged lack of ability or the "others" whose rights were supposedly affected. If Plaintiff is attempting to introduce claims of negligent retention, hiring, training, or supervision against the Board in relation to Myers, his inclusion of legal buzz words and bald assertions in one paragraph of the Amended Complaint are insufficient. He has failed to plead the legal elements necessary to state these claims; thus, these claims should be dismissed.

Plaintiff also claims the Board is liable for the negligence of its employees committed in the scope of their employment. Specifically, he alleges "officers, employees, or agents of UCF have a reasonable duty of care in the performance of their duties at UCF," and that Butler, Cartwright, Dupras, Johnson, and Myers all breached those duties. Importantly, he does not cite any common law or statutory duties owed by the Individual Defendants. Instead, his claim is founded entirely on alleged breaches of duties under the CBA. For example, he claims Myers breached her duty of care as an employee of the Board by conducting an investigation into Plaintiff's work history, not giving him "adequate notice" of the allegations against him, and subjecting him to "numerous unexplained delays in the investigation." (Doc. 26 at 34, ¶141). Any such duties arose *purely* by virtue of the CBA.

19

Under Florida's independent tort doctrine, a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020).   In other words, to state a claim in tort between parties also in privity, a plaintiff must allege an action that, standing alone, constitutes an actionable tort. *Pastor v. Bank of Am., N.A.*, No. 22-24121-CIV, 2023 WL 2646817 (S.D. Fla. Mar. 27, 2023). Plaintiff here has failed to plead the existence of any independent tort, as his negligence claim is based solely on duties arising from the CBA, which is prohibited by Florida's independent tort doctrine.

Moreover, though currently pled as a tort claim, the same issues were previously arbitrated as contract claims. As referenced in his Amended Complaint, Plaintiff initiated arbitration against the Board upon his termination and ultimately prevailed. (Doc. 26 at 24, ¶¶ 96-100).  During arbitration, Plaintiff contended the Board breached the CBA, which addressed the same subject matter at issue in his current "negligence" claim. Plaintiff's claim should be dismissed with prejudiced as barred by res judicata, which prohibits parties from re-litigating claims previously decided in arbitration.

### D. Counts IV and V should be dismissed against the Individual Defendants for failure to state a claim.[4]

#### i. Intentional Infliction of Emotional Distress (Count IV)

---

[4] Plaintiff asserts his claims in Counts IV and V, "in the alternative," against the Board as well. (Doc. 26 at 35, 38, 39, 40).  Such "alternative" claims against the Board likewise fail to state a claim for the same reasons set forth in this Section D.

Plaintiff fails to state a claim upon which relief can be granted, as he has not identified any conduct by Myers or Dupras that rises to the level of outrageousness necessary to maintain an IIED claim under Florida law. Florida law requires that "a plaintiff must prove that the wrongdoer's conduct was intentional or reckless; the conduct was outrageous; the conduct caused emotional distress; and the emotional distress was severe." *Horizons Rehab., Inc. v. Health Care and Ret. Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002). "The standard in Florida for outrageous conduct—which is a question of law—is extremely high." *Cottam v. City of Wildwood*, 750 F. App'x. 791, 795 (11th Cir. 2018). The plaintiff must show the defendant's actions "were 'so extreme in degree as to go beyond all possible bounds of decency.'" *Id.* (citations omitted).

Here, Plaintiff claims Myers subjected him to a lengthy administrative investigation. (Doc. 26 at 36, ¶¶ 152-53).  As to Dupras, Plaintiff asserts she terminated him, failed to comply with the pre-termination notice in the CBA, and had police escort him on campus to collect his belongings.  *Id.* at ¶¶ 156-57.

This conduct is insufficient to state a claim for IIED. A review of the Amended Complaint shows that none of the claimed misconduct is "atrocious, and utterly intolerable in a civilized community.'" *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985)); *see also Blount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1371 (S.D. Fla. 1996) (holding Florida and the Eleventh Circuit have been extremely reluctant to recognize outrageous conduct in the employment context); *Lay v. Roux Laboratories, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (finding no cause of action where employer threatened plaintiff with termination and verbally attacked him with

racial epithets). Indeed, just the opposite is true. Terminations of employment and being escorted from the workplace following termination are common. *See Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993) (termination of employment was not outrageous conduct sufficient to state a claim for IIED); *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210 (Fla. 5th DCA 1995) (interview of employee regarding complaints about that employee deemed not sufficiently egregious to give rise to IIED). Plaintiff's IIED claim should be dismissed with prejudice.

### ii.   Abuse of Process (Count V)

Abuse of process "involves the use of criminal or civil legal proceedings against another primarily to accomplish a purpose for which it was not designed, such as extorting payment for a debt." *Bembry v. City of Tallahassee*, No. 4:05-CV-286-SPM, 2006 WL 1080676, at *8 (N.D. Fla. Apr. 24, 2006). Process includes actions initiated independently, such as the commencement of a suit, or those initiated collaterally, such as a counterclaim. *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983). The abuse facet "consists not in the issuance of process, but rather in the perversion of the process after its issuance." *Id.* Yet "[t]he fact that a party may be motivated by incidental or concurrent benefits of the use of process is not sufficient to constitute an abuse." *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017).

In Florida, abuse of process consists of three elements: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the

plaintiff was injured as a result of defendant's action." *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x. 627, 635 (11th Cir. 2019). Here, Plaintiff's abuse of process claim fails to satisfy the first element, as none of the allegations in his Amended Complaint show "the defendant made an illegal, improper, or perverted use of process." *Id.* at 636.

In fact, at *no point* in the Amended Complaint is there any allegation that Defendants abused any civil or criminal process. In Count V, Plaintiff recites the elements of an abuse of process claim, then ignores those elements and instead pleads a hybridized version of Count III (Negligence) and Count IV (IIED).[5] Specifically, he alleges Myers and Dupras "misused UCF's Prohibition of Discrimination, Harassment and Related Interpersonal Violence" and the CBA to retaliate against him for his speech. (Doc. 26 at 40, ¶ 169). He claims Cartwright and Johnson "made public statements implying that Plaintiff would face consequences for his constitutionally protected tweets." *Id.* at ¶ 171. Lastly, he alleges Cartwright and Johnson retaliated against him "by posting a public solicitation on UCF's website." *Id.* at ¶ 172.

None of these allegations involve process. The law is clear that abuse of process requires "the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989). A violation of a UCF campus policy does not constitute an abuse of civil or criminal process, nor does a breach of the CBA, an administrative investigation into Plaintiff's conduct, or a public post about his tweets. Such

---

[5] Nearly identical allegations are asserted as the basis for Plaintiff's negligence and intentional infliction of emotional distress claims. (*See* Doc. 26 at 33-34 ¶¶ 137, 140; at 37, ¶ 156).

allegations are insufficient to state a claim for abuse of process. *See Miami Herald Pub. Co., Div. of Knight-Ridder Newspaper v. Ferre,* 636 F. Supp. 970, 975 (S.D. Fla. 1985); *Blue Dolphin, Inc. v. United States*, 666 F. Supp. 1538, 1541 (S.D. Fla. 1987). Accordingly, Count V should be dismissed with prejudice.

### E.   Plaintiff's claim for punitive damages should be stricken to the extent he seeks such damages against the Board.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike "is to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1250 (M.D. Fla. 2013) (citations omitted). Here, Plaintiff's claim for punitive damages should be stricken to the extent such damages are pleaded against the Board. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008) ("In a §1983 action, punitive damages are only available from government officials when they are sued in their individual capacities.") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981)).

Additionally, state agencies are not liable for punitive damages per section 768.28(5)(a), *Florida Statutes*, which provides that while the State and its agencies are liable for torts in the same manner and extent as private individuals, liability shall not include punitive damages.  Punitive damages are not available against the Board.

**WHEREFORE**, the Board respectfully requests that the Court dismiss with prejudice Counts I-V of Plaintiff's Amended Complaint, or alternatively, strike

Plaintiff's claim for punitive damages against the Board.  The Individual Defendants respectfully request that the Court dismiss with prejudice Counts I and II based on qualified immunity and Counts IV and V for failure to state a claim.

### Local Rule 3.01(g) Certification

The undersigned certify that on July 10, 2023, attorneys Spradley and Hatcher-Bolin conferred with counsel for Plaintiff, Samantha Harris and David Osborne, via phone in an effort to resolve the issues in this motion; the parties were unable to do so.

Respectfully submitted on this 21st day of July, 2023.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on July 21, 2023, a true and correct copy of the foregoing was filed through the CM/ECF system, which will serve an electronic copy on all parties of record.

/s/ *SUSAN T. SPRADLEY*

**KRISTIE HATCHER-BOLIN**
FLB No. 521388
Kristie.Hatcher-bolin@gray-robinson.com

**SUSAN T. SPRADLEY**
FLB No.: 0818712
Susan.Spradley@gray-robinson.com

**KATHERINE KATZ**
FLB No. 1022526
Katherine.Katz@gray-robinson.com

**JULIE M. ZOLTY**
FLB No.: 1036454
Julie.Zolty@gray-robinson.com

**GRAY ROBINSON, P.A.**
Post Office Box 3
Lakeland, Florida 33802
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
*Counsel for Defendants*

**GRAY ROBINSON, P.A.**
Post Office Box 3068
Orlando, Florida 32802
Telephone:  (407) 843-8880
Facsimile:   (407) 244-5690
*Counsel for Defendants*