## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHARLES NEGY,

    *Plaintiff,*

v.                         CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; in their official capacities;
S. KENT BUTLER, ALEXANDER
CARTWRIGHT, TOSHA DUPRAS,
MICHAEL JOHNSON, NANCY
MYERS, in their individual capacities,

    *Defendants.*

_____/

## NOTICE OF FILING

    Defendants, S. KENT BUTLER, ALEXANDER CARTWRIGHT, TOSHA DUPRAS, MICHAEL JOHNSON, and NANCY MYERS, in their individual capacities ("Defendants"), by and through their legal counsel, hereby give Notice of Filing the Notice of Service of Answers and Objections to Plaintiff's First Set of Interrogatories Directed to Defendant, S. Kent Butler, dated July 1, 2024.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY on January 21, 2025, a true and correct copy of the foregoing was filed through the CM/ECF system, which will serve an electronic copy on all parties of record.

**GRAY ROBINSON, P.A.**

*/s/ Kristie Hatcher-Bolin*
**KRISTIE HATCHER-BOLIN**
Florida Bar No. 521388
Kristie.Hatcher-bolin@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462

*/s/ Katherine W. Katz*
**KATHERINE W. KATZ**
Florida Bar No. 1022526
Katherine.Katz@gray-robinson.com
**JULIE M. ZOLTY**
Florida Bar No.: 1036454
Julie.Zolty@gray-robinson.com
Post Office Box 3068
Orlando, Florida  32802-3068
Telephone:  (407) 843-8880
Facsimile:   (407) 244-5690
*Counsel for Defendants*

#62603668 v1

<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

</div>

CHARLES NEGY,

     *Plaintiff,*

v.                                                              CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; in their official capacities;
S. KENT BUTLER, ALEXANDER
CARTWRIGHT, TOSHA DUPRAS,
MICHAEL JOHNSON, NANCY
MYERS, in their individual capacities,

     *Defendants.*

_____/

<div align="center">

**DEFENDANT'S NOTICE OF SERVICE OF ANSWERS AND OBJECTIONS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO
DEFENDANT, S. KENT BUTLER**

</div>

Defendant, S. Kent Butler, by and through his undersigned counsel and

pursuant to Fed. R. Civ. P. 33, hereby timely responds, in his individual capacity, to

Plaintiff, Charles Negy's First Set of Interrogatories to Defendant, S. Kent Butler dated

April 30, 2024.

Respectfully submitted on this 1st day of July, 2024.

                           */s/ Kristie Hatcher-Bolin*
                           **SUSAN T. SPRADLEY**
                           Florida Bar No.: 0818712
                           Susan.Spradley@gray-robinson.com
                           **KATHERINE W. KATZ, ESQ.**
                           Florida Bar No. 1022526
                           Katherine.Katz@gray-robinson.com
                           **JULIE M. ZOLTY**

Florida Bar No.: 1036454
Julie.Zolty@gray-robinson.com
**GRAY ROBINSON, P.A.**
Post Office Box 3068
Orlando, Florida  32802-3068
Telephone:  (407) 843-8880
Facsimile:   (407) 244-5690
                    And
**KRISTIE HATCHER-BOLIN**
Florida Bar No. 521388
Kristie.Hatcher-bolin@gray-robinson.com
**GRAY ROBINSON, P.A.**
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on July 1, 2024, a true and correct copy of the foregoing was served on David R. Osborne, Esq. and Samantha K. Harris, Esq., Counsel for Plaintiff, by electronic mail at dosborne@goldsteinlp.com and sharris@allenharrislaw.com.

*/s/Kristie Hatcher-Bolin*
**KRISTIE HATCHER-BOLIN**
Florida Bar No. 521388

**INTERROGATORY NO. 1:**

State your full name, current position at the University of Central Florida (UCF), your position at the time of the events detailed in the complaint, and describe your duties and responsibilities as they relate to faculty conduct and disciplinary actions.

**ANSWER NO. 1:**

**S. Kent Butler**

**Professor of Counselor Education**

**Interim Chief Officer of Equity, Inclusion, and Diversity (June 2019-July 2021)**

**My duties as the Chief Officer of EID did not include any responsibility regarding faculty conduct or disciplinary action.**

**INTERROGATORY NO. 2:**

Identify all public statements, whether written, audio-recorded, or video-recorded, that you have issued on official UCF web pages or social media accounts, including but not limited to Twitter, Facebook, and Instagram. Include the dates of such statements or communications and their substance.

**ANSWER NO. 2:**

**Defendant objects to this interrogatory as it is overbroad, unduly burdensome, vague, not relevant to any party's claim or defense in this matter, and not calculated to lead to the discovery of admissible evidence.**

**INTERROGATORY NO. 3:**

Identify all individuals with whom you communicated regarding your June 4, 2020, video statement about NEGY on UCF's Twitter account, including but not limited to any individuals with whom you consulted or who viewed and/or approved the video statement prior to its release.

**ANSWER NO. 3:**

**To the best of my knowledge and recollection, the June 4, 2020 video statement was an excerpt of a comment I made during a UCF Student Virtual Forum held that same day, June 4, 2020. I did not separately record this video, nor did I speak with anyone about posting this video or clips of my statements from the UCF Student Virtual Forum on June 4, 2020. Rather, I believe that others at UCF, such as Patrick Burt and his staff in UCF Marketing (the Communications Office), used the clip of statements I made during the Student Virtual Forum to create a new video that they posted separately to UCF's Twitter account. Nevertheless, the video statement that was posted was not "about Negy"—there was a single reference to #UCFfirehim as one of the ways students had been attempting to share their concerns with UCF. The primary purpose of the UCF Student Virtual Forum, including my statements, was to further address the unrest and concerns that immediately followed the George Floyd shooting just the week before.**

## INTERROGATORY NO. 4:

Identify all individuals with whom you communicated regarding the June 4, 2020, written statement you co-authored entitled "Addressing Intolerance in our Community," including but not limited to any individuals with whom you consulted or who viewed and/or approved the statement prior to its release.

## ANSWER NO. 4:

**To the best of my knowledge, Patrick Burt and his team, who lead UCF Marketing (the Communications Office), drafted the statement. I did not draft the statement myself, but reviewed the statement and agreed to be attributed as a co-author. I would have spoken to President Cartwright, Dr. Johnson, and Mr. Burt before approving the release of the statement under my name.**

**INTERROGATORY NO. 5:**

Identify all individuals involved in the preparation, planning, or hosting of the June 5, 2020 "Virtual Conversation About Race and Unity" in which you participated, including but not limited to any individuals who provided you with information regarding any contemplated investigation or disciplinary action into NEGY prior to that conversation.

**ANSWER NO. 5:**

**First, the June 5, 2020 Virtual Conversation was not organized to address Plaintiff. Rather, this Virtual Conversation was organized to address the general concerns of students surrounding the murder of George Floyd. Moreover, at the time of the June 5, 2020 Virtual Conversation, I was new to administration and was not privy to any conversations nor provided any information regarding any contemplated investigation or disciplinary action against Plaintiff. Rather, we in the administration were receiving complaints about Plaintiff, both his statements in his Tweets and his conduct in the classroom and these complaints were raised during the June 5, 2020 Virtual Forum. We do not have the authority to take any action against a faculty member based on his speech and informed the students of that, but we could not ignore complaints about Plaintiff's conduct in the classroom. UCF realized these students who were complaining about Plaintiff needed to have an avenue to address their complaints about his classroom conduct and an alternative for students who did not want to take Plaintiff's classes.**

While not organized to address Plaintiff, it is my understanding that the Communications Office was involved in the preparation and planning of the event. The event was hosted by UCF and I facilitated the event. The names of the panelists can be viewed on the video:

https://www.youtube.com/watch?v=wXpR77xEglU&t=1432s

**INTERROGATORY NO. 6:**

Describe in detail what you meant when you told an incoming student on June 5, 2020, that "the wheels are in motion in terms of what needs to happen in regards to" NEGY.

**ANSWER NO. 6:**

**This Interrogatory is not only misquoted but also incorrectly assumes my statements were "in regards to" Plaintiff. To the best of my knowledge and recollection, the student stated she was an incoming psychology major and had concerns about taking her introductory psychology class with Plaintiff. Many students complained about Plaintiff, including his classroom conduct, and complained about having to take his classes. UCF was considering adjusting the class schedule so that there would be additional psychology classes, so that students who did not want Plaintiff as their professor would have an option to take the same classes with other professors. I was referring to that ongoing review of the class options available to UCF, not to any investigation or discipline of Plaintiff. I had no role whatsoever in the investigation or subsequent discipline of Plaintiff**

**My role was to address student complaints so they felt they were being heard. Prior to late May/early June 2020, I was unaware of any complaints about Plaintiff. Part of my statements during this June 5, 2020 Virtual Conversation were intended to inform students that if they have problems with professors, they need to provide that information to administration so that their claims can be reviewed.**

Page 7

**INTERROGATORY NO. 7:**

Describe in detail any involvement you had in the investigation into NEGY, including the initial determination that an investigation was warranted, the grounds for the investigation, and the disciplinary actions recommended and/or taken as a result of the investigation into NEGY.

**ANSWER NO. 7:**

**I did not have any involvement whatsoever in the review of complaints against Plaintiff, the subsequent investigation of Plaintiff, or the disciplinary action that was recommended or taken against Plaintiff.**

**<u>INTERROGATORY NO. 8:</u>**

Identify and describe any training or instructions you received that were relevant to the handling of NEGY's case, including training on discrimination, harassment, protected speech, AND retaliation.

**<u>ANSWER NO. 8:</u>**

**I receive mandatory training generally as part of my employment with UCF, but none of the training I have received had any relevancy to the "handling" of Plaintiff's case as I did not have any involvement whatsoever in the review of complaints against Plaintiff, the subsequent investigation of Plaintiff, or the disciplinary action that was recommended or taken against Plaintiff.**

**INTERROGATORY NO. 9:**

Identify any meetings, conferences (including teleconferences) discussions, documents, or communications that you received, participated in, or were aware of regarding NEGY, his Twitter posts, or the subsequent investigation, including those prior to the initiation of the disciplinary process, including the dates of such meetings, the participants, and their substance.

**ANSWER NO. 9:**

**June 4, 2020 UCF Student Virtual Forum: The forum was scheduled to discuss the return to campus following the pandemic, but due the timing of the shooting of George Floyd and the posting of Plaintiff's tweets, there also was some discussion regarding those topics during the Virtual Forum. To the best of my recollection, the discussion about Plaintiff was primarily that his tweets were not representative of UCF's views. The names of the participants and their comments are set forth in the video link:**

**https://www.youtube.com/watch?v=JfPTfmYYDzA**

**June 4, 2020, "Addressing Intolerance in Our Community" article: To the best of my knowledge, I would have spoken to Patrick Burt or members of his staff, who lead UCF's Communications Office and drafted the statement, as well as President Cartwright and Dr. Johnson, but I cannot recall any specifics about the article other than I ultimately agreed it could be posted and attributed, in part, to me.**

**June 5, 2020 "Virtual Conversation About Race and Unity":** This forum was scheduled to address student concerns regarding the murder of George Floyd, systemic racism, and related issues facing students, but students also complained about Plaintiff during this forum.   The names of the participants and their comments are set forth in the video link:

https://www.youtube.com/watch?v=wXpR77xEglU&t=1432s

I also recall meeting with students, along with President Cartwright and Dr. Johnson, at gatherings or protests students organized on campus on other days in June 2020. President Cartwright, Dr. Johnson, and I were trying to listen to the students, let them know that they were being heard, and calm the situation.  Many students complained about Plaintiff, but I cannot recall all of the complaints made about him other than that they generally complained about not only his Tweets but how he acted in the classroom.

I had no conversations with anyone regarding the subsequent investigation or the disciplinary process as I was not involved whatsoever in the investigation or disciplinary process.

**INTERROGATORY NO. 10:**

Identify any meetings, discussions, documents, or communications that you received, participated in, or were aware of regarding First Amendment considerations in the context of NEGY's case, including the dates of such meetings, discussions, or communications, the participants, and their substance. This interrogatory is not asking for communications protected by the attorney-client privilege.

**ANSWER NO. 10:**

**I was not involved whatsoever in the review of complaints, the subsequent investigation, or the disciplinary process, and do not recall any specific conversations with any person, although everyone agreed that UCF could not do anything and would not do anything about Plaintiff's tweets because they were protected speech. This is demonstrated by the many comments made during the virtual town halls in which administration explained that all UCF students, faculty, and staff, enjoy the freedom of expression and cannot be punished for statements they make as private citizens.**

**INTERROGATORY NO. 11:**

Identify all communications between you and external parties, including but not limited to state or federal entities, government officials, donors, legislators, and/or members of the media, that reference NEGY, his Twitter posts, or the subsequent investigation into alleged misconduct by NEGY.

**ANSWER NO. 11:**

I was not involved whatsoever in the review of complaints, the subsequent investigation of Plaintiff, or the disciplinary against concerning Plaintiff, and did not engage with any state or federal entities or government officials. I do not recall having any conversations or communications with the media or with donors as my role did not involve such communications, which would have been directed to UCF Marketing. Aside from the student forums addressed above, I did not spend time addressing Plaintiff. However, emails regarding Plaintiff are being produced in response to Plaintiff's Request for Production.

**INTERROGATORY NO. 12:**

Identify the location of any electronically-stored information (ESI) related to any matters alleged in the Complaint, the software or database management system in which the electronically-stored information is maintained, any rules or procedures that UCF has implemented concerning document retention, and the individuals who maintain custody or control of such electronically stored information.

**ANSWER NO. 12:**

**I provided university personnel responsible for handling this matter all of the emails that were sent to me by individuals who complained about matters pertaining to Plaintiff. They were stored in a folder marked "Negy Emails," which remain within my university provided OneDrive account. I did not respond, to my recollection, to any of these emails, but instead forwarded them to the appropriate university personnel.**

**Defendant would state that to the best of his knowledge, and answering in his individual capacity and not as a corporate representative for UCF, that UCF has implemented the following rules and procedures governing document retention, which are attached to these answers.**

## INTERROGATORY NO. 13:

Identify all documents referred to or relied upon in answering these interrogatories, or which otherwise relate to your answers to these interrogatories.

## ANSWER NO. 13:

**I have relied mostly on my memory, but have reviewed portions of the videos from the student virtual forums referenced in the interrogatory answers above.**

**INTERROGATORY NO. 14:**

Identify each person who provided information for the answers to these interrogatories or participated in the preparation of the answers, and for each individual identified, describe the assistance or information given and identify the interrogatory answer(s) to which such assistance or information relates.

**ANSWER NO. 14:**

**I answered these interrogatories with the assistance of my counsel.**

**INTERROGATORY NO. 15:**

Excluding the instant Action, have you ever been a party to a lawsuit or legal proceeding, whether civil, criminal, or administrative? If yes, state the following for each such action: the name of the parties; the date the action was filed; the caption and case number of the action; the nature of the action; and the disposition of the action.

**ANSWER NO. 15:**

**To the best of my recollection, I have received a couple of traffic violations in Seminole County since 2014, but the cases were dismissed.**

**INTERROGATORY NO. 16:**

Identify any Record Disposition Requests submitted by you or on your behalf concerning NEGY or NEGY's statements, conduct, investigation, termination, or subsequent grievance.

**ANSWER NO. 16:**

**None.**

**INTERROGATORY NO. 17:**

State whether you have deleted, allowed another to delete, used an electronic device that automatically deletes, or otherwise disposed of any communications, including but not limited to email, text messages, or direct messages, concerning NEGY or NEGY's Twitter posts, conduct, investigation, termination, or subsequent grievance.

**ANSWER NO. 17:**

**I have not personally deleted, granted another permission to delete, used an electronic device that automatically deletes, or otherwise disposed of any communications.  To the best of my knowledge, answering in my individual capacity and not as a corporate representative for UCF, communications maintained on UCF's server are stored in accordance the provisions of the Florida Public Records Act, the policies addressed in my Answer to Interrogatory 12, and the applicable General Records Schedules established by the Florida Department of State, Division of Library and Information Services.**

## INTERROGATORY NO. 18:

Identify any ephemeral messaging application or service, including but not limited to Slack, WhatsApp, Snapchat, Signal, or Telegram, you use or have used at any time since January 1, 2020.

### ANSWER NO. 18:

**Defendant objects to this interrogatory as it is overbroad, vague, unduly burdensome, not relevant to any party's claim or defense in this matter, and not calculated to lead to the discovery of admissible evidence.**

**INTERROGATORY NO. 19:**

Identify any cellular phone numbers assigned to you, the name of the carrier for each cellular phone or number, and the name of the primary account holder for each cellular phone or number, since January 1, 2020.

**ANSWER NO. 19:**

**Defendant objects to this interrogatory as it is overbroad, vague, unduly burdensome, not relevant to any party's claim or defense in this matter, and not calculated to lead to the discovery of admissible evidence.**

## VERIFICATION

I SWEAR THAT ALL ANSWERS TO THE FOREGOING
INTERROGATORIES ARE TRUE, CORRECT, AND COMPLETE TO THE
BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

_____
S. Kent Butler, Defendant

STATE OF CONNECTICUT

COUNTY OF _New Haven_

    The foregoing was acknowledged before me this 13 day of _June_, 2024,

by **S. Kent Butler**, ☐ who is personally known to me, or ☒ who provided evidence of

his identity, who executed it in my presence, and who acknowledged that it was freely

and voluntarily executed for the purposes therein recited and who after first being

sworn, deposes and states that the foregoing Answers to Interrogatories are true,

correct, and complete.

_____
Signature of Notary Public

_____
(Print Notary Name)

AFFIX NOTARY STAMP        My Commission Expires: _May 31, 2025_

JOHN RICHARD PACIFICO
Notary Public, State of Connecticut
My Commission Expires May 31, 2025

☐ Personally known, or
☒ Produced Identification
Type of Identification Produced:
_Fl Drivers License_

| Title | Completion Date |
|---|---|
| New Faculty Orientation | 8/9/2007 |
| Paying for College 101 | 4/8/2016 |
| Am I Ready For Promotion? | 11/15/2016 |
| Straight Talk: Dossier | 3/8/2017 |
| Be You Storytelling Project | 4/12/2018 |
| CDEP: Hiring Process: Nuts & Bolts | 5/2/2018 |
| Academic Leadership Academy: Kick-off Celebratic | 8/16/2018 |
| Academic Leadership Academy: 081718 | 8/17/2018 |
| Academic Leadership Academy: 090718 | 9/7/2018 |
| Academic Leadership Academy 110218 | 11/2/2018 |
| Academic Leadership Academy: 120718 | 12/7/2018 |
| Overview of 2018 COACHE survey | 12/11/2018 |
| Academic Leadership Academy: 011819 | 1/18/2019 |
| Academic Leadership Academy: 020119 | 2/1/2019 |
| Academic Leadership Academy: 030119 | 3/1/2019 |
| Academic Leadership Academy: 040519 | 4/5/2019 |
| Academic Leadership Academy: 042619 | 4/26/2019 |
| Ethical Leadership Directors+ | 9/18/2019 |
| Transforming HSI | 9/18/2019 |
| How Sharing Power & Privilege | 10/14/2019 |
| Annual Code of Conduct 2020 | 10/14/2020 |
| What is Racial Healing? | 10/22/2020 |
| Our Community,Campus, Stories | 4/7/2021 |
| 2021 Code of Conduct Refresh | 9/27/2021 |

| Name | Completion Date and Time |
|---|---|
| 2023 Code of Conduct Refresher Training | 11/2/2023 10:45 |
| Search Training | 9/11/2023 12:50 |
| UCF Annual Notices to Employees 2023 | 5/5/2023 15:39 |
| Annual Notices to Employees 2022 | 1/23/2023 14:25 |
| 2022 Code of Conduct Refresher Training | 11/8/2022 14:46 |
| Annual Notices to Employees 2021 | 5/19/2021 9:00 |
| Kognito at-risk for FAC & STF | 10/16/2020 9:00 |
| Annual Notices to Employees 2020 | 5/11/2020 9:00 |
| Combination UCF Employee Code of Conduct/Speak Up – All Current Employees 2( | 10/9/2019 9:00 |
| Annual Notices to Employees 2019 | 4/26/2019 9:00 |



U N I V E R S I T Y   O F   C E N T R A L   F L O R I D A

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| | 7/10/2019 | 2-003 |
| Records Management | **Supersedes:** | **Page**    **Of** |
| | | **1**    **6** |
| | **Responsible Authority:** | |
| | Vice President and Chief Operating Officer | |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all university and direct support organizations, colleges, departments, units, employees, and volunteers and to vendors, contractors, and consultants to the extent that they meet the definition of contractor under the Florida Statutes section 119.0701.

## BACKGROUND

Each public agency in the state of Florida is required to designate a records management liaison officer, and to establish and maintain a program for the management of agency records. This policy institutes procedures for complying with such requirements when related to university records.

## POLICY STATEMENT

The university must effectively manage the retention and disposal of records in compliance with federal and state regulations. This policy applies to the retention and disposition of university records. The university records management liaison officer (RMLO) is designated by the university president. The RMLO provides oversight and guidance in the records management process and acts as the liaison between UCF and the Florida Department of State Division of Library and Information Services. The holder of the Record of Copy is responsible for ensuring the retention and documented disposition of that record. The university will provide support and resources to university personnel, all of whom serve as records custodians and are responsible for the records they generate and maintain.

**DEFINITIONS**

**Duplicate**. Copies produced by duplicating, as defined in the Florida Statute section 283.30. (Florida Statute § 119.011(7)). Duplicates may also be called convenience copies.

**Florida Department of State Division of Library and Information Services.** The department at the state level that coordinates and supports records management for public agencies.

**Personal Records.** Personal items employees have or receive at work that are not related to university business. These records are not subject to public record disclosure or retention requirements.

**Public Records**. All documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by the agency, according to the Florida Statute, section 119.011(12).

**Record Copy**. The official record of a document which is subject to the records retention schedule requirements and the University of Central Florida records management process. The Record Copy may not be the original and may also be called the "Master Copy."

**Records Custodian.** An employee who has supervision and control over a public record or who has a legal responsibility for the care, keeping, or guardianship of the record is a records custodian as to that record. "Custodian of public records" under Florida Statute section 119.011(5) is defined as the elected or appointed state, county, or municipal officer charged with the responsibility of maintaining the office having public records, or his or her designee.

**Records Custodian Liaison.** An employee within a department who serves as a point of contact with the university RMLO and manages records retention and disposition for that department.

**Records Management Liaison Officer.** The point of contact within the university that assists with records management and acts as a liaison between the university and the Florida Department of State Division of Library and Information Services.

**Records Retention Schedule.** A document that provides minimum retention periods for categories of records as determined by the Florida Department of State Division of Library and Information Services.

**Retrospective Scanning or Microfilming Project**. A bulk microfilming or digitizing of existing records that are currently in another media format (e.g., paper). The university retains a copy of the record (on microfilm or digital); however, approval for disposition of the physical copies is required.

**Storage.** The maintenance of records in physical or digital form in accordance to Florida Statute 119.021, Custodial Requirements; maintenance, preservation, and retention of public records.

**PROCEDURES**

1.  Creation and Maintenance of Active and Archived Records
    a.  Employees will refer to [Records Management at UCF](#) for current procedures for appropriate storage and maintenance of records.

2.  Disposal of Records
    a.  The records custodian or records custodian liaison will use the appropriate retention schedules to determine when records have both 1) met its retention period as determined by the applicable retention schedule and 2) have lost its institutional value. The most current retention schedules are available at [Records Management at UCF](#) and can be updated by the state of Florida at any time.
        i.  For document types not found in the retention schedules, the RMLO will assist in determining the retention schedule and if necessary will work with the state for a determination. Once determined, the retention schedule will be the official retention period for that document type.
        ii.  Duplicates may be destroyed without documentation. Duplicates should be destroyed according to the retention policy. Duplicates retained after the Record Copy has been disposed are subject to public records requests. If it cannot be determined whether a document is a duplicate, it must be treated as a Record Copy.
    b.  The records custodian or records custodian liaison will submit the Records Disposition Request form to [RMLO@ucf.edu](mailto:RMLO@ucf.edu).
    c.  The RMLO will review the request. Once it is determined that all criteria are met, approval for disposition of documents and guidance on method of disposition will be sent to the records custodian.
    d.  Records are kept until disposition approval is received.
        i.  Dispositions should be implemented through the least burdensome method consistent with the character of the documents. Some documents may be recycled; however, when documents contain sensitive information, they should be destroyed by secure shredding, incinerating, etc.
    e.  After disposal, the records custodian shall return the completed form by email to [RMLO@ucf.edu](mailto:RMLO@ucf.edu). This final document must include all signatures.
        i.  The department or unit is responsible for permanently maintaining a digital or physical record of their disposition forms that are accessible in the event of a public records request.
    f.  The disposition process is now complete.

3. Retrospective Scanning or Microfilming Project
   a. The records custodian or records custodian liaison will identify records that
      have been kept in one format (e.g., paper) that can be converted to digital or
      microfilm format and will conduct the scanning or microfilming project.
      i. Scanned documents must be in at least 300 dpi resolution, reviewed
         for quality, accuracy, and completeness, and stored using a
         standardized naming protocol for efficient access to individual
         records.
      ii. The records custodian, or department or unit, must have a
          documented process or procedure for managing digital files to include
          tracking retention periods according to the appropriate schedules and
          documenting disposition. As with paper documents, the content of
          scanned or microfilmed documents determines the retention period.
   b. The records custodian or records custodian liaison will submit the Scanning
      or Microfilming Request form to RMLO@ucf.edu.
   c. The RMLO will review the request and once it is determined that all criteria
      have been met, approval for disposal of the records in the original format will
      be sent to the records custodian.
   d. Once approved, the department may now dispose of the original documents.
   e. After disposal, the records custodian shall return the completed form to
      RMLO@ucf.edu. The final document must include all signatures.

4. Exceptions
   a. Items with an Obsolete, Superseded, or Administrative value lost (OSA)
      retention in the records retention schedules do not need to be documented
      unless they are part of a retrospective conversion project.
      i. Examples of OSA items include duplicates, transitory messages, and
         blank forms.
   b. "Exempt records" and "confidential and exempt records" are two different
      categories of records that have specific requirements for destruction. Please
      refer to university policy 2-100 Florida Public Records Act: Scope and
      Compliance for a list of exempt records. Further questions should be directed
      to the Office of the General Counsel which serves as the university's
      custodian of public records.


**RELATED DOCUMENTS**

- 4-001 Retention Requirements for Electronic Mail, http://policies.ucf.edu
- 2-100 Florida Public Records Act, http://policies.ucf.edu
- UCF-3.045 Sensitive Information Disclosure, https://regulations.ucf.edu
- Florida Administrative Code Rule 1B-24.003, *Public Records Scheduling and
  Disposition:* https://www.flrules.org/gateway/RuleNo.asp?title=PUBLIC RECORDS
  SCHEDULING AND DISPOSITION&ID=1B-24.003

- Florida Statutes Chapter 119, Public Records:
  http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0100-0199/0119/0119.html
- Florida Administrative Code Chapter 1B-26:
  https://www.flrules.org/gateway/ChapterHome.asp?Chapter=1B-26
- State of Florida General Records Schedules: http://dos.myflorida.com/library-archives/records-management/general-records-schedules/

**RELATED INFORMATION**

Email archiving tutorial:
https://publishing.ucf.edu/sites/itr/cst/Documents/Exchange/Archiving%20in%20Outlook%202010.pdf

http://admfin.ucf.edu/records-management includes additional resources for:
- Retention schedules
- Storage of records, locations and guidelines
- Disposition guide

**CONTACTS**

- Records Management Liaison Officer and Records Management Advisory Board
  Web: http://admfin.ucf.edu/records-management
  Email: RMLO@ucf.edu

**FORMS**

- Records Disposition Request: https://admfin.ucf.edu/wp-content/uploads/sites/13/RECORDS_DISPOSITION_REQUEST-1-1.pdf
- Scanning or Microfilming Request: https://admfin.ucf.edu/wp-content/uploads/sites/13/SCANNING_MICROFILMING_REQUEST-1-1.pdf

**INITIATING AUTHORITY**

President

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 2-003

University Policies and
Procedures Committee Chair: _____ Date: 6/27/19

President or Designee: _____ Date: 7/10/19

---



# Florida Public Records Act: Scope and Compliance

| | |
|---|---|
| **Policy Number** | 2-100.6 |
| **Responsible Authority** | Vice President and General Counsel |
| **Initiating Authority** | Vice President and General Counsel |
| **Effective Date** | 5/2/2023 |
| **Date of Origin** | 5/2/2023 |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all University of Central Florida departments, units, and employees.

## DEFINITIONS

**Public Records.** All documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software or other material, regardless of physical form, or characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, which are used to perpetuate, communicate, or formalize knowledge.

## POLICY STATEMENT

It is the policy of the University of Central Florida to comply with Florida's public records law and Florida's retention schedules for public records.

All documents and other written materials that are made or received pursuant to law or that are made or received in the transaction of official university business and are used to perpetuate, communicate, or formalize knowledge are public records, which, regardless of form, are open for public inspection unless the legislature has specifically exempted them from disclosure. **Most documents, including email messages and text messages, created or received by University of Central Florida employees in connection with official business are public records.** Unless a public record is exempt by statute from disclosure pursuant to the public records statute, it must be produced to any person upon request. Before documents are

released pursuant to a public records request, any exempt documents or exempt information
contained within documents must be removed.

---

**PROCEDURES**

---

## I.    Identification and Retention of Public Records

A public record can be in any format (including email, text message, letter, notes, spreadsheet,
ledger, etc.), as long as (i) it is made or received pursuant to law or ordinance or in connection
with the transaction of official business and (ii) it is used to perpetuate, communicate, or
formalize knowledge. Additionally, ownership of the device, machine, or account in which a
record is created is irrelevant to whether the record is a public record. For example, if an
employee uses a personal email account to send official business emails, then those messages
will be public records.

Certain documents, even when created in the course of conducting official business, do not
perpetuate or formalize knowledge and, therefore, are not public records. For example,
transitory messages which generally include such things as voicemail or phone messages, self-
sticking notes, and email messages with short-lived or no administrative value. Documents of
this type need only be kept as long as their short-term value lasts.  Also, not public record, even
when created for work purposes, are notes or drafts created by an employee for their personal
use so long as these personal notes or drafts are neither shared with anyone nor filed as a
permanent record of events. However, if these non-circulated documents are placed in the file
"to perpetuate knowledge," they become public records and are subject to disclosure.

**Employees may not delete public records for which they are the custodian except in
accordance with the record retention schedules applicable to UCF as a state university.**

All public records must be retained for a period of time that varies depending on the nature of
the documents. Retention periods for public records can be found in the university's general
records and the state and local agencies' retention schedules (see Related Information for links
to these schedules).

It is acceptable to retain in paper form documents that were originally sent in electronic form and
vice versa. For example, employees may archive electronic mail messages for retention
purposes, or they may print mail messages to be filed and retained. Similarly, files may be
scanned into an electronic database and the original paper files discarded.

## II.    Receiving a Public Records Request

Any department or office may be the recipient of a public records request.  Requests that fall
into specific categories listed in Section IV below should be directed to the appropriate office
designated by this policy. Thus, media requests should be directed to UCF Communications;
and requests seeking university statistical data should be directed to UCF Analytics and
Integrated Planning. If a request seeks information that is in the possession or custody of the
department or office receiving the request, then that department or office should accept the
request and proceed to respond to it in accordance with the instructions below, or should

designate an individual in another office (such as UCF Communications) to respond. If the department or office receiving the request is not the custodian of the records requested, then the request should be forwarded to the appropriate department or office in possession or custody of the requested records (or to the appropriate office as listed in Section IV). If the request seeks records held by multiple offices and the requestor has made the request to an office which holds at least some of the records requested, that office should either receive the request and forward appropriate portions of the request to other departments or offices as needed or should designate an individual in another office to respond. **The department should send a copy of the public records request to the UCF Office of the General Counsel to provide guidance in determining what records are exempt from disclosure.**

## III.    Format for a Public Records Request

There is no particular format for a public records request. Public records requests may be made in writing or orally. A department receiving a request for public records may ask that the requestor put his or her request in writing for the sake of clarity, and may even suggest the use of a particular form, but may not require it. A request cannot be denied because the requestor refused to identify himself or herself.  A department may ask for contact information from a requestor, including a name, to allow for communication regarding the request, but cannot require such information, even if the requestor's refusal will make handling of the request more difficult.  A person does not have to articulate or prove a "legitimate" need for a public record to be entitled to inspect it. A request cannot be refused because the requestor does not explain the reason for the request.  Where a request is unclear, a department should ask for clarification; but if the requestor refuses to clarify, then the department should attempt to respond to the unclear request to the best of its ability.

## IV.    Designated Offices for Specific Request Categories

All public records requests seeking university statistical data (such as student enrollment figures or lists of employees) or demographic data should be forwarded to UCF Analytics and Integrated Planning, 12424 Research Parkway, Suite 215, Orlando, FL 32826-3269, (407) 823-5061, or iroffice@ucf.edu.

All public records requests seeking university personnel records should be forward to UCF Human Resources, 12201 Research Parkway, Suite 200, Orlando, FL  32826, (407) 823-2771 or records@ucf.edu.

All public records requests seeking purchasing records, including procurement forms and details, should be forwarded to the UCF Procurement Services, 12424 Research Parkway, Orlando, FL  32826, (407) 823-2661, or procurement@ucf.edu.

All public records requests seeking UCF Police Department records should be forwarded to UCF Police Department, 3610 Libra Drive, Orlando, FL 32826, (407)823-3088, or police.records@ucf.edu.

All media requests should be referred to UCF Communications, (407) 823-5828.

All requests from legal offices or relating to legal matters, including regulation development, should be referred to the UCF Office of the General Counsel, 4365 Andromeda Loop N., MH360, Orlando, FL  32816-0015, (407) 823-2482 or gcounsel@ucf.edu.

These designated departments will coordinate the response to the request with the requestor and, as applicable, the appropriate department or unit responsible for maintaining the records.

All other requests should be handled by the department(s) or office(s) responsible for maintenance of the requested records, or by the office or individual designated for handling the request.

## V. A.   Responding to a Public Records Request

The university must respond to a public records request within a reasonable period of time after receiving the request. What constitutes a reasonable period of time depends upon the circumstances surrounding the request, including the nature of the request, the size of the request, the likely quantity of records to be produced, whether extensive use of information technology resources or clerical services is required, whether the requestor or the department or custodian has multiple requests pending, staffing levels, and the timing of the request (e.g., whether holidays intervene).

**The department chair or administrative supervisor of the department or unit in which the records are maintained is responsible for appointing one or more persons to gather the requested documents.** When the response to the request is being coordinated by another office such as UCF Analytics and Integrated Planning or UCF Communications, the respondent may either arrange a time for inspection of the documents or provide copies of the documents to the requestor.

Any department or office may seek assistance from the UCF Office of the General Counsel to determine how to respond to a request, identify exempt and confidential information, and calculate any appropriate charges for the request. Where records are requested from multiple departments or offices in one request, the request may be divided amongst those departments or offices, or the UCF Office of the General Counsel may intervene to coordinate the response to the request.

## V. B.   Public Record Exemptions

**Records must be reviewed for exempt material prior to being produced in response to a public records request.** State and federal laws exempt certain types of public records, or portions thereof, from disclosure under the public records law. Exemptions that frequently apply to University of Central Florida records include but are not limited to:

a.   academic evaluations of faculty
b.   education records pursuant to federal and state protections, also known as the FERPA exemption
c.   social security numbers
d.   certain types of research records
e.   most direct support organization records
f.   personally identifiable medical information
g.   most benefit enrollment information
h.   bank and other financial information (e.g., credit card data)
i.   personal information regarding law enforcement officers or their families.

Documents that are exempt from the public records law will not be produced to the public, even if requested. Documents that are public records but contain exempt information will be produced after removing the exempt information, unless the exempt information in the document is so extensive that removal is not feasible. The determination of which documents or information are exempt from the public records law will be made by the UCF Office of General Counsel.

## VI.    Agency Custodian of Public Records

The UCF Custodian of Public Records is the Office of the General Counsel, (407)823-2482, gcounsel@ucf.edu, University of Central Florida, 4365 Andromeda Loop N., Millican Hall, Suite 360, Orlando, FL 32816-0015.

Contractors doing business with UCF may be subject to public records requests for certain records directly related to the business done with UCF. A request to inspect or copy public records relating to a UCF contract for services must be made directly to UCF.  If UCF does not have the requested records, the UCF department working with the contractor (or, as appropriate, the UCF Custodian of Public Records) shall request the records from the contractor. If at any time the contractor has questions regarding the application of the Florida Public Records Law to the contractor's business with UCF, then the contractor should contact the UCF Custodian of Public Records.

A requestor who feels that UCF has unlawfully refused to permit a public record to be inspected or copied must provide at least five business day's written notice to the UCF Custodian of Public Records, at the address above, prior to initiating any action against UCF regarding the requestor's disputed request.

## VI.    Payment for Public Records Requests

If the person making the records request has requested copies of the documents, the university may charge the requestor 15 cents per one-sided copy or 20 cents per two-sided copy.  In addition, if retrieving or copying the public records requires extensive use of information technology resources or clerical and/or supervisory assistance, the university may assess a reasonable service charge based on the university's actual incurred costs. Reimbursement for these charges may be made to the department or unit that incurred the charge. For purposes of this policy, extensive use means at least one hour's worth of time (whether in response to a single request or multiple requests received in a one-month period of time) **An estimate of the charges will be given to the requestor prior to responding to the request. All charges will be collected before producing the requested documents.**

---

**RELATED INFORMATION**

---

Policy 4-001.1 Retention Requirements for Electronic Mail

Florida Public Records Act:  Chapter 119, Florida Statutes

Family Educational Rights and Privacy Act (FERPA): full text of regulations

General records retention schedules for state and local agencies and for public colleges and universities

      [Note:  both schedules are available at this link]

Records Management at UCF

---

**CONTACTS**

---

Youndy Cook
Office of the General Counsel
4365 Andromeda Loop N, Suite 360
(407)823-2482
gcounsel@ucf.edu
www.generalcounsel.ucf.edu

..

```
┌──────────────────────────────────────────────────────────────┐
│                      POLICY APPROVAL                         │
│              (For use by the Office of the President)        │
│   Policy Number: 2-100.6                                     │
│                                                              │
│   _____    Date: 4/20/23          │
│   Initiating Authority                                       │
│                                                              │
│   _____    Date: 4/13/2023        │
│   University Policies and Procedures Committee Chair         │
│                                                              │
│   _____    Date: 5/2/2023         │
│   President or Designee                                      │
└──────────────────────────────────────────────────────────────┘
```

History 2-100 8/15/04; 2-100.1 7/13/05; 2-100.2 5/20/09; 2-100.3 5/1/13; 2-100.4 1/14/14; 2-100.5 11/30/2017



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| Retention Requirements for Electronic Mail | 3/4/2020 | 4-001.2 |
| | **Supersedes:** 4-001.1 | **Page** 1   **Of** 4 |
| | **Responsible Authority:** Vice President for Information Technologies and Resources and CIO | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE** 12/10/2004

**APPLICABILITY/ACCOUNTABILITY**

This policy is applicable to all university personnel in the conduct of their official duties.

**BACKGROUND INFORMATION**

UCF recognizes the prevalence of email as a tool for conducting business. Email messages that are created or received in the transaction of official business generally qualify as public records. Public records, regardless of the format or means of transmission, must be retained and made available for public inspection upon request unless an exemption applies. However, not all official email is a public record. It is important for employees to understand the distinction so that they may satisfy applicable legal requirements.

**POLICY STATEMENT**

The intent of this policy is to assist employees in using electronic mail while complying with Florida's Public Records Law, Chapter 119, Florida Statutes. The policy is not meant to limit or discourage the use of email for conducting business; rather, the intent is to establish a framework for the proper use of email as an official business tool.

All documents and other written materials that are made or received pursuant to Florida Public Records Law or that are made or received in the transaction of official university business are public records, which, regardless of form, must be retained and made available for public inspection upon request unless an exemption applies. Electronic mail messages qualify as public records if they meet these criteria.

Florida's Public Records Law offers a challenge to the use of email because email is often exceptionally informal.  An email sent or received while conducting university business should be deleted only after it has been retained for the correct period of time as determined by the General Records Schedules. Each employee is responsible for ensuring that their email is managed in compliance with the Public Records Law, including retention requirements.


**DEFINITIONS**

**Employee.** Any person employed by the university in any capacity.

**Public Records.** All documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of physical form, or characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, according to  Florida Statutes, section 119.011(12) which are used to perpetuate, communicate, or formalize knowledge.

**Record Copy.** The official record of a document which is subject to the records retention schedule requirements and the University of Central Florida records management process. The Record Copy, which may also be called the "Master Copy," is not in some cases the original. By generally accepted practice, the sender's copy of a document is designated as the record copy. All other copies are regarded as duplicates, and they may be disposed of when they have lost administrative value. However, email messages received from outside agencies or from the public are regarded as record copies, and if their content qualifies them as public records, they must be retained. Additionally, administrative approvals received from within the UCF community are considered to be the record copy.

**Records Retention Schedules.** Documents that provide minimum retention periods for categories of records as determined by the Florida Department of State, Division of Library and Information Services.

**Transitory messages.** Messages that are created primarily for informal communication of information.  "Transitory" refers to short-term value based upon the content and purpose of the message, and not the format or technology used to transmit it.

**PROCEDURES**

1. UCF IT provides centralized email services for the university. The UCF enterprise email system is operated by Microsoft Corporation using the Office 365 platform.

2. Employees must retain email messages that qualify as a public record. Each employee will use the appropriate retention schedule and record category to determine when a record has met its retention period and has lost its administrative value. The most current retention schedules are available at Records Management at UCF and are subject to change by the state of Florida at any time.

3. Each year, administrative offices are required to file records disposition requests with Records Management at UCF for obsolete public records they wish to destroy. Employees should refer to Records Management at UCF for current procedures.

4. Other records, as outlined in Florida Administrative Code, Rule 1B-24.010(3), may be disposed of without filling out a records disposition request. For example, both duplicate and master copies of all transitory messages may be disposed of when they are obsolete, superseded, or have lost their administrative value. Duplicates retained after the Record Copy has been disposed remain subject to public records requests.

The record retention periods listed in the records retention schedules are minimum retention periods. In some cases records may need to be retained longer than the minimum retention period should there be a triggering event, such as: audit schedules, other retention requirements under law or accreditation standards, grant requirements, records disposition procedures, and, if applicable, pending litigation or records requests.

Account holders must also preserve university records, including emails, when any of the following apply: 1) those who have actual knowledge of matters in which it which it can be reasonably anticipated that a court action will be filed, 2) a subpoena has been served or notice of same has been given, and 3) records are sought pursuant to an audit or similar pending or possible investigation.

UCF enterprise Office 365 mailboxes (username@ucf.edu) are set to maximum storage size of one hundred gigabytes and ten years' retention; thus, any email messages that are not deleted by the account holder will automatically be retained for a duration sufficient to meet public record retention requirements. Email messages older than the ten-year period will be automatically purged but may be archived by the account holder prior to the end of the ten-year retention period. Additional information on email account provisioning and deprovisioning can be found in university policy 4-016.

**RELATED INFORMATION**

Email Provisioning, De-Provisioning, and Use Policy
https://policies.ucf.edu/documents/4-016.pdf

4-001.2 *Retention Requirements for Electronic Email* 3

Records Management at UCF
https://admfin.ucf.edu/records-management

Florida Public Records Act:  Chapter 119, Florida Statutes:
http://www.flsenate.gov/Laws/Statutes/2019

State of Florida General Records Schedules
https://dos.myflorida.com/library-archives/records-management/general-records-schedules/

UCF Policy 2-003 Records Management
https://policies.ucf.edu/documents/2-003.pdf

**INITIATING AUTHORITY**

Vice President for Information Technologies and Resources and CIO

| | |
|---|---|
| **POLICY APPROVAL** | |
| **(For use by the Office of the President)** | |

Policy Number: 4-001.2

Initiating Authority: _Joel L. Hartman_          Date: 3-2-2020

University Policies and
Procedures Committee Chair: _Rhonda L Bishop_  Date: 2/27/20

President or Designee: _____          Date: 3/5/20

History: 4-001 12/10/2004; 4-001.1 5/9/2013



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| | 9/16/2022 | 4-002.5 |
| Use of Information Technologies and Resources | **Supersedes:** | **Page   Of** |
| | 4-002.4 | 1        9 |
| | **Responsible Authority:** Vice President for Information Technology and Chief Information Officer | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE** 5/21/2008

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all University of Central Florida (UCF) all persons who use university information technology resources.

**BACKGROUND**

Computer accounts are provided to students and employees as a privilege associated with membership in the university community and with varying access rights according to institutional role and job duties.

UCF students and employees are generally free to use UCF computing, telecommunications, and electronic information resources as necessary to carry out their assigned responsibilities, subject to the authorized use of those resources as described in this policy and other UCF policies. The university reserves the right to disconnect or remove university or privately-owned equipment or restrict use thereof at any time as required to maintain the functionality, security, or integrity, of university computing and telecommunications resources.

This policy shall not be interpreted or applied to abridge academic freedom or the constitutional guarantees of freedom of speech or freedom of expression.

**POLICY STATEMENT**

The University of Central Florida's computing and telecommunications resources provide a wide range of capabilities for students and employees to communicate, store, and process information that is essential to the academic, research, and administrative functions of the university. UCF is committed to having a comprehensive information security program that includes a security awareness program to promote and reinforce good security practices, policies and procedures, employee responsibilities, and fulfills the university's legal and contractual obligations.

It is the policy of the University of Central Florida that all students and employees use computing and telecommunications resources ethically, responsibly, and in compliance with all applicable federal and state laws, university policies, and as prescribed by this policy's procedures. The goal of the security awareness program is to promote a strong information security culture at UCF, where users recognize the value and importance of protecting data and the privacy rights of individuals. Users of information systems must complete annual training, other training as appropriate, remain vigilant to the information security threats UCF faces, and report suspected threats immediately to the security incident response team (SIRT) via [sirt@ucf.edu](mailto:sirt@ucf.edu) or via a call to 407-823-5117.

Any violation of this policy and procedures may result in immediate loss of network and computer access privileges, seizure of equipment, or removal of inappropriate information posted on university-owned computers or university-supported internet sites. In addition to these corrective actions, failure to comply with this policy and procedures may result in disciplinary action up to and including termination for employees or expulsion for students.

**DEFINITIONS**

**Computing Resource**. Personal computers, laptops, and portable computing and communication devices, such as tablets, and smartphones, servers, mainframes, data storage systems, and similar equipment capable of processing, accessing, displaying, storing, or communicating electronic information.

**Controlled Unclassified Information (CUI).** A type of federal data consisting of unclassified information the government creates or possesses, or that an entity creates or possesses for or on behalf of the government, that a law, regulation, or government-wide policy requires or permits an agency to handle using safeguarding or dissemination controls.

**Credentials**. A combination of username, password, and possibly additional information such as a PIN or biometric scan that together are required to access a computer system or information resource.

**Departmental Security Coordinator**. A designated employee who serves as the primary contact between the respective department or business unit and the Information Security Office (ISO) for all matters relating to information security.

**Electronic Information Resource**. Data or information in electronic format and the computing and telecommunications resources through which such resources are accessed or used.

**Electronic Messages**. For purposes of this policy, electronic messages include electronic mail, text messages, videos, images, or sound files that are sent from a computing resource through a computer network.

**Internet Cloud Storage**. Data stored in third party data centers, e.g., CrashPlan, Dropbox, iCloud, Google Drive, OneDrive, Box, etc.

**Phishing.** An attempt to acquire sensitive information such as usernames, passwords, and credit card numbers, often for malicious purposes, through electronic communications, such as email or text messages.

**Restricted Data.** Any confidential or personal information that is protected by law or policy and that requires the highest level of access control and security protection, both in storage or in transit. Further defined in UCF policy 4-008 *Data Classification and Protection*.

**Role-based training.** Information security training that is tailored to an employee's specific job function, access, or as dictated by regulatory or contractual requirements. Role-based training may also include training specific to certain types of data sets that require tailored training, such as the Family Educational Rights & Privacy Act (FERPA), Health Insurance Portability and Accountability Act of 1996 (HIPAA), and certain types of data such as CUI.

**System Administrator.** A User who has responsibility to manage system updates on behalf of other Users.

**Telecommunications Resource**. Wired or wireless voice or data communications circuits or networks and associated electronic equipment.

**User**. A person who makes use of or accesses university computing, telecommunications, or electronic information resources.

A.   **User Responsibilities**
1. Users are responsible for any activity originating from their accounts that they can reasonably be expected to control. Credentials must not be shared with others.

2. Users must comply with all applicable conduct codes and rules, laws, and regulations governing the use of computer and telecommunications resources.

Examples include laws regarding libel, privacy, copyright, trademark, obscenity, and child pornography; the Florida Computer Crimes Act; the Electronic Communications Privacy Act; and the Computer Fraud and Abuse Act.

3. Except in isolated or occasional circumstances, the computing and telecommunications resources of the university must be used only for purposes directly related to or in support of the academic, research, service, or administrative activities of the university. In accordance with university regulation UCF-3.018 Conflict of Interest or Commitment; Outside Activity or Employment if a university employee wishes to use university facilities, equipment, materials, or software in connection with an outside activity or employment, permission must be obtained in advance using the appropriate form outlined in the regulation.

4. Users must not attempt to undermine the security or the integrity of computing systems or telecommunications networks and must not attempt to gain unauthorized access to these resources. Users must not employ any computer program or device to intercept or decode passwords or similar access control information. If security breaches are observed or suspected, they must be immediately reported to the security incident response team (SIRT) via sirt@ucf.edu or via a call to 407-823-5117.

5. Users must not use computer or telecommunication systems in such a manner as to degrade or disrupt the normal operation of voice or data networks or university computer systems or to intentionally damage or disable computing or telecommunications equipment or software.

6. Users must ensure that software acquisition and utilization adhere to the applicable software licenses and U.S. copyright laws. Users must maintain sufficient documentation to prove that all software installed on any computing resource assigned to them was legally obtained and is installed in conformance with the applicable license(s). Backup copies of software may be made only if expressly permitted by the applicable license(s).

7. Users of university computing facilities and telecommunications networks must use these resources prudently and avoid making excessive demands on these facilities in a manner that would knowingly impair access to or use of these resources by others.

8. Employees with access to university information systems must complete an online Security Awareness Training course every 12 months. Newly hired employees are required to complete the information security training course within the 30 days from date of hire or start date and every 12 months thereafter.

9. Employees with access to university information systems may be required to complete supplemental role-based training based upon policy, regulatory, or

contractual requirements, depending on job role and/or prior to gaining access to information systems containing certain types of data such as FERPA, HIPAA, CUI, etc., that require additional training.

10. Users may receive simulated phishing messages as part of authorized internal simulated phishing campaigns.

11. Employees with access to university information systems may be required to complete additional supplemental training provided on an as-needed basis depending upon results from authorized internal simulated phishing campaigns.

12. Users with access to university information systems may be required to sign an "Acceptable Use Policy" and "Confidentiality Agreement" prior to receiving access to the university's information systems and data.

13. Users may lose access to university systems if they do not complete annual training, or any other assigned training as required.

14. System Administrator, or where appropriate, users, must take reasonable care to ensure their computing resources are not compromised by viruses or other malicious software. Additionally, any vulnerabilities classified as exploitable, critical, high, or medium must be resolved in a timely manner as described in 105 Patch Management Standards or when directed by the Information Security Office (ISO). It is the responsibility of the User or System Administrator to contact the UCF IT Service Desk for technical support if they are unable to address a vulnerability or compromised system.

15. Failure to address these vulnerabilities or maintain a secure system may result in the vulnerable or compromised systems being isolated from the UCF network until the issues are properly mitigated.

**B.    Use and Misuse of Computing and Telecommunications Resources**

1. The university's computing and telecommunications resources must not be used to impersonate another individual or misrepresent authorization to act on behalf of other individuals or the university. All messages transmitted through university computing resources and telecommunications networks must correctly identify the sender.

2. The computing and telecommunications resources of the university must not be used to make unauthorized or illegal use of the intellectual property of others, including copyrighted music, videos, films, texts, images, and software.

3. The computing and telecommunications resources of the university must not be used for unapproved commercial purposes, or for personal financial gain, without express written approval from the provost and executive vice president or his or her designee.

4.  Users are reminded of the university's commitment to a civil and non-discriminatory environment. Employees, including student employees, must not transmit to others or intentionally display in the workplace materials or messages that could reasonably be perceived as invasive of another's privacy; pornographic; unlawfully harassing; or disruptive to the operations of the university or any part thereof.

5.  Users must not use university computer or telecommunications resources to download, intentionally view, store, or transmit images that could reasonably be regarded as obscene or pornographic.

6.  The university provides email and other electronic messaging systems in support of official university business and functions. University employees are allowed to make incidental use of such systems for necessary personal messaging. University students may use university information technology resources for personal and recreational purposes, in addition to educational endeavors, but must do so in conformance with university policies.

7.  The following uses of university messaging systems by students, employees, or any other user of the messaging system are prohibited under this policy:

    a.  unlawful harassment as prohibited by university policy
    b.  threatening messages sent to individuals or organizations
    c.  messages that include malware, phishing, or hoaxes
    d.  spamming or high-volume email transmission other than those specifically allowed by the Broadcast Distribution of Electronic Mail Policy (4-006)
    e.  for commercial use or personal financial gain
    f.  false identification (any messages that misrepresent or fail to accurately identify the true originator)
    g.  messages that contain or direct users to computer viruses, worms, or other harmful software
    h.  any illegal activity or crime

8.  The university and its employees are prohibited from using any university resources in support of a political campaign or for campaign fund raising, even under a reimbursement arrangement. An example of prohibited use would be a university employee using university electronic messaging, internet, or telephone resources to solicit support of a political candidate or to raise funds for a candidate.

**C.    Access to and Disclosure of Electronic Information**

1.  Users should be aware that their uses of university computing and telecommunications resources are not completely private. The university does not routinely or without cause monitor individual use of these resources; however, the normal operation and maintenance of these resources require the backup and caching of data and communications, logging of activity, monitoring of general usage patterns, and other such activities. In addition, information

stored on university computing resources or passed through university
telecommunications networks may be accessible to the public through public
record laws, subpoenas, interception, or other means.

2. The university may specifically monitor the activity or accounts of individual
   users of university computing and telecommunications resources, including
   individual login sessions and the content of individual communications, without
   advance notice when:

   a. the user has voluntarily made such information accessible to the public, as by
      posting to a listserv, blog, or webpage
   b. it reasonably appears necessary to do so to protect the integrity, security, or
      functionality of university or other computing resources or to protect the
      university from liability
   c. there is reasonable cause to believe that the user has violated or is violating a
      university policy, a regulation, or a law
   d. an account appears to be engaged in unusual or excessive activity
   e. it is otherwise required by subpoena or court order

3.  Access to and disclosure of electronic information is governed by the following
    provisions.
    a. Professional ethics dictate that any person having access to proprietary or
       restricted information must:

       1) use that access only to the extent required to discharge the assigned
          responsibilities of that person's position
       2) not disclose any such information except to the extent authorized or
          required under this policy or applicable rules or laws
       3) not use, in any manner, such information or knowledge for personal
          financial gain

    b. A university employee may not read, view, listen to, or otherwise access
       electronic messages or the contents of computer systems of another user
       without the knowledge or consent of that user, except: (i) under the limited
       circumstances provided for in this policy or (ii) upon express prior
       authorization from the provost and executive vice president, his or her
       designee, the general counsel, or the UCF Police Chief or designee. Such
       prior authorization must be given in writing and must clearly state the
       purpose of granting such access. Information accessed in authorized
       instances must not be disclosed except as provided in this policy or with
       prior written authorization from the university's provost and executive vice
       president, his or her designee, the general counsel, or the UCF Police. Such
       prior authorization to disclose must be given only in cases involving an
       actual or possible breach of system security, a violation of law, a violation of
       university regulation or policy, or dereliction of duty or responsibility on the
       part of a university user.

    c.    Any suspected abuse or misuse of university computing and telecommunications resources should be reported to the Information Security Office (407-823-3863 or infosec@ucf.edu). Proper pursuit of such cases may require that person to disclose relevant information to supervisors or designated investigators.

    d.    Employees who access restricted data are expected to sign the UCF Confidentiality Agreement.

**RELATED DOCUMENTS**
The following related policies are available online at: http://www.policies.ucf.edu/

Policy 2-004 *Prohibition of Discrimination, Harassment and Related Interpersonal Violence*
Policy 2-100 *Florida Public Records Act: Scope and Compliance*
Policy 2-103 *Use of Copyrighted Material*
Policy 4-001 *Retention Requirements for Electronic Mail*
Policy 4-003 *Telecommunications Services*
Policy 4-006 *Broadcast Distribution of Electronic Mail*
Policy 4-007 *Security of Mobile Computing, Data Storage, and Communication Devices*
Policy 4-008 *Data Classification and Protection*
Potential Outside Activity, Employment, and Conflict of Interest and Commitment Disclosure (AA-21)
http://compliance.ucf.edu/conflict-of-interest/

A&P and USPS Permission to Use UCF Personnel, Equipment, Facilities, Students, or Services
http://hr.ucf.edu/files/HR12_PermissionToUseServices.pdf

**INITIATING AUTHORITY** Vice President for Information Technology and Chief
Information Officer

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-002.5

Initiating Authority: _Matthew Jett Hall_____  Date: 9/13/2022

University Policies and
Procedures Committee Chair: _____  Date: 8/30/22

President or Designee: Alexander Cartwright _____  Date: 9/16/2022
Digitally signed by
Alexander Cartwright
Date: 2022.09.16
09:11:38 -06'00'

---

History 4-002 5/21/2008, 4-002.1 5/13/2014; 4-002.2 9/1/2016; 4-002.3 4/29/2021



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: | |
|---|---|---|---|
| Telecommunications Services | 10/14/2019 | 4-003.2 | |
| | **Supersedes:** | **Page** | **Of** |
| | 4-003.1 | **1** | **4** |
| | **Responsible Authority:** Vice President for Information Technologies and Resources and Chief Information Officer | | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE** 12/15/2010

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all University of Central Florida telecommunication systems and university personnel who use them.

**POLICY STATEMENT**

University telecommunication services are administered by UCF IT Telecommunications, which is the sole authorized provider of telecommunications services for the university. Telecommunications services include but are not limited to telephony, wired and wireless data networks (Local Area Network), data circuits (Wide Area Network), cable TV, smartphone support, infrastructure cabling, Internet service, Internet2, Florida LambdaRail, E911, Digital Antenna Systems (DAS), and two-way radio communications. No communications systems or services may be interconnected with UCF communication systems or provided to the university as an enterprise solution without the prior approval of UCF IT Telecommunications.

Any violation of this policy and procedures may result in immediate loss of network and computer access privileges, seizure of equipment, or removal of inappropriate information posted on university-owned computers or university-supported Internet sites. In addition to these corrective actions, failure to comply with this policy and procedures may result in disciplinary action up to and including termination.

**DEFINITIONS**

**CATV Service.** Campus Cable Television service is provided by a local CATV franchised provider under contract with UCF.

**Communications System.** A communications system is any wired or wireless transmission system that carries voice, video, or data service, whether analog or digital.

**Data Network.** The cabling, hardware, and software comprising the university network, including interconnections to external networks. Includes both wired and wireless networks.

**E911.** Enhanced 911 emergency response service through which UCF building names, room numbers, and telephone numbers are provided to UCF Police Public Safety Answering Point (PSAP) consoles. E911 calls are directed to PSAPs. On-campus calls are directed to the UCF Police PSAP. E911 calls made off campus are directed to the appropriate city or county PSAP.

**Smartphone Enterprise Service.** Smartphone Enterprise Services enable users of smartphones, such as iPhone and Android phones, to synchronize their email, calendars, appointments, and notes to the respective enterprise services. Not all smartphone brands or operating systems can be supported. Contact the UCF IT Support Center at 407-823-5117 or itsupport@ucf.edu for additional information.

**Telecommunications.** The transmission of information over a distance by wire, radio, optical, or other electromagnetic system. Such transmission may include text, numbers, sounds or images and may be in analog or digital form.


**PROCEDURES**

Departments must initiate requests for telecommunications services by submitting a Telecommunications Request Form (TRF). All submitted TRFs must be approved by an authorized person on the Department Authorization List (DAL) before work can begin. The TRF can be accessed at https://it.ucf.edu/our-organization/telecommunications/. UCF IT Telecommunications will generally respond to fully completed TRFs within a minimum of three business days and typically deliver requested services within five business days. Projects such as larger departmental moves, major equipment or cabling installations, will require additional time for completion.

The following are examples of available telecommunications services:
- telephone service, including local and long distance;
- voice mail;
- data and other special circuits from local service providers;
- cable TV (CATV);

- campus local area network (LAN) design, infrastructure, and cabling;
- network planning, design, and installation;
- two-way radio frequency coordination and licensing;
- enterprise smartphone synchronization.

Additional telecommunications services and products can be found by visiting
https://it.ucf.edu/our-organization/telecommunications/ .

The university provides telephone systems and long distance services for official university business. University employees are allowed to make incidental use of the telephone system for necessary personal calls.

Departments are responsible for notifying UCF IT Telecommunications via a TRF for requesting disconnections when services are no longer required. Departments discovering charges for services or equipment that have been previously requested to be disconnected will be given credit for the charges. However, credit for disconnected services or equipment will only be applied retroactively to the month of requested disconnection and no more than six months within that same fiscal year.

Personal or departmental devices that interfere with or degrade the performance or security of the university voice, data, or CATV networks will be deactivated or removed when detected.

For assistance with project planning, design, or installation; to report communications or billing issues; or to schedule employee training on telephone equipment or communication protocols, contact the UCF IT Support Center at 407-823-5117 or itsupport@ucf.edu.

The Americans with Disabilities Act requires that public entities provide auxiliary communication support to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than non-disabled persons. It is the responsibility of each department to provide adaptive communications assistance to employees or students with disabilities. UCF IT Telecommunications will assist departments with the selection, and acquisition of adaptive equipment or services. Each department is responsible for the cost of any equipment or service required to meet its adaptive service requirements.


**RELATED DOCUMENTS**

Policy 4-009 *Cellular Telephone Acquisition and Use*
https://policies.ucf.edu/

**INITIATING AUTHORITY** Vice President for Information Technologies and Resources and Chief Information Officer

<div style="border:1px solid black">

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-003.2

Initiating Authority: _____  Date: 10-4-19

University Policies and
Procedures Committee Chair: _____  Date: 0/4/19

President or Designee: _____  Date: 10/14/19

</div>

History: 4-003 5/21/2011; 4-003.1 5/10/2014



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT<br>Special Collections & University Archives | Effective Date:<br>5/30/2023 | Policy Number:<br>4-005.2 |
|---|---|---|
| | Supersedes:<br>4-005.1 | Page: 1   Of: 3 |
| | Responsible Authority:<br>Dean of Libraries | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE**  5/13/2005

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all university and direct support organization (DSO) employees and volunteers, vendors, contractors, and consultants to the extent that they meet the definition of contractor under the Florida Statutes section 119.0701.

**BACKGROUND**

University records are initially created and retained in administrative offices or departments. Frequency of use, availability of space, historical value to the institution, and statutory retention requirements are factors that determine when and if specific public records should be retained in the office or offered to Special Collections & University Archives. These records may be in any physical or digital format and are appraised for their content and historical value. Please refer to UCF Policy 2-003 Records Management and UCF Policy 2-100 Florida Public Records Act: Scope and Compliance for additional information on the retention and storage of public records.

**POLICY STATEMENT**

It is the policy of the University of Central Florida to preserve the institutional memory of the university by maintaining an archive of its history and accomplishments and to preserve that history in the University of Central Florida Libraries' Special Collections & University Archives. Special Collections & University Archives, at the University of Central

Florida Libraries main campus, maintains the official repository of university historical records. The university's public records and related materials held in Special Collections & University Archives are selected, preserved, and made accessible because of their historical value. Working with staff in Special Collections & University Archives, university and direct support organization (DSO) employees and volunteers, vendors, contractors, and consultants are responsible for determining those public records that have historical value and that those records are transferred to Special Collections & University Archives.


**DEFINITIONS**

**Historical Value**. The usefulness, significance, or importance of materials based on the administrative, legal, fiscal, or evidential information they contain. Materials of historical value include but are not limited to:
- administrative files
- financial documents
- reports, statistics
- strategic plans
- self-studies
- mission statements
- brochures, newsletters
- publications
- photographs
- multimedia materials

**Public Records**. All documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software or other material, regardless of physical form, or characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, which are used to perpetuate, communicate, or formalize knowledge. For further information about Florida's public records law and how the university identifies, retains, and discloses public records, refer to university policies 2-003 Records Management and 2-100 Florida Public Records Act: Scope and Compliance.


**PROCEDURES**

When an administrative office or department defines inactive university public records (i.e., those that no longer need to be accessed routinely) to be of historical value, the department should contact Special Collections & University Archives. Inactive public records of historical value will be selected for transfer to the archives in consultation with the originating campus unit and Special Collections & University Archives personnel. Special Collections & University Archives personnel will provide guidance on selecting university public records for inclusion. Once it is determined that the public records will go to Special Collections & University Archives, procedures for the transfer of those records

will be provided, and university public records transfer agreement(s) completed when the records have been received and processed.

When public records of historical value are accepted into Special Collections & University Archives, they will be stored in secured stacks, cataloged in the University of Central Florida Libraries' online catalog, and made available to university personnel and community members as appropriate.

**RELATED INFORMATION**

Special Collections & University Archives Web site

UCF Policy 2-003 Records Management

UCF Policy 2-100 Florida Public Records Act: Scope and Compliance

**CONTACTS**

Special Collections & University Archives
University of Central Florida Libraries
P.O. Box 162666, Orlando, FL 32816-2666
Phone: 407-823-2576
Fax: 407-823-2529
Email: speccoll@ucf.edu

**INITIATING AUTHORITY**   Provost and Executive Vice President of Academic Affairs

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-005.2

Initiating Authority: _____   Date: May 30, 2023

University Policies and
Procedures Committee Chair: _____   Date: 5/24/2023

President or Designee: _____   Date: 5/30/23

4-005.2 *Special Collections and University Archives* 3



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| Broadcast Distribution of Electronic Mail | 3/7/2019 | 4-006.2 |
| | Supersedes: | Page        Of |
| | 4-006.1 | 1            4 |
| | Responsible Authority: Vice President for Information Technologies & Resources | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE:** 07-31-06

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all members of the university community.

**BACKGROUND INFORMATION**

Electronic mail can be an effective and timely tool to inform or alert members of the university community. However, broadcast electronic mail messages consume resources and, in some cases, may not be desired by the intended recipients. A policy is, therefore, necessary to clarify when broadcast electronic mail distribution is appropriate. This policy allows UCF executive offices to communicate with campus constituencies using electronic mail while also limiting the number of broadcast messages sent and received through the campus network.

**POLICY STATEMENT**

Authorization to distribute a broadcast electronic mail message may be granted only by the president, the provost, or a university vice president. In the case of an emergency or critical communication, broadcast email authority is delegated to UCF Police, UCF Communications and Marketing, Information Technologies & Resources, or the Office of

Environmental Health & Safety. In all cases, broadcast electronic mail must be limited to messages that are both timely and of great importance to the campus community.

**DEFINITIONS**

**Broadcast electronic mail**. An email message that is addressed to all members of one or more major on-campus constituencies; e.g., all faculty members, all students, all staff members. Broadcast messages are sent by UCF IT using email address lists extracted from university business systems.  Such messages may include emergency or public safety information or other content of similar significance to the operation of the university.

Routine campus event and meeting notices, office newsletters, speaker announcements, and messages on behalf of non-university entities are not eligible for broadcast email distribution.

**UCF Today, Good Morning/Afternoon UCF and *Pegasus* Magazine.** E-newsletters containing UCF stories, photos, campus events and announcements, are sent to students and faculty and staff members throughout the week. Links to webpages describing how to submit event notices and announcements can be found at the end of this policy.  UCF Today e-newsletters may be used for all legitimate university business-related news and stories, events and announcements.

**Emergency Communication.** A message describing circumstances that require immediate awareness or action in order to avoid harm to persons or property.

**Critical Communication.** A message informing one or more campus constituencies regarding actions, events, or deadlines that may have significant impact on them personally or in their role as a university employee.

**PROCEDURES**

Broadcast electronic mail messages may be directed to any or all of the following constituencies: students, faculty and staff members. Broadcast messages should be sent only to the specific constituencies for whom the content of the message is relevant. Except in the case of emergencies or other information of great importance to the campus community, each individual broadcast message may be distributed one time only.

The procedure for sending a broadcast electronic mail message is as follows:

(1)    Compose the exact wording of the message to be emailed in plain text (upper and lower case text only). The message should be carefully proofread, be concise, and

observe customary email etiquette. Messages will be sent exactly as received; UCF
IT is not authorized to modify the text of a message. Broadcast electronic mail
messages may not include attachments; however, they may include URLs
directing the reader to appropriate websites.

(2)    Identify the specific constituency or constituencies; e.g., faculty members, staff
members, students, to which the message should be sent and the date the
message should be received.  If the broadcast message is an emergency or critical
notification, please so indicate, so that it can be sent immediately.

(3)    The header of each broadcast message should be in this format. Requesters must
supply the appropriate name(s) and office(s).

Submitted by: (name, office)
Submitted for: (name, office)
Subject:

(4)    Send the message via email to campusemail@listserv.cc.ucf.edu at least 24 hours
ahead of the intended distribution timeframe.  Please note that broadcast
electronic mail will generally be processed during off-peak hours (nights or
weekends) except in special cases where immediate distribution is necessary.

Campus offices or organizations wishing to use electronic communications to send
announcements or event information to campus constituencies are encouraged to use the
Announcements and Events feature of the university website. Announcements can be
submitted online by authorized UCF faculty and staff members using the Announcements
feature of the main UCF website at https://www.ucf.edu/announcements. Announcements
submitted through the main UCF website are collected and reviewed twice a week and
sent through the UCF Today e-newsletter to faculty members, staff members, and students.
Events can be submitted online using the UCF Events system at http://events.ucf.edu.

University offices are permitted to maintain and use their own email distribution lists to
communicate with on- or off-campus constituencies; however, messages addressed to
more than 1,000 recipients must be sent between the hours of 4:00 p.m. and 7:00 a.m.
weekdays or on Saturday or Sunday to minimize the impact on campus electronic mail
processing resources.

**RELATED INFORMATION:**

UCF Communication Channels: https://www.ucf.edu/brand/brand-assets/ucf-
communication-channels/

**INITIATING AUTHORITY**: Vice President for Information Technologies & Resources

<div style="border:1px solid black; padding:10px;">

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-006.2

Initiating Authority: _____  Date: 3-5-19

University Policies and
Procedures Committee Chair: _____  Date: 2/28/19

President or Designee: _____  Date: 3/7/19

</div>

History: 4-006 7/31/2006; 4-006.1 8/30/2011


University of
Central
Florida

Office of the President

| SUBJECT: | Effective Date | Policy Number |
|---|---|---|
| Security of Mobile Computing, Data Storage, and Communication Devices | 8-27-2015 | 4-007.1 |

| | Supersedes | Page | Of |
|---|---|---|---|
| | 4-007 | 1 | 5 |

| Responsible Authority |
|---|
| Vice Provost for Information Technologies & Resources |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all individuals working for or on behalf of the University of Central Florida who maintain or use university data.  This includes all full-time and part-time employees, adjuncts and others on temporary or time-limited appointments, all volunteers and courtesy appointees, student workers, and all persons paid by or through the university such as contractors, consultants, or employees of direct support organizations.

## BACKGROUND INFORMATION

Laptop computers, tablets, cell phones, mobile music players, mobile data storage devices, and similar mobile computing devices have become very popular because of their convenience and portability. However, the use of such devices is accompanied by risks that must be recognized and addressed to protect both the physical devices and the information they contain. The most effective way to secure restricted data is to store it only on secure central university servers and access it remotely using secure communication techniques outlined in this policy.

## POLICY STATEMENT

It is the policy of the University of Central Florida to protect university owned assets, such as mobile computing devices, storage devices, and communication devices, from loss or theft and to protect restricted data that may reside in such devices from unauthorized access or disclosure.

Highly restricted data must not be stored on mobile devices or personally owned Internet cloud storage services. Restricted data (e.g., student grades identified by emplIDs) can be saved on

university-owned mobile devices or in a university-sanctioned Internet cloud data storage service only if encrypted and protected by a strong password.

Mobile computing and storage devices are subject to five areas of risk including physical risk, data security risk, operating system or application risk, network risk, and mobile device or cloud data storage risk. It is the responsibility of all university employees who use such devices to contain, process, transmit, or access university restricted data to recognize these risks and take the necessary steps to protect the devices and the sensitive information they may contain or to which they may have access.

Any violation of this policy and procedures may result in immediate loss of network and computer access privileges, seizure of equipment, loss of research laboratory access, or removal of inappropriate information posted on university-owned computers or university-supported Internet sites. In addition to these corrective actions, failure to comply with this policy and procedures may result in disciplinary action up to and including termination.

## DEFINITIONS

**Data**. Alphanumerical or other information represented either in a physical form or digital form suitable for electronic processing or storage.

**Data security risk**. Login or network access by an unauthorized person or computer.

**Encryption**. The encoding of data into a form that cannot be easily decoded by unauthorized parties.

**Internet cloud storage**. Data stored in third party data centers, e.g., OneDrive, CrashPlan, Dropbox, iCloud, Google Drive, Box, etc.

**Mobile computing device**. Cellular telephones, smartphones, laptop computers, tablets, PCs, personal digital assistants, and similar mobile electronic devices that are capable of storing, processing, displaying, or communicating data.

**Mobile data storage device**. USB storage devices, floppy disks, CD-ROMs, DVDs, mobile music players, and any other mobile electronic device or medium that is capable of storing data.

**Mobile or cloud data storage device risk**. Any mobile device that can be used to store data (USB drives, flash drives, tablets, mobile music players, floppy disks, CD-ROMs, DVDs, or cloud data storage service (Dropbox, Box, etc.) are subject to loss or unauthorized access.

**Network risk**. Computing devices can be accessed without detection through the networks to which they are connected. Viruses, worms, and other malware can enter a computer or other electronic device through networks, websites, email attachments, and mobile storage media.

**Operating system or application risk**. All computer operating systems and applications contain both known and unknown vulnerabilities that can be exploited to gain control of the device or access to its data.

**Physical risk**. Theft or loss.

**Restricted data**. Confidential or personal data that are protected by law or policy as defined in UCF *Data Classification and Protection* policy 4-008.1.

**Strong password**. A password that is difficult to guess, consisting of eight (8) or more characters, including lower case and upper case letters, numerals, and special characters. Longer passwords, or passphrases are, in general, more secure than shorter passwords.

**Virtual private network (VPN)**. A secure means of connecting to a private network, such as the UCF network, through an insecure network, such as the Internet or a public wireless network. A VPN connection encrypts data during transmission.


**PROCEDURES**

The following procedures must be followed to protect university computing and information assets.

1. Physical risk

   a. Users must not leave portable computers or data storage devices in view in an unattended vehicle, even for a short period of time, must not leave mobile devices in vehicles overnight, and must secure unattended portable computers with a cable lock or store them in a locked cabinet or locked private office.
   b. All data on mobile devices must be wiped and rendered not readable (not just deleted) before the device is transferred or leaves the university.
   c. All university owned mobile devices should be backed up in a secure manner to preserve data in the event the device is lost or stolen.
   d. Users must inform their departmental security coordinator, the UCF Police, and their departmental property management person if a mobile computing device is lost or stolen. In addition, users must contact the UCF Information Security Office immediately if the missing mobile device contains or is suspected to contain highly restricted or restricted data.
   e. Mobile computing device asset recovery software is recommended to be installed in order to remotely wipe or lock a lost or stolen mobile computing device and enable the university to work with authorities to locate and return the asset. For recommendations, go to *www.infosec.ucf.edu*.
   f. The university reserves the right to wipe data from a university owned mobile device in the event of loss, employment separation, or termination.
   g. University-owned mobile devices are subject to open records requests or authorized investigations.

    h.  Users should label mobile computing devices with contact information to facilitate recovery if lost.

2.  Data security risk

    a.  Users must protect university data under their control.
    b.  Users must not grant access to their mobile computing devices to unauthorized individuals.
    c.  Users must use strong passwords to protect their computer accounts and, where appropriate, PINs with a minimum of six (6) digits to protect their devices from unauthorized access.
    d.  Passwords must be changed at least once every 60 days according to the UCF password standard.
    e.  When entering passwords, users must take precautions to prevent others from observing.
    f.  If the user's mobile computing device is equipped with fingerprint reader or other biometric device, it should be enabled and used along with a strong password.
    g.  A non-administrative account restricts the installation and alternation of programs thus helping to protect a computer system and data from malicious applications and activity. User accounts on mobile computing devices must be non-administrative accounts, where technically possible (e.g., laptops). An administrative account should be used to install, alter, and set-up programs to be used by the non- administrative account. Users can consult with their departmental information technology professionals for assistance installing or updating software.
    h.  Mobile computing devices that support screen savers must have them configured to require passwords and activate after five to ten minutes of idle time.

3.  Operating system or application risk

    a.  Users must configure their computers, smartphones, and tablets to automatically receive and install operating system and application updates from vendors.
    b.  Users must take all reasonable steps to protect against the installation of unlicensed or malicious software.
    c.  All laptops and, if possible, other mobile computing devices must have antimalware software installed, and antimalware signatures must be kept up-to-date.
    d.  All laptops and, if possible, other mobile computing devices must have firewall software installed and enabled. Major operating system vendors provide firewall features at no cost.

4.  Network risk

    a.  Users must use the UCF virtual private network (VPN) to access UCF resources from insecure networks, such as free public wireless (e.g., coffee shops) and from Internet service providers.

b. All wireless communication technologies, e.g., WiFi, Bluetooth, infrared, Radio
   Frequency Identification (RFID), Near-Field Communications (NFC) etc., must be
   disabled when not in use.

5. Mobile data storage device risk

a. Backups or archival copies made from systems containing restricted data must be
   encrypted.
b. Mobile data storage devices must be kept in a secure location when not in use.

## RELATED DOCUMENTS

Policy 4-008.1 - *Data Classification and Protection* Policy
Policy 4-002 - *Use of Information Technologies & Resources Policy*
Policy 2-103 - *Use of Copyrighted Material Policy*
Policy 3-206.1 - *Cardholder Information Security Procedures Policy*

UCF Password Standards - http://www.cst.ucf.edu/wp-content/uploads/501-101-Password-Standards.pdf

## CONTACTS

Computer Services and Telecommunications Information Security Officer, 407-823-3863.

**INITIATING AUTHORITY** Provost and Executive Vice President



POLICY APPROVAL
(For use by the Office of the President)

Policy Number: 4-007.1

Initiating Authority: _____  Date: 8/24/2015

University Policies and
Procedures Committee Chair: _____  Date: 8/21/2015

President or Designee: _____  Date: 8/27/15



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date:<br>6/3/2021 | Policy Number:<br>4-008.2 |
|---|---|---|
| Data Classification and Protection | Supersedes:<br>4-008.1 | Page    Of<br>1         11 |
| | Responsible Authority:<br><br>Associate VP & Chief Information Security Officer<br><br>Director, Privacy Compliance | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE** 11/5/07

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all members of the university community.

**POLICY STATEMENT**

All members of the university community have a responsibility to protect the data generated, accessed, modified, transmitted, stored, or used by the university. This requirement is irrespective of the medium on which the data resides or the means by which the data may be transmitted. Data is a critical asset of the university and it is the policy of the University of Central Florida to classify types of data in use at the university and to provide the appropriate levels of information security and protection. Members of the university community are responsible for implementing appropriate managerial, operational, physical, and technical controls for access, use, transmission, storage, and disposal of university, state, or federal data in compliance with this policy, as requested by the Information Security Office, University Compliance, Ethics, and Risk, and any applicable laws, regulations or policies.

It is the policy of the university to require all members of the university community to immediately report confirmed or suspected data security incidents to the Security Incident Response Team (SIRT). Data considered to be Highly Restricted Data or Restricted Data may require a heightened response and reporting obligations.

In the event of a suspected information security incident, users should take no action to delete any data or attempt to investigate.

Any violation of this policy and procedures may result in immediate loss of network and computer access privileges, seizure of equipment, loss of research laboratory access, or removal of inappropriate information posted on university-owned computers or university-supported internet sites. In addition to these corrective actions, failure to comply with this policy and procedures may result in disciplinary action up to and including termination or expulsion.


**DEFINITIONS**

**Controlled Unclassified Information (CUI).** A type of federal data consisting of unclassified information the government creates or possesses, or that an entity creates or possesses for or on behalf of the government, that a law, regulation, or government-wide policy requires or permits an agency to handle using safeguarding or dissemination controls.

**Credentials**. A combination of username, password, and possibly additional information or keys such as a personal identification number (PIN), biometric scan, or other unique identifier that together are used to access a computer system or information resource.

**Cross-cut Shredder**. Cuts paper both lengthwise and crosswise, leaving papers in a rectangular shape.

**Data**. Alphanumerical or other information represented either in a physical form or digital form suitable for electronic processing or storage.

**Diamond-cut Shredder**. Cuts paper similar to a cross-cut shredder yet leaves papers in a diamond shape.

**Encryption**. The encoding of data into a form that cannot be easily decoded by unauthorized parties.

**Federal Data.** Data that is collected, stored, processed, transmitted, or used on behalf of a federal agency. This applies to all forms of data (electronic, paper, audio, Controlled Unclassified Information [CUI], etc.). Data accessed from a federal database, even if managed by a third party, constitutes the use of federal data. The data will need to be protected at the appropriate level of NIST SP 800-53.

**Federal Information System**. An information system used or operated by an executive agency, by a contractor of an executive agency, or by another organization on behalf of an executive agency.

**Highly Restricted Data**. Any data that is strictly controlled, and protected by laws, regulations, contracts, or policies. Highly Restricted Data requires the highest level of access control and security protection, both in storage and in transit. The loss of confidentiality, integrity, or availability of Highly Restricted Data could have a significant adverse impact on the university's mission, safety, finances, or reputation. (For an extended definition, characteristics, and examples, see *Data Classification* section below.)

**Institutional Data**. All data created, collected, maintained, recorded, or managed by the university, its staff and agents working on its behalf, in the course of conducting university business. This includes information that is processed or resides on privately owned devices that are used for university purposes.

**Internet Cloud Storage**. Data stored in third-party data centers (e.g., CrashPlan, Dropbox, iCloud, Google Drive, OneDrive, Box, etc.).

**Mobile Computing Device**. Cellular telephones, smartphones, laptop computers, tablets, personal computers, and similar mobile electronic devices that are capable of storing, processing, displaying, and communicating data.

**Network identification (NID).** A UCF-issued credential or identifier, classified as Restricted Data, that is to be used by university employees and students to access enterprise computing systems and applications.

**Restricted Data**. Institutional Data not identified as Highly Restricted Data, and data that may be protected by state or federal regulations, such as the Family Educational Rights and Privacy Act (FERPA.) Restricted Data must be protected to ensure that they are not disclosed in public records requests and are only disclosed as required by law and to authorized individuals only. (For an extended definition, characteristics, and examples, see *Data Classification* section below.)

**Transport Layer Security (TLS).** Internet protocol that ensures privacy between communication applications and their users on the internet.

**UCF Employee Identification Number (UCFID)**. A unique seven-digit numerical identifier, classified as Unrestricted Data, that uniquely identifies each university employee and student in the university's administrative systems.

**University Community.** All university personnel, students, volunteers, employees, and volunteers of Direct Support Organizations (DSOs), as well as visitors and contractors who conduct business with the university.

**Unrestricted Data.** Data that is not protected by law or contract, and the disclosure of which is not reasonably expected to cause harm to the university or to the affected parties. (For an extended definition, characteristics, and examples, see *Data Classification* section below.)

## DATA CLASSIFICATION

University, state, and federal data falls into three data classifications: Highly Restricted Data, Restricted Data, and Unrestricted Data:

### A. Highly Restricted Data

Highly Restricted Data is any data that is strictly controlled, and protected by laws, regulations, contracts, or policies. Highly Restricted Data requires the highest level of access control and security protection, both in storage and in transit. The loss of confidentiality, integrity, or availability of Highly Restricted Data could have a significant adverse impact on the university's mission, safety, finances, or reputation.

Protection of such data may also be subject to additional operating regulations in accordance with vendor or partner agreements, such as the Payment Card Industry (PCI), Data Security Standards (DSS), or Federal contracts.

Unauthorized access to, or disclosure of, highly restricted data will generally require notification to affected parties under the guidelines of state and federal breach notification laws. In addition, unauthorized access, use, disclosure, or loss of Highly Restricted Data may have significant legal consequences, including civil and criminal penalties, loss of funding, inability to continue current research, and inability to obtain future funding or partnerships.

Examples of **Highly Restricted Data**:
1. **Government Identification Numbers.** An individual's first name or first initial and last name in combination with any one or more of the following data elements for that individual:
   a) social security number (SSN),
   b) driver's license or identification card number,
   c) passport number,
   d) military identification number, or
   e) any other similar number issued on a government document used to verify identity

2. **Financial Account Numbers.** An individual's first name or first initial and last name in combination with financial account numbers.
   a) UCF ID Card ISO numbers fall under this classification when the cardholder has enrolled in Knights Cash or has a Fairwinds bank account using their UCF ID Card

3. **Credentials**. Username (e.g., NID) or email address, in combination with any of the following that would permit access to an online account:
   a) a password,
   b) a security question and answer, or
   c) a one-time code that would verify an identity and permit a password reset or access to an account, such as a password reset code or a Multi-Factor Authentication (MFA) token

4. **Health Information**
   a) **Health Insurance Portability and Accountability Act of 1996 (HIPAA) Protected Health Information (PHI).** Data concerning an individual that is considered "protected health information" (also known as electronic Protected Health information or ePHI when in electronic form) within the meaning of the HIPAA (as amended by the Health Information Technology for Economic and Clinical Health Act), and its implementing regulations.
   b) An individual's first name or first initial and last name in combination with:
      1) Any information regarding an individual's medical history, mental or physical condition, or medical treatment or diagnosis by a health care professional; or
      2) An individual's health insurance policy number or subscriber identification number and any unique identifier used by a health insurer to identify the individual.

5. **PCI Data.** Includes information in two main categories:
   a) Cardholder data consists of the full Primary Account Number (PAN, commonly known as the Credit Card Number), either on its own or combined with cardholder name, expiration date, and/or service code.
   b) Sensitive Authentication Data is Security-related information (including, but not limited to, card validation codes/values, full track data (from the magnetic stripe or equivalent on a

chip), PINs, and PIN blocks) used to authenticate cardholders and/or authorize payment
card transactions. PCI Sensitive Authentication Data must never be stored.

6. **Federally Protected Data.** Data protected by applicable federal laws, regulations, or contracts,
including but not limited to:
   a) Federal Information System Modernization Act (FISMA) of 2014 Defense Federal
      Acquisition Regulation Supplement (DFARS), (including CUI as described in DFARS
      252.204-7012)
   b) International Traffic In Arms Regulation (ITAR)
   c) Export Administration Regulations (EAR)

7. **Protected University Employee Data.** The home addresses, telephone numbers, social
security numbers, and photographs of certain protected or sensitive university employees and
their spouses and children as specified in F.S. 119.071 (4). Relevant examples in F.S. 119.071
(4) include
   a) current or former police officers, or
   b) current or former internal audit personnel whose duties include activities that could lead
      to criminal prosecution or administrative discipline

8. **Gramm-Leach Bliley Act "Nonpublic Personal Information" (NPI).** Consumers' personal
financial information held by the university and data concerning an individual that is
considered NPI within the meaning of Title V of the Gramm-Leach Bliley Act (Public Law 106-
102, 11 Statute 1338 as amended) and its implementing regulations.

## B. <u>Restricted Data</u>

Restricted Data includes Institutional Data not identified as Highly Restricted Data, and data that
may be protected by state or federal regulations, such as FERPA. Restricted Data must be protected
to ensure that they are not disclosed in public records requests and are only disclosed as required
by law and to authorized individuals only.

Unauthorized access to or disclosure of certain types of restricted data will generally not require
notification of affected parties; however, breach or disclosure of certain restricted data covered by
law or regulation may require notification of an appropriate governmental agency. Unauthorized
access to or disclosure of restricted data that is the subject of contractual protections will generally
require notification to the contracting party.

Examples of **Restricted Data**:
1. **Business sensitive data**

2. **Proprietary intellectual property data**, such as an algorithm or schematic developed on
   campus that belongs to the university

3. Certain student education records as defined under FERPA:
   a) **Personally Identifiable Information (PII)**
      i. Student ID - UCFID (EmplID in PeopleSoft)
      ii. UCF ID Card ISO Number
      iii. Residency Status
      iv. Gender
      v. Religious Preference

      vi. Race/Ethnicity
- b) **Education Records**
  - i. Grades/GPA
  - ii. Student's Class Schedule
  - iii. Test Scores
  - iv. Academic Standing
  - v. Academic Transcripts
- c) **Other FERPA information UCF considers Restricted Data in terms of data protection**
  - i. Student Email Address
  - ii. Student ID Photos
- d) **Directory information.** The following directory information is considered **restricted data when the student has exercised their right to withhold the release of their directory information via myUCF (sometimes called FERPA Opt-Out)**:
  - i. Name
  - ii. Current mailing address
  - iii. Telephone number
  - iv. Date of birth
  - v. Major
  - vi. Dates of attendance
  - vii. Enrollment status (full-/part-time)
  - viii. Degrees/awards received
  - ix. Participation in officially recognized activities and sports
  - x. Athletes' height/weight

4. **Network and Systems data**. Sensitive technical information related to UCF systems that is business sensitive. Examples include:
   - a) NID (Network Identification): the UCF-issued NID credential, by itself, is considered restricted data
   - b) IP addresses, system names, system inventories, configuration information, network diagrams, and vulnerability data

5. Other data protected by law or regulation.

## C. <u>Unrestricted Data</u>

Unrestricted Data is data that is not protected by law or contract, and the disclosure of which is not reasonably expected to cause harm to the university or to the affected parties.

Examples of **Unrestricted Data**:
1. Employee names, dates of hire, rate of pay, title, office address, UCFID or phone number.

2. **Directory Information.** The following directory information, as defined under FERPA, is considered unrestricted data, provided the student has not exercised their right to withhold the release of the information via myUCF: student name, current mailing address, telephone number, date of birth, major or field(s) of study, dates of attendance, enrollment status (full-/part-time), degrees and awards received, participation in officially recognized activities and sports, and athletes' height and weight.

3. Certain types of **institutional data** not otherwise restricted by university, state, federal, or contract-related requirements.

**LOGICAL DATA PROTECTION**

The following establishes minimum standards for the storage, transfer, and access of university, state, or federal data. More specific requirements may exist in certain contracts, such as research agreements with the federal government. To the extent specific requirements are set forth in a contract, or otherwise required by the government, those specific obligations for storage, transfer, and access of restricted data must be followed.

**A. Highly Restricted Data**

There are several data types contained within the category of Highly Restricted Data as explained above in the Data Classification section. Certain types of Highly Restricted Data must comply with additional policies, standards, and authorizations specific to the data in question. Many types of data mandate their separation from other data sets. Additionally, authorization that a system may store, or process one type of Highly Restricted Data does not imply authorization for all types of Highly Restricted Data. Highly Restricted Data may only be stored on systems intended, configured for, allowed by relevant policies, and authorized for the given type of data. As required, members of the university community must complete training prior to accessing Highly Restricted Data.

The below establishes the appropriate measures for handling Highly Restricted Data and are intended as a baseline requirement that may be superseded by more elevated data-specific security requirements put in place by the university.

Highly Restricted Data:
1. May be stored on UCF servers only when the servers:
   a) are intended for highly restricted data, and at a minimum meet relevant University Security Standards;
   b) employ full-disk encryption (additional file level encryption is required anytime data is exported, saved, or downloaded or copied from these systems); and
   c) are protected by Multi-Factor Authentication.

2. May only be stored in UCF sanctioned internet cloud data storage systems (e.g. OneDrive) when the cloud systems are intended for highly restricted data and meet relevant University Security Standards.

3. Must not be stored in personally owned cloud data storage accounts (see UCF Policy 4-014 for more information).

4. Must be protected by Multi-Factor Authentication when stored on a server, cloud system, or within an application.

5. May only be stored on desktop or laptops if all of the following are true:
   a) There is a legitimate university business reason that the data must be stored on a desktop/laptop, as opposed to within a secured university server or application.
   b) The desktop/laptop is a university-owned and managed device.
   c) The desktop/laptop meets relevant University Security Standards.
   d) The desktop/laptop employs full disk encryption using current industry standards, such as BitLocker or FileVault.
   e) The data must have file-level encryption with access protected by a strong password (in addition to the full disk encryption).

f) Depending on the types of data present, such as CUI, the desktop/laptop will be required to have strong physical security and may additionally require protection by Multi-Factor Authentication.

6. Must never be stored on miscellaneous mobile devices, such as tablets, smartphones, or USB drives, unless there is a legitimate university business reason that the data must be stored on one of these devices, as opposed to within a secured university server or application. Disk-level encryption is required on these devices. Highly Restricted Data on these devices must also be protected with file-level encryption, with access protected by a strong password.

7. Must not be posted on any public website, blog, or other publicly accessible Internet site.

8. Must not be sent via electronic mail, or in an email attachment unless encrypted using current industry cryptographic standards.

9. Must not be sent via instant messaging or other unencrypted applications.

10. Must always be protected by using a secure connection method, such as a VPN and/or a current version of TLS encryption when transmitted through a data network.

11. Must not be disclosed to third parties without explicit management authorization and then only on a need-to-know basis.

12. Must be sent only to a known number when sent via fax.

13. Must be destroyed when no longer needed, subject to the State of Florida General Records Schedule and UCF Policy 2-003 and UCF Policy 4-010.

**B. Restricted Data**

1. Can be stored on university-owned and managed workstations or mobile computing devices if the devices are protected by a strong password and full disk encryption. File-level encryption is recommended.

2. May be placed only in a UCF-sanctioned internet cloud data storage system (e.g., OneDrive), but not in a personally owned cloud data storage system.

3. May be sent to authorized users who are within a university-provided email system (e.g., UCF Exchange, Knights email, Webcourses@UCF).

4. May be sent to authorized recipients who use external email systems if encrypted using Office 365 Email encryption.

5. Instant messaging of restricted data between faculty, staff, and students must be through a university-provided instant messaging system, (e.g., Microsoft Teams or Skype for Business). Instant messaging may not be used to send restricted data to external systems, using external systems, or using third party systems.

6. Must not be posted on any public website, blog, or other publicly accessible internet site.

7. Must be sent only to a known number when transmitting via fax.

8. Must be destroyed when no longer needed, subject to the State of Florida General Records Schedule and UCF Policy 2-003 and UCF Policy 4-010.

**PHYSICAL DATA PROTECTION**

To reduce the physical risks to Highly Restricted or Restricted Data, all members of the university community must maintain a "Clean Desk Area." An important aspect of a clean desk policy is the requirement to keep your environment secure when you are away from your desk or office. All forms of media, such as papers, CDs, DVDs, hard drives, USB drives, flash drives, computer screen displays, etc., containing Highly Restricted or Restricted Data are within the scope of this policy. In addition, these measures reinforce the need to protect usernames, passwords, or other data elements that would allow one to access a secure location or an information system. Please adhere to the following measures to physically secure assets where Highly Restricted or Restricted Data may reside:

1. Physically secure electronic media, electronic devices, and information systems.

2. Log off or screen lock computer workstation(s), laptops, tablets, etc., to safeguard the data accessible on those devices(s).

3. Secure Restricted Data when it is not being worked on or processed, when leaving your work area (e.g., for lunch or restroom breaks, end of the day, etc.)

4. Lock desks and cabinet drawers if they contain any Restricted Data.

5. Do not write down (or share) passwords or passphrases and leave them openly accessible at or around your desk area. Users are strongly encouraged to use a commercially available password manager application to enhance password strength and secure all passwords.

6. Check printer trays where Restricted Data may be printed.

7. Check copier trays (make sure documents are not left under the cover).

8. Check in and out trays, either personal trays on desks or departmental pending work trays.

9. Check departmental mailboxes where Restricted Data may be delivered.

10. Thoroughly erase whiteboards where Restricted Data may be present.

11. Use crosscut or diamond-cut shredders to shred printed Restricted Data. Paper recycle and trash bins must never contain legible confidential materials.

12. Check and secure other areas where paper or electronic media containing Restricted Data may be placed.

If you believe Highly Restricted or Restricted Data has been compromised, please notify your supervisor immediately and contact the UCF Security Incident Response Team at SIRT@ucf.edu.

**Requests for Data**

Court orders, subpoenas, or requests from federal or state agencies for access to university, state, or federal data should be referred to the Office of the General Counsel. All public records requests for university, state, or federal data should be processed according to UCF Policy 2-100 *Florida Public Records Act – Scope and Compliance*.

**RELATED DOCUMENTS**

UCF Policy 2-003 Records Management
UCF Policy 2-100 Florida Public Records Act—Scope and Compliance
UCF Policy 2-103 Use of Copyrighted Material
UCF Policy 3-206 Credit Card Merchant Policy
UCF Policy 4-002 Use of Information Technologies & Resources
UCF Policy 4-007 Security of Mobile Computing, Data Storage, and Communication Devices
UCF Policy 4-014 - Procurement and Use of Cloud Computing and Data Storage Services
UCF Policy 4-209 - Export Control Policy

UCF Regulation 3.045 Sensitive Information Disclosure

State of Florida General Records Retention Schedule
https://dos.myflorida.com/library-archives/records-management/general-records-schedules/
UCF Security Standards
https://infosec.ucf.edu/standards/

UCF Information Security Awareness Resources
https://infosec.ucf.edu/awareness/

Florida Statute 501.171
http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&Search_String=&URL=0500-0599/0501/Sections/0501.171.html

Family Educational Rights & Privacy Act
https://studentprivacy.ed.gov/node/548/

Gramm-Leach-Bliley Act
https://www.govinfo.gov/content/pkg/PLAW-106publ102/pdf/PLAW-106publ102.pdf

Health Insurance Portability and Accountability Act of 1996
https://www.govinfo.gov/content/pkg/PLAW-104publ191/pdf/PLAW-104publ191.pdf

**CONTACTS**

Information Security Office, Chief Information Security Officer, infosec@ucf.edu, 407-823-3863

Information Security Office Security Incident Response Team (SIRT), sirt@ucf.edu

4-008.2 *Data Classification and Protection* 10

UCF IT Support Center, itsupport@ucf.edu, 407-823-5117

**INITIATING AUTHORITIES**

Vice President for Information Technology and CIO;
Vice President for Compliance and Risk

---

### POLICY APPROVAL
### (For use by the Office of the President)

Policy Number: 4-008.2

Initiating Authority: ma184583
Digitally signed by ma184583 Date: 2021.06.03 12:10:32 -04'00'
Date: 6/3/2021

Initiating Authority and
University Policies and
Procedures Committee Chair: _____ Date: 5/24/21

President or Designee: Alexander Cartwright
Digitally signed by Alexander Cartwright Date: 2021.06.03 16:27:09 -04'00'
Date: 6/3/2021

---

History: 4-008 11/5/07, 4-008.1 8-27-2015



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: 7/7/2023 | Policy Number: 4-009.4 | |
|---|---|---|---|
| Cellular Telephone Acquisition and Use | **Supersedes:** 4-009.3 | **Page** 1 | **Of** 5 |
| | **Responsible Authority:** Associate Vice President Chief Human Resources Officer and Assistant Vice President for Tax, Payables & Procurement | | |

**DATES OF INITIAL ADOPTION AND EFFECTIVE DATES 1-1-08**

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all university employees.

**BACKGROUND**

On September 14, 2011, the Internal Revenue Service (IRS) issued Notice 2011-72, which states that if a cell phone is provided to an employee primarily for "noncompensatory" business purposes (the cell phone is not considered part of the employee's compensation, but intended to facilitate work outside the office or office hours), both the business and personal use of the phone will be nontaxable and substantiation requirements will be deemed to be satisfied.

The university therefore allows direct purchase of cell phones and payment of monthly service charges by the university where warranted, and alternatively will reimburse employees who personally purchase cell phones and pay the monthly service charges. Because reimbursements for monthly service charges are no longer taxable, there is no gross-up for taxes. Reimbursement for equipment purchases continue to be taxable; therefore, equipment reimbursements will include a gross-up for taxes.

**POLICY STATEMENT**

Employees whose job requires them to use a cell phone for university business, as outlined in this policy, will be eligible to receive an allowance for the purchase of a cell phone and a monthly reimbursement for the cost of cell phone service, a university-provided cell phone in

lieu of receiving reimbursement for using a personal cell phone service, or reimbursement for
business calls made with an employee-owned cell phone.


**DEFINITIONS**

**Authorizer**. President, vice presidents, vice provosts, deans, or their designees.

**Cell Phone**. Any device that is used to make or receive wireless calls, including any feature
phone or smartphone that provides email and web functions; examples include iPhones, and
Android devices.


**PROCEDURES**

1. Departments or units will have the following options for providing cell phones and
   similar wireless communication devices to employees:
   a. **Option 1 - Reimbursement Through Payroll for Employee-Owned
      Cell Phones -** Employees whose job duties, in the opinion of the
      Authorizer, necessitate the regular business use of a cell phone may
      personally purchase the cell phone, pay the monthly charges, and be
      reimbursed, with a gross-up for taxes, for the cost of purchasing the
      device and without a gross-up for taxes for the monthly service charges.
      The opinion of the Authorizer should be based upon substantial
      noncompensatory business reasons. These reimbursements will be made
      through the payroll process.
      i.   A Cell Phone Allowance Request form must be completed and
           maintained in the department as documentation for audit
           purposes, with a copy submitted to Human Resources.
      ii.  Reimbursement for purchase of a cell phone may be made no
           more than once every two years. The appropriate reimbursement
           should be determined and documented by the Authorizer, but
           should not be more than $300 (not including any gross-up
           amounts), absent approval by the dean or appropriate vice
           president.
      iii. Reimbursement for monthly service charges should not exceed
           $57.50 bi-weekly without approval of the appropriate dean or vice
           president.
      iv.  It is the intent of this policy to provide Authorizers with the latitude
           necessary to provide fair reimbursements to employees while
           maintaining proper budget control. In most cases, the amount of
           the reimbursement will not cover the total cost of the equipment
           and/or service plan because it is expected that the device will be
           used for personal use as well as business use.
      v.   Authorizers should document how they arrived at the amount of
           the reimbursement and the noncompensatory business purpose.
           Departments should ensure that employees are familiar with the
           requirements of the cell phone policy and that appropriate
           documentation of how the allowance was determined is
           maintained by the department for audit purposes.

      vi.   A cell phone acquired by this method is considered to be the personal property of the employee and may be used in any way the employee deems appropriate. Any service contract entered into by the employee related to the acquisition and operation of a cell phone acquired by this method is personal to the employee. The employee is also free to select any voice or data service plan that meets his or her needs.  The university will have no obligation nor make any guarantees with respect to such contracts. However, the university will provide a letter to any cell phone provider that the cell phone is to be used for the conduct of university business if the cell phone provider will provide discounts or university rates.

b. **Option 2 – University-Provided Cell Phones** – The department may directly purchase a cell phone for its employees and directly pay the monthly service charge for those employees who have a demonstrated and documented business need for a cell phone. Departments must maintain documentation of the justification for the employee's business need for the cell phone.

      i.   A Cell Phone Request Form must be completed and maintained in the department as documentation for audit purposes, with a copy submitted to Finance and Accounting.

      ii.   University-provided cell phones must be used primarily for official business purposes. However, it is recognized that incidental personal calls are unavoidable. When university-owned equipment is provided to an employee, it remains the property of the university and should be returned to the Authorizer or designee whenever the cell phone is no longer needed or if the employee transfers or terminates employment with the university.

      iii.   Payments will be made through Accounts Payable. If changes in the required business use of the communication device occur, modifications may be required.

      iv.   New equipment should be purchased no more than once every two years.

c. **Option 3 - Reimbursement for Business Use of Personal Cell Phone** – A department may reimburse an employee for business calls paid for by the employee using personal cell phone service where the employee does not receive a monthly cell phone reimbursement. Written evidence, such as a monthly phone bill and a statement describing the business purpose of the call, is required for reimbursement.

      i.    A copy of the personal cell phone bill is required to be provided to the departmental office manager with the calls identified as being business related and the business purpose.

      ii.   A memo requesting reimbursement and a copy of the personal cell phone bill charges being reimbursed should be forwarded to Accounts Payable to support the payment.

2. **Department and Authorizer Responsibility** - The Department and Authorizer are responsible for the following:

a. determining whether the employee's position requires a cell phone based upon his or her job responsibilities;

b. maintaining appropriate documentation to support the need for a cell phone and the cost of acquisition and monthly service charge;

c. determining which of the options described above is most appropriate for an employee requiring a cell phone;

d. processing the direct purchase or reimbursement through the Accounts Payable, PCard or Payroll system as appropriate;

e. ensuring that a university-provided cell phone remains the property of the university and is turned into the Authorizer or designee when the equipment or cell phone service is no longer needed, or if the employee transfers or terminates their employment with the university;

f. for cell phones paid from a grant or contract or overhead or balance account, obtaining approval from the Office of Research and Commercialization.

3. **Employees Responsibility** - Employees are responsible for the following:

   a. In the case of a reimbursement for a personal cell phone:

      i. provide the Authorizer with appropriate information or documentation to support the expected business need and the amount of the reimbursement;

      ii. notify the Authorizer when there has been a significant change in the business need for cell phone reimbursement.

   b. For a university-owned cell phone:

      i. ensure that the cell phone is used primarily for university business;

      ii. ensure the physical protection of the cell phone from damage, loss or unauthorized use;

      iii. ensure that the cell phone is returned to the university when it is no longer needed or the employee transfers or terminates employment with the department;

      iv. provide the university department with the current access number or address of the communication device within five working days of activation;

      v. notify the Authorizer within five days of inactivation of the device. An employee is prohibited from continuing to collect a monthly communication plan reimbursement when the device is no longer active or needed for the performance of the employee's job responsibilities;

      vi. ensure that the cell phone is not used for commercial or political activity.

**CONTACTS**

Finance and Accounting, 12424 Research Parkway, Suite 300, Orlando, FL 32826-3249. Main number: (407) 882-1000.

Human Resources, Attention: Payroll, 12201 Research Parkway, Suite 200, Orlando, FL 32826. Main number: (407) 823-2771.

**RELATED INFORMATION**

http://hr.ucf.edu/forms-documents

http://www.research.ucf.edu/Research/PoliciesProcedures.html

https://fa.ucf.edu/wp-content/uploads/sites/2/41-980.pdf

**INITIATING AUTHORITY** Senior Vice President for Administration and Finance

| POLICY APPROVAL |
| --- |
| **(For use by the Office of the President)** |

Policy Number: 4-009.4

Initiating Authority: _ector_                    Date: 7/3/2023

University Policies and
Procedures Committee Chair: _Rhonda L Bishop_   Date: 6/27/2023

President or Designee: Alexander Cartwright
Digitally signed by
Alexander Cartwright
Date: 2023.07.07
08:39:08 -05'00'                                 Date: 7/7/2023

History 4-009.1 5/20/2008; 4-009.2 4/18/2012; 4-009.3 12/7/2017



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| Student Email Policy | 1/10/2019 | 4-010.1 |
| | **Supersedes:** | **Page**     **Of** |
| | 4-010 | 1     2 |
| | **Responsible Authority:** Vice President for Information Technologies and Resources | |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE** 8/31/2009

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all UCF students and to university employees who communicate with UCF students through electronic mail.

**POLICY STATEMENT**

Electronic mail is a timely and effective means of communicating with students. All university employees and offices that use electronic mail to send official communications to students will use the students' Knights Email addresses.

**DEFINITIONS**

**Knights Email**. The official university-provided student electronic mail service. Knights Email is operated on behalf of UCF by Microsoft Corporation using the Office 365 platform.

**Student**. A person who has been admitted and indicated an intention to attend UCF.

## PROCEDURES

Each student will be required to create and use a Knights Email account ([name]@knights.ucf.edu) at no cost to the student. Knights Email accounts will be available to students from the time they matriculate to UCF, through graduation. After graduation, Knights Email will be available as long as the account remains active. Knights Email accounts are considered inactive if the account has not been accessed via login within an 18 month period. After 18 months with no login activity, the account will be inactivated and blocked from login. Accounts that have no log in activity and have been inactive for 3 years will be deleted. Each student is responsible for all information sent to their respective Knights Email account and is expected to read their electronic mail on a frequent and regular basis. All university business processes that collect student email addresses shall treat students' Knights Email addresses (user@knights.ucf.edu) as the official campus email address.

## RELATED DOCUMENTS

UCF Policy 4-006.1 Broadcast Distribution of Electronic Mail
https://policies.ucf.edu/

## INITIATING AUTHORITY Vice President for Information Technologies and Resources

### POLICY APPROVAL
### (For use by the Office of the President)

Policy Number: 4-010.1

Initiating Authority: _Joel Hartman_     Date: _1-7-19_

University Policies and
Procedures Committee Chair: _____     Date: _12/17/18_

President or Designee: _Dale Whittaker_     Date: _1/10/19_

4-010.1 *Student Email* 2



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: | |
|---|---|---|---|
| Radio Frequency Spectrum | 8/7/2018 | 4-011.1 | |
| | **Supersedes:** | **Page** | **Of** |
| | 4-011 | 1 | 2 |
| | **Responsible Authority:** Vice President for Information Technologies and Resources | | |

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all University of Central Florida departments, centers, units, personnel, and property.

**POLICY STATEMENT**

Radio frequency spectrum is a critical resource that must be managed to eliminate or reduce interference that can cause service degradation of communication systems or devices. All acquisitions of devices or systems that radiate or receive radio frequency energy by university entities must be approved by UCF IT Telecommunications to provide spectrum coordination and avoid radio frequency interference. CF IT Telecommunications is the authority for university radio frequency spectrum management. This office is also the UCF liaison with the Federal Communications Commission.

**PROCEDURES**

Campus entities planning to acquire devices that radiate or receive radio frequency energy are required to complete and submit a Telecommunications Request Form to the UCF Service Desk by visiting http://it.ucf.edu/ or by calling 407-823-5117. In response, a UCF IT Telecommunications technician will review the request and advise or assist in the acquisition of the proposed radio frequency system or device.

**INITIATING AUTHORITY** Vice President for Information Technologies and Resources

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-011.1

Initiating Authority: _____   Date: 7-26-18

University Policies and
Procedures Committee Chair _____   Date: 7/26/18

President or Designee: _____   Date: 8/7/18

History 4-011 12/15/2010



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: Collection and Use of Social Security Numbers | Effective Date: 12/5/2018 | Policy Number: 4-012.1 |
|---|---|---|
| | Supersedes: 4-012 | Page 1  Of 4 |
| | Responsible Authority: Vice President for Information Technologies and Resources | |

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all University of Central Florida employees, contractors, consultants, and agents of the above who collect, maintain, or have access to university data or documents containing Social Security Numbers (SSNs).

**BACKGROUND**

Using the SSN as an identifier makes its use vulnerable to misuse, including identity theft.

**POLICY STATEMENT**

The University of Central Florida is committed to ensuring the privacy of confidential information it collects and maintains on students, employees, and others. Social Security Numbers are sensitive data that are required by many university business processes but whose misuse or inadvertent disclosure can pose privacy risks to individuals as well as compliance or reputational risks to the university. It is the policy of UCF to request and use SSNs only as required for the performance of the university's duties and responsibilities and to secure this information from inappropriate release or disclosure.

Violation of this policy may result in immediate loss of network and computer access privileges, seizure of equipment, loss of research laboratory access, or removal of inappropriate information posted on university-owned computers or university-supported

Internet sites. In addition to these corrective actions, failure to comply with this policy may result in disciplinary action up to and including termination.

## DEFINITIONS

**FERPA**. The Family Educational Rights and Privacy Act of 1974, also known as the Buckley Amendment. FERPA is a federal law that protects the privacy of student academic records.

**NID – Network Identification Number**.  A UCF-issued identifier used by university employees and students to access enterprise computer systems and applications.  NIDs are classified as restricted data.

**Personally Identifiable Information (PII)**. Information from which an individual may be uniquely and reliably identified or contacted.

**Pseudo Social Security Number**. A unique nine-digit numerical personal identifier assigned by the University of Central Florida to foreign nationals and other individuals who do not have an SSN in order to include those individuals in university business processes that require use of the SSN.

**Social Security Number**. A unique nine-digit numerical personal identifier assigned by the federal Social Security Administration. The SSN is regarded as highly restricted data, as described in university policy 4-008-1, *Data Classification and Protection*.

**UCFID – Employee Identification Number**. A unique seven-digit numerical identifier assigned to the record of all university personnel in the university's PeopleSoft business system. The UCFID, when used in accordance with university policy 4-008.1, *Data Classification and Protection,* is regarded as unrestricted data.

## PROCEDURES

A.  Collection of SSNs

1.  Florida Statute 119.071(5) requires that the university, as an agency, may not collect SSNs unless the university has stated in writing the purpose for such collection and further requires that:
    a.  agencies must provide a copy of the written statement to each individual whose SSN is collected;
    b.  agencies may not use SSNs for purposes other than those for which they were collected; and
    c.  collection of the SSN is imperative for the performance of the agency's duties and responsibilities as prescribed by law.
2.  When requesting a SSN from an individual, the federal Privacy Act of 1974 requires that any federal, state, or local agency:

4-012.1 *Collection and Use of Social Security Numbers* 2

        a.   tell the individual whether disclosing the SSN is mandatory or voluntary;

        b.   state the statutory or other authority under which the request is being made; and

        c.   state what uses it will make of the individual's SSN.

3. SSNs may not be collected for use as a personal identification number. For purposes of UCF identification, the UCFID should be used.

B. Use of SSNs

1. No part of an SSN may be displayed or distributed electronically via email, whether in the body of the email message or in an attachment, unless encryption is used along with a strong password to protect the SSN. The password must be communicated separately from the email message itself (e.g., via phone call or texting, etc.)

2. Public display of partial SSNs is not acceptable because of the ease with which the missing digits can be obtained from various sources.

3. Only those individuals with a need to know are authorized to access student or employee SSNs. Prior to accessing SSNs, these individual should receive appropriate information security training from the Information Security Office and have signed the university's confidentiality statement.

4. Documents containing student or employee SSNs may not be distributed to or viewed by unauthorized individuals. Such documents should be stored only in secured rooms inside locked cabinets. In high-traffic areas, such documents should not be left on desks or other visible areas.

5. SSNs may be contained in historical university records and documents that cannot be altered. Such records should be considered highly restricted information and stored and handled accordingly.

6. UCF employees are authorized to release SSNs to third parties only as allowed by law, when authorization is granted in writing by the individual, or when the Office of the General Counsel has approved the release and after a security review has been performed on the third party according to UCF policy 4-014. An example would be release of student SSNs to the National Student Loan Clearinghouse.

**RELATED DOCUMENTS**

UCF Policy 4-008.1 *Data Classification and Protection*
https://policies.ucf.edu/

UCF Policy 4-007.1 *Security of Mobile Computing, Data Storage, and Communication Devices*
https://policies.ucf.edu/

UCF Policy 2-100.5 *Florida Public Records Act–Scope and Compliance*
https://policies.ucf.edu/

UCF Policy 4-014 *Procurement and Use of Cloud Computing and Data Storage Services*
https://policies.ucf.edu/

UCF Human Resources Confidentiality Agreement
http://hr.ucf.edu/files/ConfidentialityAgreement.pdf

UCF statement on the collection and use of Social Security Numbers
http://generalcounsel.ucf.edu/files/2016/01/Notice-of-SSN-Usage-Updated-Jan15-FINAL1.docx

**INITIATING AUTHORITY** Vice President for Information Technologies and Resources

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-012.1

Initiating Authority: _Joel L. Nachman_ Date: _11-30-18_

University Policies and
Procedures Committee Chair: _____ Date: _11/19/18_

President or Designee: _Dale Whittaker_ Date: _12-5-18_

---



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date | Policy Number |
|---|---|---|
| Telecommunications Equipment Room and Telecommunications Utility Vault Security and Access | 1/6/2020 | 4-013.1 |

| | Supersedes | Page | Of |
|---|---|---|---|
| | 4-013 | 1 | 3 |

| Responsible Authority |
|---|
| Vice President for Information Technologies and Resources and CIO |

**DATE OF INITIAL ADOPTION AND EFFECTIVE DATE:** 9/22/2014

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all employees, volunteers, visitors, and students of University of Central Florida departments, centers, and units, including Direct Support Organizations (DSO) and contractors working on behalf of the university.

**POLICY STATEMENT**

All telecommunications equipment rooms and telecommunications utility vaults, as defined below, are to be secured and used exclusively for university enterprise voice, data, and cable television services. These spaces house and secure the cabling and electronic infrastructure that operates the university's enterprise communications networks. These networks support critical applications and services including telephony, wired and wireless networks, cable television, access control, two way radio, distributed antenna systems and life safety applications. Telecommunications equipment rooms must not be used for storage of non-enterprise communications hardware or material. Any activity in these rooms not conducted or approved by UCF IT Telecommunications can result in loss or impairment of these critical services or compromise information security.

All telecommunications equipment rooms must be locked at all times. The rooms are under the control and management of UCF IT Telecommunications and are to be secured by university-approved locking devices. If a mechanical lock is used, it must have a Telecommunications Room Core or a Great Grand Master (GGM) core. Any telecommunications equipment rooms shared by Facilities and Safety (e.g., electrical, HVAC, or custodial) will be secured in a manner mutually agreed by the two departments.

UCF IT Telecommunications is responsible for managing access to all telecommunications equipment rooms.

**DEFINITIONS**

**Telecommunications Equipment Room.**  Dedicated rooms or spaces within a building that house and secure communications network equipment and termination and distribution points for cabling.

**Telecommunications Utility Vault**. Underground concrete structures used with underground communications conduit to assist in communications cable placement and splicing.

**PROCEDURES**

The following procedures are intended to maintain the physical and logical security of all University of Central Florida telecommunications networks and facilities.

<u>**Access Management**</u>
In accordance with UCF Policy 3-126, Space Allocation and Use, telecommunications equipment rooms may not be used as server rooms or for any other purpose not authorized in advance by UCF IT Telecommunications. All university server equipment should be located in an approved University facility.

All telecommunications equipment rooms must be accessible to authorized UCF IT Telecommunications personnel 24 hours per day and 365 days per year in order to conduct emergency or scheduled maintenance.

All equipment in telecommunications equipment rooms will be secured in lockable cabinets.  Tampering with telecommunications equipment will result in appropriate disciplinary action.

Access to any UCF telecommunications equipment rooms by non-UCF IT Telecommunications personnel will require an advance appointment and escort by a UCF IT Telecommunications staff member. Visitors wanting access must first call the UCF IT Support Center at 407-823-5117 or email itsupport@ucf.edu to request a service ticket,

4-013.1 *Telecommunications Equipment Room and Telecommunications Utility Vault Security and Access* 2

which must include a detailed explanation of the need to access university communications
rooms.


**RELATED DOCUMENTS**

UCF Policy 3-105 Keys
https://policies.ucf.edu/documents/3-105.pdf

UCF Policy 3-126 Space Allocation and Use
https://policies.ucf.edu/documents/3-126.pdf


**CONTACT**

UCF IT – 12716 Pegasus Drive, Orlando, FL 32816, 407-823-5117, itsupport@ucf.edu

UCF Telecommunications – 12443 Research Pkwy, Bldg. 200, Suite 202, Orlando, FL 32826
407-823-5200, telecom@ucf.edu


**INITIATING AUTHORITY:** Vice President for Information Technologies and Resources and
CIO

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-013.1

Initiating Authority: _Joel L. Hartman_ _____ Date: _12-19-19_

University Policies and
Procedures Committee Chair: _____ Date: _12/17/19_

President or Designee: _____ Date: _1/6/20_

---

History: 4-013 9/22/2014



University of
Central
Florida

Office of the President

| SUBJECT: Procurement and Use of Cloud Computing and Data Storage Services | Effective Date: 6/3/2016 | Policy Number: 4-014 |
|---|---|---|
| | Supersedes: | Page 1   Of 4 |
| | Responsible Authority: Vice President and Chief Information Officer | |

**APPLICABILITY/ACCOUNTABILITY**

This policy applies to all individuals working for or on behalf of the University of Central Florida who maintain or use university data. This includes all full-time and part-time employees, adjuncts and others on temporary or time-limited appointments, all volunteers and courtesy appointees, student workers, and all persons paid by or through the university such as contractors, consultants, or employees of Direct Support Organizations.

**BACKGROUND**

Cloud computing is an application or infrastructure resource that users access via the internet. Although they may be convenient, cloud computing services can bring risks such as data disclosure, data loss, or data compromise. The acquisition and use of a cloud-based service requires a detailed review by the Information Security Office and the Office of the General Counsel. This policy establishes the requirements and procedures necessary to ensure associated risks are managed appropriately.

**POLICY STATEMENT**

If a department, division, school, or college needs to acquire a cloud-based service that will store, process, or share, university data they must work with the Information Security Office and the Office of the General Counsel to properly evaluate and manage the associated risks and agreement language. Using cloud computing services to handle university data does not absolve a unit from the responsibility of ensuring that the data are properly and securely managed.

UCF is obligated by law and other data security requirements from the Federal Government and certain contractual obligations to protect restricted university data. These data types are described in Data Classification and Protection policy (4-008.1), where they are referred to as "Highly Restricted or Restricted" data. Cloud-computing services must not be used with either of these sensitive data types, unless they are reviewed and approved by the Information Security Office, and the university has entered into a binding agreement with a cloud service provider that is approved by the Office of the General Counsel. Further, the cloud service provider must be

able to meet university IT and security standards and may need to be integrated with the university's identity and access management systems or Enterprise Resource Planning (ERP) systems.

Any violation of this policy and procedures may result in immediate loss of network and computer access privileges, seizure of equipment, loss of research laboratory access, and removal of inappropriate information posted on university-owned computers or university-supported Internet sites.

## CONTRACTS OR BUSINESS AGREEMENTS

Any contract or business agreement with a cloud service provider must incorporate the following:

    a. the requirement to comply with applicable federal, state, and local laws;
    b. the confidentiality, integrity, and availability of the data is maintained;
    c. the restricted university data elements to which the cloud-based service provider will have access;
    d. the technical means by which restricted university data will be protected;
    e. the exact geographic location(s) where university data will be stored;
    f. an acceptable method for the return, destruction, or disposal of university restricted data in the cloud based service provider's possession at the end of the contract;
    g. a requirement that the cloud-based service provider must use university restricted data only for the purposes specified in the business agreement;
    h. university restricted data acquired in the course of the contract cannot be used for a third-party provider's own purposes or divulged to others without prior university consent;
    i. UCF maintains ownership of data throughout the contract duration;
    j. cloud service provider produces an acceptable industry recognized audit report, such as Service Organization Control(SOC)3;
    k. cloud service provider shows evidence of current liability or cybersecurity insurance.

Cloud service providers may require users to consent to an end user license agreement (EULA), frequently via a "click-through" agreement, which is a legal contract. Employees covered by this policy are not authorized to enter into legal contracts on behalf of UCF and may not consent to click-through agreements for the purposes of university business. Such agreements should be sent to General Counsel for review.

UCF negotiates agreements with certain cloud service providers. Examples include: Canvas, Knights email, Qualtrics, etc. The terms of these services are clearly defined and represent vetted and authorized cloud services.

## DEFINITIONS

**Cloud Computing**. Cloud computing is a model for enabling ubiquitous, convenient, on-demand network access to a shared pool of configurable computing resources that can be rapidly provisioned and released with minimal management effort or service provider interaction.

Examples include Microsoft Azure, Amazon Elastic Compute Cloud (EC2), and Google
Compute Cloud.

**Cloud Data Storage.** On-demand network access to a pool of vendor-provided data storage
facilities. Examples include Amazon Simple Storage Service, Dropbox, iDrive, Box, and
Microsoft OneDrive for Business.

**Cloud Services Delivery Models.** Cloud computing and data storage services are typically
provided in one of three delivery models:

1. Software as a Service (SaaS). Use of the provider's software applications running on
   the provider's cloud computing infrastructure.
2. Platform as a Service (PaaS). The ability to deploy consumer created or acquired
   software applications running on the provider's cloud computing infrastructure.
3. Infrastructure as a Service (IaaS). Computing, storage, networking and other
   infrastructure on which the consumer can run arbitrary software applications, with
   extensive control over configuration parameters.

**Computing resource**. Personal computers, laptops, and portable computing and communication
devices, servers, mainframes, data storage systems, and similar equipment capable of processing,
accessing, displaying, or communicating electronic information.

**Electronic information resource**. Data or information in electronic format and the computing
and telecommunications resources through which such resources are accessed or used.

**PROCEDURES**

The following steps should be followed when procuring cloud-based services:

a. college or departmental IT units and functional business units must be notified prior to
   any acquisition involving cloud-based services for review and feedback;
b. units must complete the "UCF Department Questions" section explaining the business
   justification for using the cloud-based service and coordinate completion of the "Vendor
   Questions" section of the Third-Party Data Security Assurance Questionnaire for
   submission to the Information Security Office;
c. the Information Security Office will review and provide a risk assessment to the
   appropriate data and business owners;
d. the appropriate data and business owners will provide a signed acknowledgement of the
   risk assessment;
e. the questionnaire and signed risk assessment must be attached to the appropriate
   purchasing document.

At the discretion of the university, cloud service providers may need to recertify by periodically
updating the Third-Party Data Security Assurance Questionnaire.

**RELATED DOCUMENTS**

Policy 2.100.4 - *Florida Public Records Act—Scope and Compliance Policy*
Policy 2-102.2 - *Contract Review Policy*
Policy 2-103 -   *Use of Copyrighted Material Policy*
Policy 3-206.4 - *Credit Card Merchant Policy*
Policy 4-007.1 - *Security of Mobile Computing, Data Storage, and Communication Devices Policy*
Policy 4-008.1 - *Data Classification and Protection*
Policy 4-002.1 - *Use of Information Technologies & Resources Policy*

"The NIST Definition of Cloud Computing," *National Institute of Standards and Technology Publication 800-145, September 2011.*

Records retention schedule - *http://dlis.dos.state.fl.us/barm/genschedules/gs05.doc*

Third-Party Data Security Assurance Questionnaire:
*http://www.cst.ucf.edu/wp-content/uploads/Third-Party-Data-Security-Assurance-Questionnaire.xlsx*

Secure Handling of University Data:
*http://www.cst.ucf.edu/wp-content/uploads/Secure-Handling-of-UCF-Data.pdf*

**CONTACTS**

Computer Services and Telecommunications, Information Security Officer, 407-823-3863

**INITIATING AUTHORITY** Provost and Executive Vice President for Academic Affairs

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: _4-014_

Initiating Authority: _Dale Whittaker_                    Date: _6/2/16_

University Policies and
Procedures Committee Chair: _Rhonda L Bishop_    Date: _5/27/2016_

President or Designee: _John C. Hitt_                    Date: _6/3/16_

---



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT:<br>Information Security Incident Response | Effective Date<br>7/15/2021 | Policy Number<br>4-015 |
|---|---|---|
| | **Supersedes** | **Page**      **Of**<br>1        6 |
| | **Responsible Authority**<br>Vice President and CIO | |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all members of the university community.

## POLICY STATEMENT

Federal and state regulations require the university to take reasonable measures to protect and secure electronic data containing personal information and provide swift notice to individuals of data security breaches.

It is the policy of the university to require all members of the university community to immediately report confirmed or suspected data security incidents to the Security Incident Response Team (SIRT) using the procedures outlined in this policy. Furthermore, where applicable, departmental information security, privacy, or compliance liaisons or designees are to be notified along with SIRT.

Supervisors have an elevated responsibility to ensure all individuals under their supervision have the necessary knowledge, skills, and training to follow the procedures listed in this policy.

Any violation of this policy and its procedures may result in immediate loss of network and computer access privileges, seizure of equipment, or removal of inappropriate information posted on university owned computers or university supported internet sites. In addition to these corrective actions, failure to comply with this policy and its procedures may result in disciplinary action, up to and including termination.

**DEFINITIONS**

**Computing Resource.** Personal computers, laptops, and portable computing and communication devices, such as tablets, smartphones, servers, mainframes, data storage systems, and similar equipment capable of processing, accessing, displaying, storing, or communicating electronic information.

**Data.** Alphanumerical or other information represented either in a physical form or digital form suitable for electronic processing or storage.

**Data Custodians.** Individuals or groups that are considered owners of a particular set of data that may have special or elevated requirements for their protection. Data Custodians are especially important when their data has contractual requirements mandated by a third party, such as data breach notification requirements. Examples of Data Custodians include, but are not limited to, Principal Investigators (PIs) or units that share UCF data with partner universities.

**Electronic Information Resource.** Data or information in electronic format and the computing and telecommunications resources through which such resources are accessed or used.

**Highly Restricted Data.** Any data that is strictly controlled, and protected by laws, regulations, contracts, or policies. Highly Restricted Data requires the highest level of access control and security protection, both in storage and in transit. The loss of confidentiality, integrity, or availability of Highly Restricted Data could have a significant adverse impact on the university's mission, safety, finances, or reputation. (For an extended definition, characteristics, and examples, see UCF Policy 4-008 Data Classification and Protection.)

**Restricted Data.** Institutional Data not identified as Highly Restricted Data, and data that may be protected by state or federal regulations, such as the Family Educational Rights and Privacy Act (FERPA.) Restricted Data must be protected to ensure that they are not disclosed in public records requests and are only disclosed as required by law and to authorized individuals only. (For an extended definition, characteristics, and examples, see UCF Policy 4-008 *Data Classification and Protection*.)

**Security Event.** Any suspicious act that potentially violates federal or state laws, regulations or contracts, or UCF information security policies and computer security standards.

**Security Incident.** Any act that violates federal or state laws, regulations or contracts, or UCF information security policies and computer security standards. Examples of security incidents include, unauthorized attempts (either failed or successful) to gain access to a

computing resource, system, or data; unwanted disruption or denial of service; unauthorized use of an electronic information resource or system for processing or storing data; inappropriate usage according to UCF Policy 4-002 *Use of Information Technologies and Resources*; or the theft or loss of university restricted data as defined by UCF Policy 4-008 *Data Classification and Protection* policy.

**Security Incident Response Team (SIRT).** The responsible authority for all information security related events at the University of Central Florida. SIRT will establish protocols to adequately respond, handle, and make appropriate recommendations on the reporting of those incidents within the university's purview. Responsibilities of the SIRT include, but are not limited to, continually updating the security incident response plans, policies, and procedures, maintaining systems for discovering and documenting security incidents, assessing threats, processing security complaints, and handling and escalating (if necessary) security incidents. SIRT provides guidance on information and computer security incidents that impact university IT resources or threatens the confidentially, integrity, and availability of university information.

**Security Incident Response Committee (SIRC).** A select and diverse group of executive and technically proficient university employees, each with specific knowledge and skills, who work collaboratively to respond to and set policies and procedures for information security incidents. Responsibilities of the SIRC include, but are not limited to, continually monitoring and governing the security incident response policies and processes, providing leadership and measured responses to security incidents and public notifications of data breaches, and managing, and if necessary, escalating security incidents to senior executives.

**Telecommunications Resource.** Wired or wireless voice or data communications circuits or networks and associated electronic equipment.

**Unauthorized Access.** Any action or attempt to utilize, alter, or degrade an electronic information resource in a manner inconsistent with university policies and procedures.

**Unrestricted Data.** Data that is not protected by law or contract, and the disclosure of which is not reasonably expected to cause harm to the university or to the affected parties. (For an extended definition, characteristics, and examples, see UCF Policy 4-008 *Data Classification and Protection*.)

**PROCEDURES**

The following procedures describe how to report and respond to security incidents and events.

**Mandatory Reporting Responsibilities and Response Procedures**

**1. Reporting**

Individuals working on or behalf of the university must report suspected or confirmed security incidents immediately through the following channels:

1.1. All suspected or confirmed security incidents must be immediately reported to SIRT by emailing sirt@ucf.edu, by calling the UCF IT Support Center at (407) 823-5117, or by submitting a ServiceNow ticket located on the UCF Information Security Office website (www.infosec.ucf.edu). Please keep in mind that a potentially compromised computer resource may not be reliable or suitable for reporting a security incident. Please use a system where there is no doubt of its integrity.

1.2. All security incidents involving protected health information (PHI) or research governed data must be immediately reported to the applicable corresponding departmental information security, privacy, or compliance liaisons or designees in addition to SIRT. All individuals reporting security incidents involving these areas must review and adhere to the university's policies and procedures governing protected health information or research governed data.

1.3. Do not include Highly Restricted Data (e.g., PII, ePHI, account credentials with passwords, etc.) when contacting SIRT via phone, email, or ticket. SIRT may request additional sensitive information through secure channels.

1.4. Data Custodians are responsible for maintaining their own records of any contractual relationship with a third party that requires notification of a data breach to the third party, or any other data breach responsibilities placed on UCF in agreements or contracts.

    1.4.1. In the event of a breach, Data Custodians are responsible for immediately notifying SIRT of any of these requirements, enabling SIRT to invoke the security incident response plan.

    1.4.2. Data Custodians are responsible for informing SIRT of a breach of data either at UCF or a breach involving a third party/parties.

    1.4.3. SIRT will perform an analysis or an investigation and advise the Data Custodian on next steps consistent with this policy. Once SIRT has investigated, the Data Custodian may be responsible for passing on the notification of data breach, with SIRT's input, to third party, and to liaise with the third party in general. This contact with the third party should occur only after SIRT has been consulted and provided approval.

1.5. Exception: Some security incidents may involve violation of federal and/or state law, in which case, SIRT will work with the UCF Police Department and other law enforcement agencies as necessary.

## 2. Security Incident Response

SIRT will address the security incident based on this policy and the severity of the incident. Incident severity takes several factors into account: sensitivity of the data involved, number of end users impacted, and its overall impact on the ability of the university to fulfill its mission.

2.1. SIRT may detect or be informed of a security incident and will investigate security events to determine whether an incident has occurred, the extent involved and impact of the incident.

2.2. SIRT will be involved in the containment and remediation of security incidents and may authorize and expedite changes to information systems and/or implement network security controls as necessary and appropriate to contain the incident.

2.3. In the course of an investigation, SIRT is authorized to access, retrieve, and monitor relevant university information resources and user's computer activities without notice or further approval and in compliance with all other university policies.

2.4. SIRT will determine the level of each security incident based on all evidence and reports, and escalate the incidents, as needed, to the SIRC and the Emerging Issues and Crisis Response Team.

    2.4.1. For security incidents involving Unrestricted Data, where the impact is deemed low, SIRT will invoke the incident response plan and direct the user(s) to take corrective action to handle the security incident.

    2.4.2. For security incidents involving Highly Restricted Data or Restricted Data, individuals will work with SIRT to determine if a breach has occurred. In the event of a confirmed data breach, responsible parties, under SIRT's direction, will follow the security incident response plan to meet the appropriate data breach notification and reporting laws and regulations in handling the incident.

2.5. For security incidents involving Highly Restricted Data, Restricted Data, or Unrestricted data, SIRT will conduct an initial investigation of the security incident, determine the potential risk and impact to the university, and when appropriate, convene the SIRC to determine next steps, such as determining a data breach situation based on legal and regulatory requirements, engagement of third party security, legal or cyber liability firms for further investigation, and making decisions on how to publicize security incidents per regulatory or contractual requirements.

2.6. SIRT is authorized to share indicators of compromise and security incident information, excluding personally identifiable or university system information, with partner institutions, law enforcement, government agencies, and information sharing centers, such as Multi-State Information Sharing & Analysis Center, Research and Education Networks Information Sharing & Analysis Center, etc.

2.7. Any disclosure of information regarding an information security incident must be reviewed and approved by the CIO and SIRC.

**RELATED DOCUMENTS**

Florida Statutes 501.171 *Security of Confidential Personal Information* (Florida Information Protection Act of 2014 (FIPA))
http://www.leg.state.fl.us/statutes/index.cfm?App_mode=Display_Statute&Search_String=&URL=0500-0599/0501/Sections/0501.171.html

UCF Security Incident Response Plan
https://infosec.ucf.edu/sirt/

UCF Policy 4-002 Use of Information Technologies and Resources
https://policies.ucf.edu/documents/4-002.pdf

UCF Policy 4-008 Data Classification and Protection
https://policies.ucf.edu/documents/4-008.pdf

**CONTACTS**

Information Security Office, Chief Information Security Officer, infosec@ucf.edu, 407-823-3863

Security Incident Response Team (SIRT), sirt@ucf.edu
UCF IT Support Center, itsupport@ucf.edu, 407-823-5117

**INITIATING AUTHORITY**  Vice President and CIO

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-015

Initiating Authority: ma184583   Digitally signed by ma184583 Date: 2021.07.12 13:59:15 -04'00'    Date: 7/12/2021

University Policies and
Procedures Committee Chair:    Date: 6/30/21

President or Designee:  Michael Johnson   Digitally signed by Michael Johnson Date: 2021.07.15 15:31:11 -04'00'    Date: 7/15/2021

---



UNIVERSITY OF CENTRAL FLORIDA

**Office of the President**

| SUBJECT: | Effective Date: 10/4/2018 | Policy Number: 4-016.1 |
|---|---|---|
| Email Provisioning, De-provisioning, and Use Policy | **Supersedes:** 4-016 | **Page** 1 **of** 8 |
| | **Responsible Authority**: Vice President for Information Technologies & Resources | |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all persons and entities that are provided an account in the university's electronic mail systems (i.e., Office 365 or Knights Email).

## POLICY STATEMENT

Email is a key communication resource provided by the university for the benefit and use of its employees, students, and authorized others. All email users have the responsibility to use their university-provided email account in an ethical and lawful manner. UCF currently utilizes two official enterprise email solutions: a cloud-based system utilizing Microsoft's Office 365 (O365) for faculty and staff members for university business use and a separate O365 instance for students (Knights Email).

A copy of this policy shall be provided to all employees at the beginning of their employment at UCF. Any violation of this policy and procedures may result in loss of email privileges.

## DEFINITIONS

**Deleted account**. An email account that has been purged from Office 365. Prior to deletion, contents of an employee account must be copied to a secure location to meet applicable records retention requirements.

**Disabled account**. Email account status that prevents the user of the account from accessing it. This account status can be changed by UCF IT email administrators or the Information Security Office.

**Employee**.  A person who has been officially hired by UCF and has an employee record in the PeopleSoft HR system.

**Enterprise Resource Planning System (ERP)**. PeopleSoft Student Administration, Human Resources (HR), or Financials systems: ERP is the authoritative source of information on Student, HR and Financials data, and identity data on all persons and entities affiliated with UCF.

**Expired account**. Email account status that prevents incoming email from being accepted. After six months of expired status the account is deleted. This account status can be changed by UCF IT email administrators or the Information Security Office.

**Knights Email**. UCF's student email system, supported by a distinct instance of Office 365. Students and current employees may obtain an account at no cost for personal use. Knights Email is the official communication channel for messages from university offices to students.

**Non-Employee**. A person affiliated with, but not officially employed by UCF.

**Office 365** (O365). An email service offered by Microsoft Corporation. Office 365 is the email platform supporting UCF's enterprise email service and also Knights Email for students.

**Phishing**. An attempt to acquire sensitive information such as usernames, passwords, and credit card numbers, often for malicious purposes, through electronic communications, such as email or text messages.

**Pre-Employment**. The status of a person who has accepted employment at UCF, and is provisioned in the ERP system, but whose official start date has not occurred.

**Retiree.** An individual who has completed all steps necessary to retire from the university and is officially listed in the ERP system as a Retiree.

**Spam**. Unsolicited and undesired electronic messages containing advertisements for products or services.

**Sponsored Account**. A computer or email account created for individuals that do not fit standard employee or student roles, such as consultants, contractors, guests, courtesy appointees, etc.

**Student**. A person who has been admitted into full-time, part-time, or transient student status and who has a student record in the PeopleSoft student information system. See policy 4-010 Student Email for further details.

**University Business**. In the context of this policy, electronic mail messages that a person covered by this policy may send or receive in the conduct of their university responsibilities.

**GENERAL POLICY**

**Email Data Ownership**

The university owns all university email accounts in all Microsoft Office 365 instances. The content in the faculty and staff O365 instance is owned by the university. University business must be conducted using the Microsoft Office 365 faculty and staff instance.

The Knights Email system is for personal use, and therefore the content is personally owned. All email content in O365 instances is subject to copyright and other intellectual property rights under applicable laws and university policies.

**Email Privacy and Right of University Access**

The university will make every attempt to keep email messages secure; however, privacy is not guaranteed and users should have no general expectation of privacy in email messages sent through university email accounts. Under certain circumstances, it may be necessary for university IT staff or other authorized university officials to access university email accounts. These circumstances may include, but are not limited to, maintaining the system, investigating security or abuse incidents or investigating violations of this or other university policies; and, in the case of Microsoft Office 365 Accounts, violations of Microsoft's Acceptable Use Policy or the university's contracts with Microsoft. University IT staff or university officials may also require access to a university email account in order to continue university business where the university email account holder can no longer access the university email account for any reason (such as death, disability, illness, or separation from the university.) Such access will be on an as-needed basis and any email accessed will only be disclosed to individuals who have been properly authorized and have an appropriate need to know or as required by law. The university may access the contents of email accounts for purposes of e-discovery, or officially sanctioned investigations.  All email users are bound by the appropriate acceptable use policies of both the university and Microsoft.

**Data Retention and Purging**

Email messages held in the O365 accounts for faculty and staff are subject to university's storage and email retention policies. O365 mailboxes are set to maximum storage size of one hundred gigabytes and ten years' retention. Any email over the ten-year period will be automatically purged, but may be archived by the account holder prior to the end of the ten-year retention period.

**Email Record Retention**

It is the responsibility of employees to preserve university records, including emails or instant messages in particular circumstances: 1) those who have actual knowledge of matters in which it can be reasonably anticipated that a court action will be filed, 2) a subpoena has been served or notice of same has been given, 3) records are sought pursuant to an audit or similar pending or possible investigation, and 4) public records retention as required by Florida statutes or federal agencies.

**Appropriate Use and User Responsibility**

Highly restricted data, as defined by policy 4-008.1 Data Classification and Protection, must not be stored or transmitted within the university email system unless the data is encrypted. Restricted data, as defined by policy 4-008.1 Data Classification and Protection, may be transmitted or stored within the university email system without data encryption. Sending highly restricted or restricted data from the university email systems to a non-university email system without data encryption is prohibited. Refer to the university's policy 4-008.1 Data Classification and Protection for further definitions and protections on restricted and highly restricted data.

Please refer to policy 4-006.1, Broadcast Distribution of Electronic Mail, for the university's requirements on mass email communications.

In order to prevent the unauthorized use of email accounts, the sharing of passwords is strictly prohibited. Each individual is responsible for his/her account, including the safeguarding of access to the account. All email originating from an account is assumed to have been authored by the account holder, and it is the responsibility of that holder to ensure compliance with this policy.

All incoming email is scanned for malware and spam. Suspected messages are blocked from the user's inbox. Due to the complex nature of email, it is not possible to guarantee protection against all spam or malware, nor is it possible to prevent blocking of certain legitimate messages. It is therefore incumbent on each individual to use proper care to prevent the spread of malware. In many cases, messages containing or pointing to malware or phishing content appear to be sent from a friend, coworker, or other legitimate sources. Users should not click on links in an email message or open attachments unless the user is certain of the nature of the message and the sender. Suspicious emails should be forwarded, as an attachment, to sirt@ucf.edu where they can be investigated.

**Personal Email Accounts**

To avoid confusing official university business with personal communications, and to adhere to Florida public records laws, employees must not use non-university email accounts (e.g., personal Hotmail, Yahoo, or Gmail accounts) to conduct university business. Forwarding university business related email to a non-university personal email account is not permitted in order to prevent potentially sensitive university information from being sent to external, non-secure email systems.

4-016.1 *Email Provisioning, De-provisioning, and Use* 4

**PROCEDURES**

**Email Account Creation**

### Employees

Upon completion of the hiring or pre-employment process, and when an employee record is created in the Human Resources system, each employee becomes eligible for an email account. Creating an email account is initiated through an electronic form by the department's Human Resources Liaison, or delegate, and is based on the employee's role and relationship with the university. Email accounts are created based on the official name of the employee as reflected in the Human Resources system.

The standard format for an email account is: firstname.lastname@ucf.edu. Faculty and staff can establish an alternate, or alias, account name by using the self-service process in the myUCF portal.

Faculty and staff members can create a Knights Email account in the Knights Email instance for general personal use by using the online form at http://knightsemail.ucf.edu.

Once student applicants are matriculated, the student becomes eligible for a Knights Email account. Students use the above university-provided provisioning application to create their customized Knights Email account.

When a student is employed by the university (e.g., part-time employment, GTA, etc.), an email account may be requested by the HR Liaison in the O365 faculty and staff email system for the purposes of conducting university business.

### Sponsored Accounts

University employees may request a UCF Sponsored Account and an associated email account. Sponsored account requests are reviewed on a case-by-case basis for individuals who are not UCF faculty, staff, or students. Sponsored accounts and online resource access can be requested using the forms and procedures found on the Service Desk web page at **https://it.ucf.edu**.  Sponsored accounts are established for one year and must be renewed annually.

### Departmental Email Accounts

Requests for shared departmental accounts will be accommodated, but require designation of an account holder who will administer the addition, deletion, or modification of users within the account, as well as manage the account as per these guidelines.

## Granting Access

The university may access the contents of email accounts for purposes of e-discovery, or officially sanctioned investigations at the request of the chief compliance and ethics officer, chief audit executive, or Office of the General Counsel.

### Active Employees and Students

Request for access to an active employee's email account requires approval from the provost, chief compliance and ethics officer, chief audit executive, or Office of the General Counsel.

### Former Employee

Request for access to a former employee's email account requires approval from the previous manager and approval from the dean or director of the employee's college or administrative department.

## Email Account De-Provisioning

Notwithstanding the following procedures, university executives (e.g., president, provost, Office of the General Counsel, etc.) reserve the right to revoke email privileges for cause at any time.

### Faculty and Staff who leave before retirement

Faculty and staff members who leave the university will have email privileges removed effective on their last worked day. If such separation is for cause, email privileges may be immediately revoked without notice. Upon request, automatic replies will be added to the email account to notify senders of the former employee's status and/or new contact information. An email account may also be assigned to a manager, or delegate, upon appropriate approvals. Contents will remain in the account's mailbox as required by current records retention requirements.

### Sponsored Accounts

Sponsored accounts must be renewed annually. Sponsored accounts will become disabled if the sponsor of the account fails to renew the account through the sponsored account process. Once disabled, an email account can be re-activated upon sponsor request.

**Retired Faculty and Staff**

Faculty and staff members who have retired from the university will be permitted to retain a university email account as described in UCF policy 3-001.2 University Benefits for Retired Employees and the current UCF-UFF Collective Bargaining Agreement.

**Active Students and Alumni**

Knights Email accounts are currently not de-provisioned. Students who have graduated from the university will be permitted to retain their email privileges if the account continues to be actively used. In the event the university terminates or otherwise ceases its contractual relationship with Microsoft regarding the Knights Email system, all accounts will be deleted. Users will be given the option of downloading their data prior to deletion.

**Expelled Students**

If a student is expelled from the university, email privileges may be terminated immediately at the direction of the Office of Student Rights and Responsibilities.

**RELATED INFORMATION**

Further information regarding Microsoft's policies on Acceptable Use, Terms of Use, Privacy and Trademarks can be found here:
https://products.office.com/en-US/legal/docid12

UCF Policy 2-100.5 Florida Public Records Act—Scope and Compliance policy
https://policies.ucf.edu/documents/2-100.5FloridaPublicRecordsActScopeAndCompliance.pdf

https://policies.ucf.edu/documents/2-100.5FloridaPublicRecordsActScopeAndCompliance.pdf

UCF Policy 2-103.2 Use of Copyrighted Material policy
http://policies.ucf.edu/documents/2-103.2UseOfCopyrightedMaterial.pdf

UCF Policy 3-206.5 Credit Cart Merchant Policy
http://policies.ucf.edu/documents/3-206.5CreditCardMerchant.pdf

UCF Policy 4-007.1 Security of Mobile Computing, Data Storage, and Communication Devices policy
http://policies.ucf.edu/documents/4-007.1SecurityOfMobileDevices.pdf

UCF Policy 4-001.1 Retention Requirements for Electronic Mail
http://policies.ucf.edu/documents/4-001.1RetentionRequirementsForElectronicEmail.pdf

UCF Policy 4-002.2 Use of Information Technologies & Resources Policy
http://policies.ucf.edu/documents/4-
002.2UseOfInformationTechnologiesAndResources.pdf

UCF Policy 4-006.1 Broadcast Distribution of Electronic Mail
http://policies.ucf.edu/documents/4-006.1BroadcastDistributionOfElectronicMail.pdf

UCF Policy 4-010 Student E-Mail
http://policies.ucf.edu/documents/4-010StudentEmailPolicy.pdf

UCF Policy 4-209 Export Control Policy
http://policies.ucf.edu/documents/4-209ExportControlPolicy.pdf

UCF Policy 4-014 Procurement and Use of Cloud Computing and Data Storage Services
http://policies.ucf.edu/documents/4-
014ProcurementandUseofCloudComputingandDataStorageServices.pdf

**INITIATING AUTHORITY**

Vice President for Information Technologies & Resources

<div style="border:1px solid black; padding:10px">

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 2-105.2

Initiating Authority: _W. Icon Cole_____ Date: 10/2/18

University Policies and
Procedures Committee Chair: _____ Date: 9/28/18

President or Designee: _Dale Whittaker____ Date: 10.4.18

</div>

History 4-016 12/13/2017



UNIVERSITY OF CENTRAL FLORIDA
**Office of the President**

| SUBJECT: | Effective Date: | Policy Number: |
|---|---|---|
| Enterprise Directory Governance | 2/1/2018 | 4-017 |
| | **Supersedes:** | **Page** 1 of 5 |
| | **Responsible Authority:** Vice President for Information Technologies & Resources and Chief Information Officer | |

## APPLICABILITY/ACCOUNTABILITY

This policy applies to all members of the university community, including all full-time and part-time personnel, student workers, and all persons paid by or through the university such as contractors, consultants, and employees of direct support organizations.

## BACKGROUND

Enterprise Directory Governance provides a framework for using directory services, such as authentication, authorization, auditing, and identity lifecycles to securely manage access to resources and university information assets. Inadequate governance of directory services may result in unauthorized collection, modification, deletion, disclosure, or misuse of university information assets, thus potentially compromising the mission of the university, compromising information security, violating individuals' rights to privacy, or non-compliance with state or federal regulations. The intent of this policy is to improve information security, mitigate the risk of unauthorized data access, and optimally govern directory and identity management services.

## POLICY STATEMENT

The UCF Enterprise Directory service holds identities and security groups for members of the university community, and provides access by authorized individuals to university

information assets based on job duties and responsibilities. Individuals working for or on behalf of the university who create, view, or manage the directory services are responsible for implementing appropriate managerial, operational, physical, and technical controls. Controls must be implemented in compliance with the standards and procedures set forth by the Enterprise Directory Governance Committee for the access to, use of, transmission of, storage of, and decommissioning of directory information.

Any violation of this policy may result in immediate loss of network and computer access privileges, seizure of equipment, or removal of inappropriate information posted on university-owned computers or university-supported internet sites. In addition to these corrective actions, failure to comply with this policy and procedures may result in disciplinary action up to and including termination.


**DEFINITIONS**

**Credentials**.  A combination of user name, password, and possibly additional information or key such as a PIN, biometric scan, or app that together are used to authorize access to a computer system or information resource.

**Data**. Alphanumeric or other information represented either in a physical or digital form suitable for electronic processing or storage.

**Directory Service**.  A distributed repository that provides identification and authentication data as well as an infrastructure for locating, managing, administering, and organizing network resources.

**Distributed Directory**. Any university directory service other than the Enterprise Directory.

**Enterprise Directory**.  A centrally-administered database containing data used to control identity and access management.

**Family Educational Rights and Privacy Act of 1974 (FERPA) also known as the Buckley Amendment**. A federal law that protects the privacy of student academic records.

**Health Insurance Portability and Accountability Act of 1996 (HIPAA)**. HIPAA is a federal law that protects the security of individually-identifiable health information.

**Identity and Access Management (IAM)**. An integrated system of policies, business processes, and technologies that enable UCF to both facilitate and control user access to IT resources and applications. IAM incorporates the process of identifying individuals in a system such as a computer or network and controlling their access to resources within that

system by associating user rights and restrictions with a person's established identity.
Credentials that uniquely identify one and only one person represent an identity.

**Institutional Data**. All data created, collected, maintained, recorded, or managed by the
university, its staff, and agents working on its behalf, in the course of conducting university
business.

**Resource Owner**.  An owner of a resource or application that consumes directory services.

**Restricted Data**. Any confidential or personal data that are protected by law or policy and
that require the highest level of access control and security protection while in storage or
in transit.

**Unrestricted Data**. Data that are not protected by law or contract, and the disclosure of
which would cause no harm to the university or to the affected parties. Examples of
unrestricted data include employee names, dates of hire, rate of pay, title, office address or
phone number. Student names, years, majors, or other directory information not blocked
by a student within the scope of FERPA, can be considered unrestricted data.

## ENTERPRISE DIRECTORY GOVERNANCE COMMITTEE RESPONSIBILITIES

The Enterprise Directory Governance Committee, formed by UCF IT, includes stakeholders
from across the campus community. The committee's mission is to:
- Govern all directory services across the institution
- Develop procedures to review proposed directory service use cases
- Recommend changes and improvements to university directory services
- Govern a standardized directory structure that meets university policies,
  standards, and regulatory requirements
- Establish procedures to review and audit adherence to account and
  authorization standards and practices
- Minimize the use of redundant directory services across the university

## UCF IT RESPONSIBILITIES

UCF IT shall establish, administer, and maintain the Enterprise Directory, including:
- Establish business processes to manage the Enterprise Directory
- Maintain the technical infrastructure necessary to operate the Enterprise
  Directory
- Implement Enterprise Directory Governance Committee standards and
  recommendations

**PROCEDURES**

- All applications that require user authentication, where technically feasible, must first consider an Enterprise Directory approach for authentication, authorization, accounting and auditing purposes
- Resource owners are responsible for adhering to the policies, procedures, and standards set forth by this document and the Enterprise Directory Governance Committee
    - Resource owners seeking to propose Enterprise Directory architecture changes or modify services (e.g., implement or change current services) that depend on the enterprise directory shall work through the Enterprise Directory Governance Committee
    - Resource owners of distributed directories shall work through the Enterprise Directory Governance Committee to obtain approval for any architectural, business process, or regulatory changes that affect the directory
- Any exceptions to the use of the Enterprise Directory shall be reviewed and approved by the Enterprise Directory Governance Committee
    - All distributed directories are subject to the same policies, procedures, and standards that apply to the Enterprise Directory

**RELATED DOCUMENTS**

2.100.5 *Florida Public Records Act—Scope and Compliance* policy
*http://policies.ucf.edu/documents/2-100.5FloridaPublicRecordsActScopeAndCompliance.pdf*

4-007.1 *Security of Mobile Computing, Data Storage, and Communication Devices* policy
*http://policies.ucf.edu/documents/4-007.1SecurityOfMobileDevices.pdf*

4-008.1 *Data Classification and Protection Policy*
*http://policies.ucf.edu/documents/4-008.1DataClassificationAndProtection.pdf*

4-002.2 *Use of Information Technologies & Resources Policy*
*http://policies.ucf.edu/documents/4-002.2UseOfInformationTechnologiesAndResources.pdf*

4-209 *Export Control Policy*
http://policies.ucf.edu/documents/4-209ExportControlPolicy.pdf

Records retention schedule:
*http://dos.myflorida.com/media/693588/gs05.pdf*

UCF password standards:
*http://www.cst.ucf.edu/wp-content/uploads/501-101-Password-Standards.pdf*

Florida Information Protection Act of 2014:
*http://www.flsenate.gov/Session/Bill/2014/1524/BillText/er/PDF*


**CONTACTS**
UCF Chief Information Security Officer, 407-823-3863


**INITIATING AUTHORITY**
Vice President for Information Technologies & Resources and Chief Information Officer

---

**POLICY APPROVAL**
**(For use by the Office of the President)**

Policy Number: 4-017

Initiating Authority: _Joel L. Nurmar_    Date: 1—31—18

University Policies and
Procedures Committee Chair: _Rhonda L. Bishop_    Date: 1/29/2018

President or Designee: _John C. Hitt_    Date: 2/1/18

---