OIE Investigative Report - 2021-00477 (FINAL).pdf

# UNIVERSITY OF CENTRAL FLORIDA
### OFFICE OF INSTITUTIONAL EQUITY

**IN THE MATTER OF:**

**OIE Case No. 2021-00477**

**<u>INVESTIGATIVE REPORT</u>**

May 5, 2023

MYERS R-RFP1 8125

OIE Investigative Report - 2021-00477 (FINAL).pdf

## I.    INTRODUCTION

OIE is a neutral investigatory office responsible for investigating claims of discrimination and harassment based on protected classifications, as well as retaliation. When investigations reveal the presence of discriminatory, harassing or retaliatory behavior, OIE is responsible for making recommendations to mitigate the effects of the discriminatory conduct. Accordingly, OIE conducted an investigation into this matter, and this investigative report summarizes the investigation, factual background, and findings of OIE arising from this investigation.

As set forth below in further detail, OIE finds as follows:

(1) Respondent did not violate UCF's prohibition regarding disability discrimination,
(2) Respondent created a hostile learning environment for Complainant based upon perceived disability, and
(3) Respondent violated UCF's prohibition on retaliation.

## II.    APPLICABLE STANDARDS

In the present case, Complainant claimed that Respondent subjected him to discrimination on the basis of disability (e.g., denial of access to class), and a hostile learning environment based upon perceived disability. Complainant later claimed that he had been retaliated against by Respondent. Similar to state and federal law, the University of Central Florida's Non-Discrimination Regulation UCF 3.001 and Nondiscrimination Policy UCF 2-004[1] prohibit discrimination on the basis of disability, as well as retaliation.

The standard of proof utilized in OIE's investigations is "preponderance of the evidence," which is defined as that degree of relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true. The burden of persuading the investigator that a decision or action was based on a protected class always rests on the complaining party and because discrimination cannot be presumed, the investigator may not find discrimination when the evidence is sharply conflicting, unclear or equivocal.

## III.    OIE INVESTIGATION & ALLEGATIONS

On September 29, 2021, Complainant filed an incident report with Student Conduct and Academic Integrity (SCAI) and an Integrity Line report regarding this matter. On October 6, 2021, Complainant filed a discrimination complaint form with OIE. On October 7, 2021, Complainant participated in a substantive interview with OIE in which he alleged that his professor, Respondent, shared personal health information with other students in his course and treated Complainant differently with respect to his perceived mental disability, including coercing Complainant into

---

[1] This University regulation and policy are considered to provide similar protections against discrimination based on disability as those afforded under the Florida Educational Equity Act (Fla. Stat. §1000.05, *et seq.*), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and Title II of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. §12131). While not a mirror image of these statutory counterparts, the examination of disability discrimination claims under the University regulation and policy are similar to that under these relevant laws.

MYERS R-RFP1 8126

OIE Investigative Report - 2021-00477 (FINAL).pdf

dropping the course. The content of the allegations is contained within his interview summary, incident reports, and supporting documentation. Concurrent to his filing a complaint with OIE, Complainant also filed reports with the Office of the Inspector General of the State of Florida and the U.S. Department of Education. While substantively similar, OIE reviewed documentation submitted in all five reports.

On October 21, 2021, Respondent was provided with a written notice of investigation and subsequently participated in a substantive interview with OIE on October 25, 2021. The content of Respondent's response to the allegations is contained in his interview summary and supporting documentation. During the course of the present matter, OIE also interviewed various witnesses, collected additional information from Complainant and Respondent, and reviewed university records (including emails and reports). These other documents are contained in the record. There also were emails and reports regarding the related academic misconduct and sexual harassment concerns, which were addressed separately from the present matter. However, these other issues are germane to the present matter and are referenced herein.

## IV.   MATERIAL FACTS NOT IN DISPUTE

OIE's investigation revealed that the following facts, which are material to determining whether Respondent violated the University regulation and/or policy, are not in dispute based on the testimonial and/or documentary evidence:

1. At all relevant times, Complainant was a UCF undergraduate student (B.S. program in Health Sciences), and Respondent was a UCF Assistant Professor in the Burnett School of Biomedical Sciences ("School" or "BSBS").
2. During Fall 2020 semester, Respondent taught multiple courses, including an honors section of PCB 3703C (Human Physiology), in which Complainant was enrolled. PCB 3703 was a degree requirement for Complainant.
3. A screenshot of a Discord profile allegedly owned by Complainant was circulated in the class by students and in the "About Me" section, it read, "It's all fun and games until all this resentment and hatred festering inside of me comes bursting out. :)". [2]
4. On September 14, 2021, at 7:20PM, Student 1 contacted Respondent via Webcourses to report concerns regarding Complainant's alleged cheating in the course. She included four screenshots to support her claim.
5. On September 15, 2021:
   a. At 2:13AM, Student 1 contacted Respondent via Webcourses again to provide additional documentation to the allegations.
   b. At 9:35AM, Respondent emailed Complainant to request a meeting to "discuss your conduct regarding this course."
   c. At 9:40AM, Complainant replied to Respondent, stating, "Am I able to ask what this this is pertaining to? I was also wondering if I am able to withdraw as my progress has not been so well."
   d. At 10:41AM, Respondent replied to Complainant and stated, "Documented attempts to provide exam content or request exam content from others in the class. Withdrawal is

---

[2] This matter was referred to Student Conduct and Academic Integrity (SCAI) for review.

MYERS R-RFP1 8127

OIE Investigative Report - 2021-00477 (FINAL).pdf

certainly an option which I suggest you seriously consider. I will discuss this further once I hear from the Honors College and BSBS administration."

   e. At 11:05AM, Complainant replied and stated, "I have withdrawn. Thank you."

6. On September 16, 2021:

   a. At some point during the day, Respondent contacted Employee 1, Associate Director of Undergraduate Affairs in the School, and advised him that Complainant was going to withdraw from the course following alleged cheating.

   b. Respondent posted the announcement titled "Issue regarding [Complainant]" to his Webcourse for PCB 3703C. Respondent stated, in part, "<u>I have suggested he be banned from campus and receive some type of mental health intervention. Unless I am informed that the threat has been adequately resolved, class will be held remotely via zoom. I regret this situation and take the safety of everyone involved in this course seriously.</u>" The post was later deleted on October 3, 2021. (emphasis added, indicating Respondent was aware of the threat management concerns)

   c. At 10:13AM, Student 2 replied to an email by Employee 2 and advised her that the threat concern had been reported to police.

   d. At 10:16AM, Employee 2 forwarded this email to Employee 1, who at 10:28AM, forwarded this email to Chief of Police Employee 3 and Interim Vice President of SDES Employee 5 and copied then-Deputy Chief of Police Employee 4 and Employee 2. At 10:49AM, Employee 5 replied and stated that she had shared the information with Employee 6, Interim Dean of Students, who would look into the matter further.

   e. At 10:58AM, Employee 6 emailed Employee 1, Employee 5, Employee 3, Employee 4, Employee 2, and Employee 7 (then-Associate Director, Student Care Services) advising that SCS had received two reports and forwarded those reports to the UCFPD Threat Management Team. At 12:29PM, Employee 6 replied all to this email advising recipients to tell any students or faculty with concerns to report any information they may have regarding this student to the UCFPD and that the UCFPD road division would be in the area of the class at 1:30pm as a precautionary measure.

   f. At 1:16PM, Respondent replied to Employee 1's 9:28AM email: "It is. I have been provided with additional emails demonstrating inappropriate behavior. I have been informed but cannot provide evidence that this is not the first class he has "harassed". I understand several students plan to file police reports documenting his unacceptable behavior." At 1:26PM, Employee 1 forwarded the 12:29PM email chain from Employee 6 to Respondent. At 1:42PM, Respondent replied to Employee 1 and stated, in part, "I don't consider a "road team in the vicinity" to be adequate given information I have been told has been provided to UCFPD. <u>Being able to respond to, rather than prevent, the activity of an active shooter seems insufficient.</u>" (emphasis added)

   g. OIE received a Title IX report from Respondent accusing Complainant of sexual harassment.

7. On September 17, 2021:

   a. Respondent posted the following announcement titled "Please send any information, emails or concerns regarding [Complainant] to Employee 8, Ucf [sic] threat management" to his Webcourse for PCB 3703C: "<u>He has determined that [Complainant] is not a threat and his issues have been resolved based on interventions established last year. He needs to be made aware of current issues.</u>" (emphasis added.) Respondent later deleted this post on October 3, 2021.

MYERS R-RFP1 8128

OIE Investigative Report - 2021-00477 (FINAL).pdf

b. Respondent posted the following announcement titled "Issue with [Complainant]" to his Webcourse for PCB 3703C: "I believe if I don't post this, it will swept under a rug....this is an email I sent to [Employee 1] in response to [Complainant] requesting I permit him to re-enroll as a virtual student.  I declined to comment to [Complainant]. "I spoke with [Employee 8] with the threat team.  He recognized [Complainant] had been brought to the attention of the team last year but intervention had solved the issue and he was no longer a threat. When I asked about fall 2021 complaints he admitted receiving complaints from one student, denied he was aware of any others and requested I forward them. I find this inexcusable." Respondent later deleted this post on October 3, 2021.

c. Respondent posted the following announcement titled "Told ya, swept under the rug" to his Webcourse for PCB 3703C: "[Employee 8] has deleted the email trail he and I shared regarding [Complainant]. Please send any issues you have regarding [Complainant] to [Employee 1]. [Complainant] has requested I allow him to re-enroll in the course as a virtual student.  I won't unless admin forces me to do so based on [Employee 8's] recommendation." Respondent later deleted this post on October 3, 2021.

d. At 12:31AM, Respondent emailed Employee 1 that his house alarm was set off, that he did not believe it was a coincidence, and reported the incident to Orlando Police.

e. At 12:20PM, Respondent emailed Employee 1 and copied Employee 9, Employee 6, and Employee 5: "I mentioned the issues with [Complainant] during an AORTA [Admissions Office Review Team for Applications] meeting earlier today.  [Employee 10] confirmed that this is a student with a documented history of either academic or behavioral misconduct. I find it problematic that a troubled student has been permitted to continue a persistent pattern of disruptive behavior which may or may not be escalating. He should not have been allowed to enroll in my course and submit my students to this level of concern. This section of Honors Phys cannot be compared to past sections and will be uniquely evaluated based on this experience." (emphasis added)

f. At 12:37PM, Student 3 sent a message to Respondent via Canvas indicating that she collected evidence about Complainant and shared it with the UCFPD.

g. At 1:38PM, Respondent emailed Employee 8: "Based on our conversation my understanding is that you do not consider [Complainant] to be a threat to student safety.  I would ask that you provide me a statement that I can send via announcement to my Honors Physiology students to document your interpretation of events and provide them a measure of confidence so they can return to labs and lecture presentations without concern for their safety."

h. At 2:08PM, Student 3 replied via Webcourses to Respondent's message stating that Complainant had been temporarily trespassed from property and expressed the concern about Respondent's house alarm to UCFPD.

i. At 2:15PM, Respondent replied to Student 3 via email, in part, "I had a conversation with [Employee 8] and I was not pleased with the outcome. I confirmed that I had no cause-and-effect relationship between my alarm going off and the presence of [Complainant], only a correlation of events. He claims [Complainant] is not a student safety issue based on previous intervention and discounted your concerns when I asked if he had received any current issues." (emphasis added)

j. At 2:16PM, Complainant emailed Respondent stating, "Is it possible to meet with you via zoom today". At 2:18PM, Respondent replied, "I respectfully decline." At 2:26PM, Complainant replied, "I was going to ask if I can take PCB3703 online so I don't have to

MYERS R-RFP1 8129

OIE Investigative Report - 2021-00477 (FINAL).pdf

delay my graduation as I am already financially responsible if I pay it back. I already withdrew but I am able to be added back so I was thinking of taking it virtually." At 2:34PM, Respondent replied, "I cannot comment."

k.  At 2:37PM, Student 3 emailed Respondent via Webcourses and stated, in part, "Hopefully they can do something more or at least permanently tresspass [*sic*] him from campus and force him to meet with a psychologist considering the amount of complaints. It sounds like he has anti-social characteristics because he isn't picking up on social cues and emotions that other people read, but I'm not a psychologist (yet at least, ha, ha). Anti-social disorder is kind of scary to me, so hopefully that's not what's going on."

l.  At 2:58PM, Respondent emailed Employee 1 and Employee 8 in regard to Complainant's request to be added into the course virtually, Respondent described "<u>This [Complainant] is a seriously disconnected individual.</u>" (emphasis added)

m.  At 3:57PM, Student 3 emailed Respondent via Webcourses to ask, "Did [Complainant] try to contact you about re-enrolling in this class? I don't know if [Complainant] is supposed to be talking to you?"

n.  At 4:03PM, Respondent replied to Student 3 via email and stated, "Yes. He wanted to re-enroll in a virtual fashion. <u>Think it best we do not mention this via email as I am already gonna get it for being so verbal about his dismissal.</u>" (emphasis added)

o.  At 4:21PM, Respondent replied to the previous email thread with Employee 1 and Employee 8 but sent the message to himself rather than the other recipients: "[Employee 8], <u>Also want to ensure I provide appropriate responsibility to newspapers and networks if he is allowed to attend and harms someone. It will be you.</u>" (emphasis added)

p.  At 7:09PM, Respondent replied to Complainant's email requesting to take the course virtually: "[Complainant], I will comment as I think it unfair not to inform you of my intentions. I will never allow you to enroll in a class I instruct unless forced to do so.  The damage you caused to my Honors class cannot be measured.  I will be providing a "Z" next to your withdrawal as this is the least I can do to prevent you from ever doing this to another professor or class they instruct.  I will file a complaint with academic services with the recommendation you be expelled."

q.  At 7:10PM, Student 3 emailed Respondent via Webcourses and stated, "I spent the last 4.5 hours compiling an 18 page document[3] with statements and screenshots from about 35 different students… You seemed upset, so I wanted to let you know that someone is taking care of it. If they still choose to ignore this, I do not understand."

r.  At 7:21PM, Respondent replied to Student 3 via email and stated, "I am extremely upset by [Employee 8's] assertion that [Complainant] is not a threat.  It makes sense they decided to have a standby car rather than try to intercede. I am so disturbed I let [Complainant] know I would never allow him to enroll in any course I instruct unless forced to do so. Gonna get a "Z" designation (no one can prevent me from doing so as instructor of record) and I will submit to academic services requesting he be expelled. Buying cameras for my house as suggested by [Employee 8].  Disgusting. You take care, [Student 3], do not let this take any more of your time. We are Knights, UCF is better than this example and we will persevere."

s.  At 9:43PM, Respondent emailed Employee 10 about this situation and shared that UCFPD indicated Complainant was not a risk but expressed his disagreement.

---

[3] This document was 19 pages in length.

MYERS R-RFP1 8130

OIE Investigative Report - 2021-00477 (FINAL).pdf

t.  At 10:08PM, Respondent replied to the same email to Employee 1 only: "Why is a repeat offender allowed to disrupt an entire class?  Who does he know?  … I have been instructed to buy cameras to provide security? Where does this end? I guess when I have had enough."

u.  At 11:16PM, Respondent posted an announcement to the course via Webcourses which read, "[Employee 6] will reinstate him [Complainant] if you don't disagree. Please feel free to let her know that cheats and serial sexual predators are not allowed regardless of who they know. Signs on the bathroom walls (UCF does not support abuse) should be actively enforced." Respondent later deleted this post on October 3, 2021.

8.  On September 18, 2021:

a.  Respondent posted the following announcement titled "Monday presentation" to his PCB 3703C Webcourse, in part, "I have decided that I will not support serial sexual abuse and academic misconduct. As a result, I am going to cancel all my lecture presentations until I have been assured that [Complainant] will not be allowed in my classroom or on UCF campus. I fully support prevention of sexual harassment." Respondent later deleted this post on October 3, 2021.

b.  Respondent posted the following announcement titled "Can I get away with a protest and still talk with you on Monday on Big Blue Button on the sly?" to his PCB 3703C Webcourse: "That would be my preference." Respondent later deleted this post on October 3, 2021.

c.  At 12:48PM, Respondent replied to a student's email about this situation, stating "I can find another position and the reason I will be leaving will not be an issue. Someone will be able to cover."

9.  On September 20, 2021, at 12:32PM, Employee 6 replied to Respondent and Employee 1, asking Respondent to file the appropriate report forms for academic misconduct and Title IX. Employee 6 also indicated that no incident reports had been received from Respondent at that time. Employee 6 also offered additional resources for Respondent's students. At 1:09PM, Respondent replied, "Thank you, [Employee 6]. I have filed a report identifying the student as a "student of concern" for both academic misconduct and behavioral misconduct. I will also complete the additional forms. <u>During a discussion with [Employee 8] I made it clear that I consider this student to be a potential threat. This is primarily based on comments made to myself which I believe have been reported to UCF PD, as well as other faculty ([Employee 2]).</u> Please keep me apprised of future actions as I believe there needs to be a balance between protecting confidentiality and the safety of students." (emphasis added)

10. Following the aforementioned announcements, between September 17 and 20, 2021, the Office of Student Rights and Responsibilities (OSRR) received four additional contacts from students in this course who expressed concerns regarding Complainant.

11. On September 19, 2021, at 10:50AM, Respondent submitted a Student of Concern form detailing Complainant's alleged academic misconduct and alleging that Complainant posted materials online and contacted individual students in an effort to determine who turned him in. On this form, Respondent checked the following behaviors of concern: "Academic Difficulty," "Mental Health Issues," and "Threat to Others."

12. On September 20, 2021, at 10:49AM, Respondent received a confirmation email from the Associate Director of Student Care Services which indicated that SCS was coordinating a response to the matter with UCF Police and OIE. At 1:37PM, Respondent submitted a referral form to Student Conduct and Academic Integrity for academic misconduct against Complainant.

MYERS R-RFP1 8131

13. On September 23, 2021, Respondent posted the following announcement titled "I have been informed, continuity is a concern so I might be available for the entire semester" to his PCB 3703C Webcourse: "Note, admin is not concerned about how I am doing, merely I complete the semester. If they will let me and I don't get an offer I can't refuse, I won't let you down. However, I might not be available on occasion.  I will not be available Oct 29, which is an exam date so that one will need to be conducted online. Others are TBD but I will use Big Blue Button while I schedule. I received an email that I am non-compliant with university policy because I did not provide a sufficiently "thorough" description of sexual harassment. I subsequently provided another submission and requested an explanation as to why the focus is now on me and not the original complaint." Respondent later deleted this post on October 3, 2021.

14. On September 29, 2021:

    a. Respondent posted the announcement titled "Submitting my 30 day termination with UCF" to his PCB 3703C Webcourse.[4] Respondent later deleted this post on October 1, 2021.

    b. At 4:08PM, Respondent emailed Employee 10 with only a subject line reading, "I have terminated my employment with ucf with cause". At 8:10PM, Employee 10 replied and offered to speak with Respondent. At 8:35PM, Respondent replied, "[Employee 9] had the gall to question my commitment and/or professionalism. When I spoke with him last week, I specifically requested "can you guarantee I will be able to finish the semester?" His response was that he didn't have the authority to provide that assurance.  Told me all I needed to know. They were going to kick me out at end of semester. I offended the wrong people. I decided it was not convenient, so I decided to leave on my terms."

15. On October 7, 2021, Respondent posted the following announcement titled "Critical Announcement" to his PCB 3703C Webcourse: "I hereby retract the false, misleading, and/or unsubstantiated allegations about a UCF student and/or UCF employees that I had previously posted here. I regret making allegations that could be false, misleading, and/or unsubstantiated. Those postings have been removed."

16. On December 13, 2021, at 10:50AM, Respondent sent an email with the subject line "From the desk of [Respondent]" that was BCC'd to Complainant, stating, "grades submitted to registrar."[5]

17. On December 19, 2021, Respondent posted the following announcement titled "Thanks for an adjustable situation" to his PCB 3703C Webcourse: "I have been reprimanded for inappropriate responses to the situation we encountered. I am sanctioned, no longer able to submit for any faculty rewards or pay increases. I did not ask for this situation; guess I need to apologize to all that it occurred. Hope that makes all feel better."

---

[4] The record does not support that Respondent submitted a resignation and was still employed at the time of issuance of this investigative report.

[5] This subject line is the same subject line used by Respondent to send the prior emails to Complainant regarding meeting to discuss academic misconduct.

MYERS R-RFP1 8132

OIE Investigative Report - 2021-00477 (FINAL).pdf

## V.    RESOLUTION OF MATERIAL FACTS IN DISPUTE

OIE received differing accounts or conflicting evidence as to some material facts. Since the questions are material to the resolution of whether Respondent violated University regulation or policy, OIE must resolve the disputed facts based on the testimonial and documentary evidence. The Equal Employment Opportunity Commission (EEOC) has identified five factors to consider when resolving disputed issues of fact that require credibility assessments: 1) the inherent plausibility of the testimony; 2) the demeanor of the person offering the testimony; 3) whether the individual has a motivation to lie; 4) whether the remarks or conduct could be corroborated; and 5) whether the Respondent has a history of similar behavior. None of these factors are necessarily determinative of credibility.[6] Courts have recognized that in a case which involves close questions of credibility and subjective interpretation, the existence of corroborative evidence or lack thereof is likely to be crucial.

1. **Whether Respondent knew or suspected that Complainant had a mental health disability or condition.**

**Finding:** OIE finds a preponderance of evidence that Respondent considered Complainant to have a mental health condition as early as September 16, 2021. This is corroborated by the Webcourse announcement authored by Respondent on September 16, 2021, and Respondent's own statement that he spoke with Employee 8 regarding the Complainant on September 17, 2021, and was told that Complainant was "back on his meds.".

**Rationale:** In his statement to OIE, Complainant indicated that he believed Respondent treated him differently due to his perception that Complainant had a mental impairment. Specifically, Complainant said that Respondent continued to refer to Complainant as a threat even though the UCF Police Department's Threat Management Team had determined that he was not. Complainant also stated that "[b]ecause [Respondent] is disclosing that I'm not mentally stable, other students are passing it on to other students." Complainant also alleged that Respondent said he was a "violent threat" and was scared of Complainant. In his statement to the U.S. Department of Education, Complainant asserted that Respondent said that "because of my mental disability, I am capable of causing harm to the class and school and am a threat… he also told the class that I take medications, have anxiety, and disclosed my personal info/FERPA and alleged that I am mentally unstable."

In his statement to OIE, Respondent refuted the allegation that he knew or suspected Complainant to have a mental health disability or condition. Specifically, Respondent stated, "I was never contacted by SAS with any knowledge of a type of disability with regard to this student. I had no idea that he had a mental disability. I was not aware of any disability." Respondent stated that he never directly observed any concerns about Complainant; rather, the concerns about Complainant and any safety risk he may pose were relayed to Respondent by students. Respondent added, "I believe [Employee 8] determined he was not a serious threat, but they did not see him as someone who would come back to campus and cause physical damage. He mentioned they talked

---

[6] See *U.S. Equal Employment Opportunity Commission: Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors* (June 18, 1999) at http://www.eeoc.gov/policy/docs/harassment.html.

MYERS R-RFP1 8133

OIE Investigative Report - 2021-00477 (FINAL).pdf

to him and his parents and that he was back on his meds, and that had solved the issue.[7] I said, well obviously it didn't. To elaborate, I mean his behavior continued, other faculty shared that the student was difficult, but I was not sure if the faculty ever reported the student themselves. My goal moving forward is to make sure no other faculty finds themselves in this position ever." [emphasis added] Respondent was asked whether he shared information about Complainant's perceived mental instability with the class. Respondent stated that he did not believe so, and continued: "I mean, there was obviously something going on with his conduct, but again, that doesn't mean someone is disabled. Someone can be aggressive and not be disabled. If I had been contacted by SAS and they said he had special accommodations, that might have given me a hint about something. I had no issues with this student until he was cheating, and I do not equate cheating to mental disability. I am sure there were probably times that the student made comments about what was going on in the class and I may have shaken my head, but I never made comments about mental disability because it's not my role. I don't make decisions about counseling. And who tries to cheat on GroupMe? It was the student's own conduct that determined how I interacted with him and nothing other than his conduct." [emphasis added]

Turning to the documentation in the record, as set forth in detail above, on September 16, 2021, Respondent posted an announcement to his PCB 3703C course wherein he stated, "I was not aware of the scope of [Complainant's] comments having only been made aware of attempts at academic misconduct. Obviously, this will not be sufficient based on his past and subsequent behavior. I have suggested he be banned from campus and receive some type of mental health intervention." [emphasis added] Also, on September 17, 2021, Respondent attended an AORTA (College's "Admissions Office Review Team for Applications") meeting in which he discussed Complainant. In an email to Employee 10 summarizing this meeting, Respondent wrote, "After AORTA I doubled down on removing [Complainant] from Honors Phys. He must be connected because [Employee 8] identified him as no risk despite numerous attempts from students that filed police reports regarding his conduct."

On October 7, 2021, Respondent received a Letter of Reprimand from Employee 9 which addressed the concerns regarding the disclosure of FERPA-protected information regarding Complainant to include information about "preferences for a mental health intervention" for Complainant. Specifically, the letter stated that:
- On September 16, 2021, Respondent made an announcement in the course Webcourses portal to the entire class in which Respondent named Complainant, discussed Complainant's academic progress in your class and your preferences for mental health intervention for the student and disciplinary actions to be taken against the student [emphasis added];
- On September 17, 2021:
  - Respondent notified the class that UCF Police had determined that Complainant was not a threat and suggested that Employee 8 "needs to be made aware of current issues";
  - Respondent shared with his class a message expressing concerns that Employee 8's determination that Complainant was not a threat [emphasis added];
  - Respondent requested that students in the course send any issues they have with Complainant (noted by first name only) to Employee 1 and notified students that Respondent intended to prevent Complainant from re-enrolling in his course;

---

[7] This conversation occurred on September 17, 2021.

MYERS R-RFP1 8134

- o Respondent suggested to students in his course that they contact Interim Dean of Students Employee 6 to prevent Complainant's reinstatement in the course and characterized Complainant as a "cheat" and "serial sexual predator" [emphasis added]; and
- On September 18, 2021, Respondent notified students in two courses (including the course Complainant was enrolled in) that all lecture presentations would be cancelled until Respondent was assured that Complainant would not be allowed in the course or on the UCF campus.

### 2. Whether Respondent shared information regarding Complainant's mental health or that Complainant was taking medications with other students in his course.

**Finding:** OIE finds a preponderance of evidence to support that Respondent shared information with the student's in his course regarding Complainant's mental health. OIE did not find a preponderance of the evidence that Respondent shared his knowledge that Complainant was taking medication with his students.

**Rationale:** As noted above, Complainant alleged that Respondent told other students in his course that he was a threat and was mentally unstable. In response to this allegation, Respondent stated, "I did make a statement to the class, identified the student, and told them to please consider submitting to administration. I think I did violate FERPA. As far as anything else, I didn't know about any disability and never said anything to the class about that. They asked if I knew the status of the matter, but I didn't give updates. I didn't know he was trespassed from campus. Another student found out and told the class." Respondent further stated that he did not believe he had shared any information about Complainant's use of medications with the other students in the course. Respondent said that he did not believe he shared information with the students about Complainant's mental instability either.

However, as noted above, Respondent posted a Webcourse announcement on September 16, 2021 in which he shared with his students that he suggested that Complainant "receive some type of mental health intervention." Accordingly, OIE finds a preponderance of evidence to support that Respondent shared information with his course regarding Complainant's mental health. Respondent also disclosed to his course via a Webcourse announcement on September 17, 2021 that he had spoken to the UCF Police Department's Threat Management Team about Complainant, that Complainant had been brought to that Team's attention last year, and that Employee 8 felt that Complainant was "no longer a threat." On September 18, 2021, Respondent posted two announcements in the Webcourse in which he characterized Complainant as a "serial sexual predator."

### 3. Whether Respondent coerced Complainant into withdrawing from the course and subsequently refused to allow Complainant to take the course online.

**Finding:** OIE did not find evidence that the Respondent coerced the Complainant into withdrawing from the course. OIE finds a preponderance of evidence that Respondent refused to allow the Complainant to take the course online when he told Complainant that he would not allow Complainant to re-enroll in the class and that he threatened to have him expelled.

OIE Investigative Report - 2021-00477 (FINAL).pdf

MYERS R-RFP1 8135

OIE Investigative Report - 2021-00477 (FINAL).pdf

**Rationale:** Complainant alleged that Respondent coerced him into withdrawing from the course. Complainant also stated that Respondent would not allow him to subsequently take the course online. Specifically, Complainant stated that "[Respondent] emailed me to withdraw or he will reccomend [*sic*] I get expelled. … when I asked to take his class online, he refused but allowed the rest of the class to take it online because I am such a threat." In response to this allegation, Respondent stated, "I wanted to meet with the Complainant to discuss academic misconduct, and he immediately withdrew from the course. The statement that I tried to coerce him is false. I asked to meet with him. He asked to meet with me. I said it was academic misconduct. He immediately fired back that he was going to withdraw from the course. … I don't discriminate against anyone. These are just the ramifications of his misconduct. If the student hadn't withdrawn, I don't know what I would have done - maybe taken off a letter grade for cheating, and I told him he has no hope of doing better than a C in the class moving forward.  Regardless, the cheating scheme would not be tolerated.  I have never asked him to leave nor coerced him; that is erroneous, I just didn't disagree with his withdrawal decision. I refused to teach him remotely. There were three or four emails about this issue. It just got to be a situation that was beyond academic misconduct, but I did not address those other issues with him."

Respondent was made aware of the potential academic misconduct concerns on September 14, 2021 in two emails sent to Respondent by STUDENT 1. According to email records from September 15, 2021, after Respondent became aware of Complainant's possible academic misconduct, he contacted Complainant to set up a meeting. The emails exchanged are set forth in detail above. Based upon the record, Complainant introduced the idea of withdrawing into the conversation. After being advised by Respondent that he had been accused of academic misconduct, Respondent suggested that Complainant "seriously consider" withdrawing from the course. OIE reviewed these communications to determine if they met the definition of coercion, which generally refers to making someone do something by force, threat of force, or assertion of power.[8] The record does not support that Respondent coerced Complainant into withdrawing from the course. While Complainant asserted that Respondent "emailed me to withdraw or he will reccomend [*sic*] I get expelled," the record does not support this. Respondent confirmed that he subsequently refused Complainant the opportunity to complete the course online and stated that he sought to have Complainant expelled. The record supports that on September 17, 2021, Complainant emailed Respondent requesting a Zoom meeting, to which Respondent declined. Complainant then asked to take the course online, stating, "I already withdrew but I am able to be added back so I was thinking of taking it virtually." Respondent replied, "I cannot comment." Later, Respondent replied again, stating, "I will never allow you to enroll in a class I instruct unless forced to do so. … I will be providing a "Z"[9] next to your withdrawal as this is the **least** I can do to prevent you from ever doing this to another professor or class they instruct.  I will file a complaint with academic services with the recommendation you be expelled." [emphasis in original]

---

[8] See "coerce" as defined by Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/coerce.

[9] Per UCF Regulation 5.015 *Student Academic Behavior Standards,* a "Z" designation "denotes a student was found 'in violation' of academic misconduct while enrolled in a course. … A Z designation will be denoted on the student's transcript as a ZW if a student withdrew from the course prior to the conclusion of the conduct process and was subsequently found 'in violation' of academic misconduct."

MYERS R-RFP1 8136

OIE Investigative Report - 2021-00477 (FINAL).pdf

## VI.    ANALYSIS

### A.    Disparate Treatment Discrimination (Disability)

**Finding:** Respondent did not subject Complainant to disability discrimination.

**Rationale:** As set forth above, the *Nondiscrimination Policy* prohibits unlawful discrimination on the basis of an individual's …disability…or membership in any other protected class as set forth in state or federal law. A claim of disability discrimination must be supported by "direct evidence" of discrimination, by raising an inference of discrimination through the *prima facie* case analysis, or by demonstrating through statistics a pattern of disability discrimination. *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of an impermissible factor constitute direct evidence of discrimination." *Wilson v. BIE Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). There is no direct evidence of discrimination in the present matter nor statistical evidence to support a pattern of discrimination. Therefore, OIE reviewed the matter using the *prima facie* case analysis. To establish a *prima facie* case of discrimination on the basis of a disability, a complainant must show that, at the time of the adverse employment or education action, the complainant (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of their disability.

In the present matter, Complainant alleged that he was treated as a person with a disability when he was (1) forced to withdraw from the course, (2) told he could not re-enroll in the course virtually even though the rest of the class had been moved online, and (3) referred to UCF Police Department's Threat Management Team (TMT). With respect to the first allegation, as noted in OIE's findings above, there was insufficient evidence to support that Complainant was forced to withdraw from the course. With respect to the second allegation, the record supports that Respondent told Complainant he could not re-enroll in the course virtually and that Respondent pivoted two course meetings of PCB 3703C to online lectures. The record further supports that Respondent and students in the course communicated these concerns about Complainant to Employee 8 and TMT as well as Student Conduct and Academic Integrity (SCAI).

*"Regarded as" a person with a disability.* Regarding the first criterion, whether Complainant met the definition of a person with a disability, OIE is satisfied that Complainant met the first criterion in that he was *regarded as* having a disability by Respondent. This is supported by Respondent's assertion to his class that Complainant needed mental health intervention and Respondent's knowledge that Complainant was taking medications.

*Direct threat and 'qualified individual'.* Regarding the second criterion, whether Complainant was a 'qualified individual,' OIE considered the circumstances regarding Complainant's referral to TMT and subsequent interim suspension from the University. An individual is not "otherwise qualified" if they pose a "direct threat," or a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3); *see also* 28 C.F.R. § 35.139 (excluding public entities from permitting an individual to

MYERS R-RFP1 8137

participate in or benefit from services when that individual poses a direct threat to the health and
safety of others); 29 U.S.C. § 705(20)(D) (excluding those who "constitute a direct threat to the
health or safety of other individuals" from the definition of "individual with a disability" under the
Rehabilitation Act).

It is undisputed that students in Respondent's course shared their concerns with
Respondent regarding the Discord profile allegedly owned by Complainant and which read, "It's
all fun and games until all this resentment and hatred festering inside of me comes bursting out.
:)"; a Snapchat post in which Complainant is seen holding a gun[10]; and a photo sent by
Complainant to another student with a picture of scars on Complainant's arm that Complainant
said he inflicted "with a knife" "cause I feel empty inside" and clarified that he texted the picture
because he "just wanted to vent it" and asserted that he "got [his] shit together." Due to these
concerns, SCAI issued an interim suspension to Complainant on September 17, 2021, at 4:28PM.
Following a hearing to review the interim suspension on September 22, 2021, Complainant's
interim suspension was maintained "until such a time that a student conduct hearing is convened
to address the alleged incidents" and allowed Complainant to attend his remaining courses online
and asynchronously only (meaning that he was not to attend any synchronous online meetings).
The interim suspension lifted in full on October 28, 2021. Complainant was adjudicated on
October 22, 2021, and found in violation of UCF Regulation 5.008 (3)(a) (Disruptive Conduct)
and not in violation of (4)(b) (Harmful Behavior). Complainant was then placed on disciplinary
probation with additional sanctions.

Regarding the direct threat assessment, the Office of Civil Rights of the U.S. Department
of Education (OCR) has explained that although Section 504 and Title II do not require an
institution to retain an individual who poses a direct threat to the health and safety of others, they
do require that the institution first "make an individualized assessment, based on reasonable
judgment that relies on current medical knowledge or on the best available objective evidence, to
ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will
actually occur; and whether reasonable modification of policies, practices, or procedures or the
provision of auxiliary aids or services will mitigate the risk." *See Albra v. Bd. of Trustees of Miami
Dade Col.,* 296 F.Supp.3d 181, 184 (2018). Based upon the information above, OIE found that the
elements of a direct threat assessment were met by the University. Respondent was afforded his
due process rights in that he was able to respond to the interim suspension within three business
days, provided an objective and neutral hearing, and was subsequently provided the right to attend
his in-person course.

Accordingly, OIE finds that Complainant was not otherwise qualified at the time of the
TMT referral and failed to meet the second criterion "qualified individual" of the *prima facie*
analysis.

***Unlawful discrimination on the basis of disability.*** Regarding the third criterion, whether
Complainant was subjected to unlawful discrimination based on his disability, the investigation
did not find evidence to support that Respondent deprived Complainant of access to his educational

---

[10] OIE notes that this image was alleged to have resurfaced from an incident a year prior to the present matter, which
was addressed at the time.

MYERS R-RFP1 8138

OIE Investigative Report - 2021-00477 (FINAL).pdf

OIE Investigative Report - 2021-00477 (FINAL).pdf

experience. There are two issues of analysis here. First, regarding whether Respondent deprived Complainant access to the PCB 3703C course, the record supports that Complainant withdrew from the course of his own volition after being told he was accused of academic misconduct but before any other concerns were brought to Respondent's attention. There was nothing in the record to support Complainant's assertion that this withdrawal from Respondent's course was coerced or forced. Furthermore, Complainant's assertion that Respondent allowed other students in the course to attend remotely but not the Complainant is moot for two reasons. First, Respondent only pivoted his course to remote learning for the two course periods following Complainant's referral to TMT, not for the duration of the semester. Complainant was on interim suspension from the University at this time and would not have been permitted to attend class even if it had moved online. Second, Complainant withdrew from the course. Once he withdrew from the course, he forfeited his enrollment. As drop/add period had ended on August 27, 2021, Complainant was not able to add or drop courses. Late add petitions can only be submitted by 11:59PM on Friday of the second week of the semester, in this case, September 3, 2021. There are no university policies in place that would grant a student the ability to add a course that they withdrew from under these conditions. *See* UCF Undergraduate Catalog, "Withdrawal Policy"[11].

Regarding Respondent's and others' referral of Complainant to the UCFPD TMT, OIE found the information presented regarding Complainant's suspected communications compelling. The referral and provision of information is not in and of itself discriminatory. Rather, Respondent and others were providing information of a possible or suspected threat of harm to university law enforcement for threat evaluation. *See UCF Policy 3-404, Behavioral Assessment and Response.* Following the University's knowledge of the possible threat, Complainant was placed on interim suspension status by SCAI effective September 17, 2021. Complainant was then provided an opportunity to respond during an interim suspension hearing on September 22, 2021, and the interim suspension status was upheld except that Complainant was permitted to participate in the asynchronous online component of his courses.

OIE finds that Complainant also has failed to prove the third criterion as no facet of his educational experience was materially altered or adversely affected *because of disability*. As noted above, Complainant's alleged actions constituted a direct threat which was then subject to review and response by the university.

### B.     Hostile Learning Environment (Perceived Disability)

**Finding:** Respondent created a hostile learning environment for Complainant based on a perceived disability.

**Rationale:** In analyzing a claim of hostile environment, the U.S. Department of Education's enforcement guidance regarding disability harassment states:

Disability harassment is unwelcome conduct based on a student's actual or perceived

---

[11] *See UCF Undergraduate Catalog,* https://www.ucf.edu/catalog/undergraduate/#/policy/B1gu5Avcd

MYERS R-RFP1 8139

OIE Investigative Report - 2021-00477 (FINAL).pdf

disability.[12]

> Disability harassment … is intimidation or abusive behavior toward a student based on disability that creates a hostile environment by interfering with or denying a student's participation in or receipt of benefits, services, or opportunities in the institution's program. Harassing conduct may take many forms, including verbal acts and name-calling, as well as nonverbal behavior, such as graphic and written statements, or conduct that is physically threatening, harmful, or humiliating. When harassing conduct is <u>sufficiently severe, persistent, or pervasive</u> that it creates a hostile environment, it can violate a student's rights … A hostile environment may exist even if there are no tangible effects on the student where the harassment is serious enough to adversely affect the student's ability to participate in or benefit from the educational program.[13] (emphasis added)

The present matter turns on whether Respondent's disclosures to the class created a hostile learning environment for Complainant. Respondent provided, *de facto*, a nondiscriminatory rationale for his actions, namely that he thought that Complainant was a direct threat (*see supra,* "Direct threat and 'qualified individual'"). However, OIE finds this response lacking in merit as the conduct continued after Complainant was determined to not be a direct threat, negating the use of this exemption.

Once TMT had established that Complainant was not a threat and communicated this to Respondent, Respondent continued to communicate with his students in a way that would reasonably cause them to fear for their safety rather than use the information he was provided to allay the students' concerns. On September 18, 2021, Respondent emailed Employee 6 and Employee 1 indicating that he would "not support serial sexual abuse and academic misconduct" and had determined that he would cancel his lectures "until I have been assured that [Complainant] will not be allowed in my classroom or on UCF campus." On September 19, 2021, Respondent filed a Student of Concern form which noted, in relevant part, "[Employee 8] claimed ignorance of any recent complaints and determined that [Complainant] was not a risk to harm anyone. I, and many students completely disagree." Even after Complainant was determined to not be a threat to the community, and thus did not meet the "direct threat" exemption noted above, Respondent continued to campaign to have Complainant removed from UCF. The record supports that Respondent's response to the supposed threat – sharing information regarding Complainant with members of the class as well as requesting of university officials that the student be removed and receive a Z grade – were sufficient to create a hostile environment for Complainant. Complainant feared re-enrolling in subsequent course sections due to Respondent's poisoning of the academic department's faculty against him. Accordingly, OIE finds that Respondent created a hostile learning environment on the basis of a perceived disability.

---

[12] See *"Disability Discrimination Frequently Asked Questions" (U.S. Department of Education),* https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/disability.html

[13] See *"Reminder of Responsibilities under Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act"* (July 25, 2000), https://www2.ed.gov/about/offices/list/ocr/docs/disabharassltr.html

MYERS R-RFP1 8140

OIE Investigative Report – 2021-00477 (FINAL).pdf

As an additional caution, Respondent and other faculty are not empowered by the university to make a direct threat assessment on their own. As noted above, Respondent should have immediately reported such concerns to the appropriate offices (UCF Police/TMT, Student Care Services/Student of Concern, Student Conduct & Academic Integrity) to review and address these concerns. Respondent's actions were not consistent with students' rights as set forth in UCF Regulation 5.006 *Student Rights and Responsibilities* and the procedures for direct threat assessment for students set forth in UCF Policy 3-404 *Behavioral Assessment and Response.* Notably, the *Behavioral Assessment and Response* policy states that, "an individual with a disability will not be subjected to an adverse action based on unfounded fears, prejudice, and/or stereotypes." Again, the direct threat exemption would only apply until such a time as an individual was assessed to determine if the individual did indeed constitute a direct threat to others. In this instance, UCFPD TMT reviewed the threat and determined it was unfounded.

## C.    Retaliation

**Finding:** Respondent retaliated against Complainant for grieving Respondent's actions.

**Rationale:** Retaliation means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in or being a party to any proceeding under this policy, including requesting supportive measures (remedial and/or protective) for the purpose of interfering with any right or privilege secured by the *Nondiscrimination Policy*. Retaliation includes threatening, intimidating, discriminating, harassing, coercing and any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct.

In determining whether an act constitutes retaliation, the full context of the conduct will be considered. To establish a *prima facie* claim of retaliation, the evidence must demonstrate that a complainant (1) engaged in protected activity (e.g. complained of Prohibited Conduct in good faith, participated in OIE's investigation process or participated in a process to oppose discrimination) that the respondent was aware of, (2) experienced a materially adverse action (e.g., actions which would dissuade a reasonable person from engaging in protected activity), and (3) there is a causal connection between the action and the protected activity. *See EEOC Enforcement Guidance on Retaliation and Related Issues* (August 25, 2016).[14] Should these three components be substantiated in the initial complaint, the burden then falls to the respondent to demonstrate a legitimate, nonretaliatory purpose for the adverse action. The analysis then turns to whether the rationale provided by the respondent is a pretext for retaliation. See UCF Policy 2-700 *Reporting Misconduct and Protection from Retaliation* for additional information on prohibited retaliation.

Complainant did not grieve retaliation with OIE. Rather, this allegation was indicated on his filing with the U.S. Department of Education's Office of Civil Rights (OCR). Specifically, Complainant stated that "because I complained, [Respondent] started making more allegations." Crediting that the threat of "never allow[ing Complainant] to enroll in a class [Complainant instructs] unless forced to do so" and "providing a "Z" grade" on Complainant's transcript

---

[14] https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues

MYERS R-RFP1 8141

constitute materially adverse actions, these actions pre-date Complainant's discrimination grievance. The record indicates that Complainant did not grieve discrimination until he filed a report on September 29, 2021, with SCAI in which he wrote that Respondent had subjected him to "continued discrimination and harassment even when I was not charged for the incident (treated like a criminal) - spread my case and information throughout the class". Respondent was not aware that Complainant filed or may file a discrimination-related complaint until October 21, 2021, when Respondent received OIE's notice of investigation verbally and in writing. Accordingly, OIE's review is limited to alleged materially adverse actions taken on or after October 21, 2021.

On December 13, 2021, Respondent sent an email which appears to be BCC'd to Complainant. The message stated, "grades submitted to registrar." Complainant perceived this as a follow-through on Respondent's prior threat that he would pursue a "Z" grade for Complainant. In an email to OIE dated February 2, 2022, Complainant also stated that Respondent was "still talking about me and the situation" and that he knew this "because students have asked me if it was me" and sharing that Respondent "is saying I hate him and I'm planning to sue." On February 11, 2022, Employee 9 issued Respondent a Letter of Counsel due to Respondent's continued mischaracterization of the situation.

Accordingly, the record supports that Respondent's ongoing attempts to penalize Complainant following Complainant's assertion of his right to nondiscrimination would have chilled a reasonable person's desire to continue in OIE's process. While Complainant was galvanized in his complaint as a result of Respondent's conduct, Respondent's behavior nonetheless violated UCF's prohibition of retaliation as articulated in Policy 2-004. Respondent's assertion that he was concerned about Complainant's alleged academic misconduct does not explain Respondent's continued attempts to penalize Complainant following Complainant's withdrawal from his course, nor Respondent's engagement with other faculty members about Complainant's actions in his course. In the absence of any viable nonretaliatory reason for Respondent's actions, OIE finds these actions retaliatory.

## VII.  FINDINGS

After carefully reviewing the testimonial and documentary evidence and in light of the evidentiary principles discussed in this report, OIE makes the following findings:

(1) Respondent did not violate UCF's prohibition regarding disability discrimination.
(2) Respondent created a hostile learning environment for Complainant based upon perceived disability.
(3) Respondent violated UCF's prohibition on retaliation in UCF Policy 2-004.

In addition to the findings above, OIE finds it troubling that a faculty member (Respondent) would augment his students' stress by sharing information about another student and openly undermining the administrative response to a potential student of concern. While no students in the course specifically grieved that Respondent created a volatile learning environment for them, the record supports that multiple students became concerned about *Respondent's* wellbeing, a concern that should not be their burden to bear.

MYERS R-RFP1 8142

OIE Investigative Report - 2021-00477 (FINAL).pdf

While Respondent has been disciplined for his violations of university policy and FERPA, aside the present matter, OIE recommends that management review the entirety of this record, to include the findings herein as well as Respondent's communications with his students, to determine appropriate disciplinary action up to and including termination.

OIE would remind all parties of their obligation pursuant to the University's *Reporting Misconduct and Protection from Retaliation Policy* and Nondiscrimination Policy, which strictly prohibit retaliation "against anyone who, in good faith, reports misconduct, or who participates in an investigation of misconduct."

MYERS R-RFP1 8143