## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHARLES NEGY,

     *Plaintiff,*

v.

                               CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; in their official capacities;
S. KENT BUTLER, ALEXANDER
CARTWRIGHT, TOSHA DUPRAS,
MICHAEL JOHNSON, NANCY
MYERS, in their individual capacities,

     *Defendants.*

_____/

## JOINT PRETRIAL STATEMENT

Plaintiff, CHARLES NEGY ("Plaintiff"), and Defendants S. KENT BUTLER, ALEXANDER CARTWRIGHT, TOSHA DUPRAS, MICHAEL JOHNSON, and NANCY MYERS, in their individual capacities (collectively "Defendants"), pursuant to Local Rule 3.06(b) and this Court's Case Management and Scheduling Order dated August 7, 2023 (Doc. 33), hereby submit the following Joint Pretrial Statement:

### I.    Basis for the Court's Jurisdiction

This Court has original jurisdiction under 28 U.S.C. § 1331.

### II.    Statement of the Action

This matter arises from the Defendants' alleged involvement in a workplace investigation of Plaintiff and the subsequent decision to terminate Plaintiff's

employment from the University of Central Florida ("UCF").

## III.    Statements of Position

Plaintiff alleges that Defendants investigated and terminated him in retaliation for his protected speech, which he engaged in on his personal Twitter/X account, in violation of his First Amendment rights.

Defendants deny Plaintiff's allegations and maintain that the investigation is not an adverse employment action and that the investigation and subsequent termination of Plaintiff's employment were for legitimate, non-retaliatory reasons. Defendant Butler maintains he had no involvement in either the decision to investigate or terminate Plaintiff. Defendant Myers maintains she had no involvement in the decision to terminate Plaintiff. And Defendants Cartwright, Dupras, and Johnson maintain that while they did not make the decision to investigate Plaintiff, that the decision to terminate Plaintiff was based on the findings regarding Plaintiff's classroom conduct in the OIE Report, which was issued following the investigation. All Defendants maintain that they are entitled to qualified immunity.

## IV.    Exhibits

Please see Exhibit A and Exhibit B attached for a listing of each party's exhibits and any objections thereto.

## V.    Witnesses

Please see Exhibit C and Exhibit D attached for a listing of each party's witnesses, the likelihood of their testimony, and any objections thereto.

## VI.    Expert Witnesses

2

None designated.

## VII.    Type and Amount of Monetary Damages

Plaintiff asserts that his damages include the following: a. Compensatory damages (Costs of selling home, loss of equity in home, moving expenses, health care costs, attorneys' fees related to UCF's investigation, emotional distress); b. Punitive damages; c. Attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k).

Defendants deny Plaintiff's entitlement to any damages (compensatory or punitive) and make no claim for monetary damages at this time, but reserve the right to pursue recovery of their attorneys' fees and costs as allowed by applicable law and rules.

## VIII.    Deposition(s) Offered in Lieu of Live Testimony

A. Plaintiff's List of Depositions: none.

B. Defendant's List of Depositions: none.

## IX.    Admitted Facts

1.      UCF is a public body corporate constitutionally created to oversee an institution of higher education and learning.

2.      In 1998, Plaintiff was hired by UCF as an Assistant Professor and is currently employed by UCF as a tenured Associate Professor of psychology.

3.      During the relevant time period, Johnson served as the Provost for UCF.

4.      During the relevant time period, Dupras served as the Interim Dean of the College of Sciences.

5.    During the relevant period, Butler was the Interim Chief Diversity, Equity, and Inclusion Officer.

6.    During the relevant time period, Myers was the Director of the Office of Institutional Equity. As OIE's Director, Myers oversaw UCF's compliance with various federal civil rights laws that apply to institutions of higher education, including but not limited to, Title IX of the Education Amendments of 1972, Title VI and Title VII of the Civil Rights Act of 1964, and Section 503 and 504 of the Rehabilitation Act of 1973.

7.    During the relevant time period, Cartwright was the President of UCF.

8.    Between May 29, 2020 and June 3, 2020, Plaintiff posted on his personal Twitter/X account his view that African Americans are not systematically oppressed in the United States in response to the ongoing controversy over George Floyd's death. Many UCF students, faculty, staff, and members of the public complained about these tweets. The hashtag #UCFfirehim was used on Twitter by unknown third parties to call for Plaintiff's termination. Butler, Cartwright, Johnson, Myers and Dupras did not use this hashtag. By the afternoon of June 4, the university had received hundreds of emails concerning Plaintiff.

9.    Plaintiff's tweets were made as a private citizen on a matter of public concern.

10.    Shortly thereafter, Butler, Cartwright, Johnson, and Dupras received an influx of complaints about Plaintiff's tweets and Plaintiff's conduct in the classroom, many demanding his termination.

4

11.     Sometime before 8:00 am on the morning of June 4, 2020, Rhonda Bishop, Myers' supervisor and Vice President for Compliance & Risk, called Myers to inform her UCF had received complaints about Plaintiff's tweets and his classroom conduct. The complaints were forwarded to Myers.

12.     On June 4, 2020, Butler, Cartwright, and Johnson issued a statement entitled "Addressing Intolerance in our Community." The statement mentioned Plaintiff's Twitter posts and also acknowledged receipt of complaints concerning his classroom behavior. The statement also informed current and former students of how to report abusive or discriminatory behavior by any faculty or staff member.

13.     On June 4, 2020, Dupras sent an email message to all College of Sciences students, faculty, staff, alumni, and supporters in response to emails she had received about Plaintiff.

14.     On the morning of June 4, 2020, Myers printed the complaints she had received concerning Plaintiff and created two piles, separating complaints about Plaintiff's tweets from those about his classroom conduct to assess which were within OIE's jurisdiction.

15.     Throughout June and July 2020, OIE gathered information concerning Plaintiff's classroom conduct. UCF received hundreds of complaints about Plaintiff's classroom conduct, including over 100 complaints from UCF's Integrity Line. This inquiry was conducted, in part, to review allegations of discrimination and harassment under federal civil rights statutes.

16.     On July 17, 2020, OIE sent Plaintiff a Notice of Investigation.

5

17.    On August 7, 2020 and August 14, 2020, Myers interviewed Plaintiff via Zoom with his legal counsel present, reviewing all allegations about his classroom conduct and other conduct violating UCF policies.

18.    Between June and December 2020, six OIE investigators, two OIE administrative assistants, and Myers investigated the allegations; they interviewed hundreds of witnesses, conducted climate checks on students in Plaintiff's classes, and reviewed IntegrityLine Reports, documents from witnesses, Plaintiff's course recordings and materials, and student evaluations.

19.    On January 4, 2021, Myers met with Bishop, Dupras, Johnson, and Chuck Reilly, Associate Provost for Contract Compliance & Administrator Support, to discuss the findings in the draft OIE report. Based on the totality of the findings, Plaintiff's termination was recommended at that meeting.

20.    On January 5, 2021, Plaintiff was placed on paid administrative leave.

21.    On January 13, 2021, Myers signed and published the OIE Report.

22.    The same day, Dupras issued Plaintiff a Notice of Intent to Terminate his employment with UCF.

23.    On January 29, 2021, Dupras provided Plaintiff his Notice of Termination, effective at the close of business on that day.

24.    Following a grievance and arbitration under his Collective Bargaining Agreement, Plaintiff was reinstated effective May 2022. Plaintiff has not asserted a claim for lost wages or benefits.

**X.    Agreed Principles of Law**

6

1.    In order to prove a claim of First Amendment retaliation, Plaintiff must show as to each individual Defendant:

i.    Butler's, Cartwright's, Dupras', Johnson's, or Myers' actions were under color of state law;

ii.    Plaintiff engaged in protected activity;

iii.    Butler, Cartwright, Dupras, Johnson, or Myers took an adverse employment action against Plaintiff;

iv.    Plaintiff's protected activity was a motivating factor in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decision to take an adverse employment action against Plaintiff; and

v.    Plaintiff suffered damages because of the adverse employment action.

*See* 11th Circuit Model Jury Instructions; *Keeton v. Anderson-Wiley*, 664 F.3d 865, 878 (11th Cir. 2011); *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).

2.    In order to establish a causal connection, the plaintiff must show that the individual defendant was subjectively motivated to take the adverse action because of the protected speech. *Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir. 2008).

3.    Once the plaintiff shows that his protected conduct was a motivating factor, the burden shifts to the defendant to show that she/he would have taken the same action in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

4. "Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities." *May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1327 (11th Cir. 2017) (citations omitted). Overcoming a state official's qualified immunity defense ordinarily involves a two-part inquiry. This Court must consider: (1) whether the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated; and (2) whether the right violated was clearly established. *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

5. The Court should consider whether the factual scenario that the officials faced is fairly distinguishable from the circumstances facing the government officials in a previous case. *Gaines v. Wardynski*, 871 F.3d 1203, 1207-10 (11th Cir. 2017).

6. In order to recover punitive damages against a defendant, Plaintiff must demonstrate that the individual Defendant acts were done with malice or reckless indifference to Plaintiff's federally protected rights. A person acts with malice when their conduct is motivated by evil motive or intent. A person acts with reckless indifference to the protected federal rights of another person when the person engages in conduct with a callous disregard for whether the conduct violates those protected federal rights. *See Anderson v. City of Atlanta,* 778 F.2d 678, 688 (11th Cir. 1985) (citing *Smith v. Wade,* 461 U.S. 30 (1983)); *See* 11th Circuit Model Jury Instructions.

## XI.    Statement of Each Issue of Fact

1. Whether Plaintiff's protected speech was a motivating factor in each individual Defendant's decision to take adverse employment action(s) against him.

8

2.      Whether initiation of the investigation against Plaintiff well might have dissuaded a reasonable worker from engaging in protected speech.

3.      Whether Butler was involved in the decision to initiate an investigation or the decision to terminate Plaintiff's employment.

4.      Whether Myers was involved in the decision to terminate Plaintiff's employment.

5.      Whether Cartwright, Johnson, or Dupras were involved in the decision to initiate an investigation into Plaintiff.

6.      Whether Plaintiff has proven his claims for compensatory and/or punitive damages, and if so, in what amounts.

7.      Whether Butler was a decision-maker in Negy's termination.

8.      Whether Myers was a decision-maker in Negy's termination.

9.      Whether any individual Defendant would have taken the same action(s) with respect to Plaintiff even in the absence of his protected speech.

10.      Whether Plaintiff can establish that any individual Defendant's proffered legitimate, non-retaliatory reason for terminating his employment was pretextual.

## XII.   Statement of Each Issue of Law

1.      Whether Plaintiff can establish, as to any Defendant, a causal connection between his protected activity and his adverse employment action to state a retaliation claim.

2.      If Plaintiff established a causal connection, as to any Defendant, whether that Defendant can show they would have made the same decision absent Plaintiff's protected speech.

3.      Whether OIE's investigation constituted an adverse employment action.

4.      Whether OIE's initiation of the investigation constituted an adverse employment action.

5.      Whether Butler was a decision-maker in Negy's termination, such that he can be individually liable under § 1983.

6.      Whether Myers was a decision-maker in Negy's termination, such that she can be individually liable under § 1983.

7.      Whether any individual Defendant established their affirmative defense(s) including, without limitation, that the Defendant would have taken the same action(s) with respect to Plaintiff even in the absence of his protected speech.

8.      Whether Plaintiff can establish that any of the individual Defendant's legitimate, non-retaliatory reason for terminating his employment was pretextual.

9.      Whether Defendants are entitled to qualified immunity.

10.     In the event of a verdict for Plaintiff, any limitations on damages based on the failure to mitigate, set off, statutory damage caps, and other applicable law to any award.  Defendants further contend that limitations on damages include whether Plaintiff's alleged damages were caused by a constitutional deprivation and whether Plaintiff met the standard for punitive damages against any of the individual Defendants.

## XIII.  Pending Motions and Unresolved Issues

1.      Defendant, S. Kent Butler's Motion for Summary Judgment (Doc. 59);

2.      Defendant, Nancy Myers' Motion for Summary Judgment (Doc. 61);

3.      Defendants, Tosha Dupras, Michael Johnson, and Alexander Cartwright's Motion for Summary Judgment (Doc. 60);

4.      Plaintiff's Unopposed Motion to Stay Case Management and Trial Deadlines (Doc. 95); and

5.      Defendant's Omnibus Motion in Limine (Doc. 98).

## XIV.  Statement Regarding Usefulness of Further Settlement Discussions

The Parties have continued to engage in settlement conversations, but it is uncertain whether the Parties will be able to resolve the issues in this case without the need for judicial intervention. In the event the Parties are able to resolve their disputes, they will promptly notify the Court when an agreement is reached.

**In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.**

Respectfully submitted on May 5, 2025.


*/s/ Samantha K. Harris*
**SAMANTHA K. HARRIS**
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072
sharris@allenharrislaw.com
(610) 634-8258
*Admitted pro hac vice*

**JOSHUA ENGEL**

*/s/ Richard L. Barry*
**RICHARD L. BARRY, ESQ.**
Florida Bar No. 360650
Richard.Barry@gray-robinson.com
Lead Trial Counsel
**KATHERINE W. KATZ, ESQ.**
Florida Bar No. 1022526
Katherine.Katz@gray-robinson.com
**JULIE M. ZOLTY**
Florida Bar No.: 1036454

Engel & Martin, LLC
4660 Duke Drive, Ste 101
Mason, OH 45040
Telephone: 513-445-9600
engel@engelandmartin.com
*Admitted pro hac vice*
**DAVID R. OSBORNE**
Florida Bar No.: 70186
Goldstein Law Partners, LLC
4651 Salisbury Rd., Suite 400
Jacksonville, FL 32256
Telephone: 610-949-0444
dosborne@goldsteinlp.com
*Counsel for Plaintiffs*

Julie.Zolty@gray-robinson.com
**GRAY ROBINSON, P.A.**
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: (407) 843-8880
Facsimile: (407) 244-5690
**KRISTIE HATCHER-BOLIN**
Florida Bar No. 521388
Kristie.Hatcher-bolin@gray-
robinson.com
**GRAY ROBINSON, P.A.**
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on May 5, 2025, a true and correct copy of the foregoing was filed through the CM/ECF system which will serve an electronic copy on all parties of record.

*/s/ Richard L. Barry*
**RICHARD L. BARRY, ESQ.**
Florida Bar No. 360650

#63647344 v3

12