# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHARLES NEGY,

      *Plaintiff,*

v.                               CASE NO.: 6:23-cv-00666-CEM-DCI

BOARD OF TRUSTEES OF THE
UNIVERSITY OF CENTRAL
FLORIDA; in their official capacities;
S. KENT BUTLER, ALEXANDER
CARTWRIGHT, TOSHA DUPRAS,
MICHAEL JOHNSON, NANCY
MYERS, in their individual capacities,

      *Defendants.*

_____/

**JOINT PROPOSED JURY INSTRUCTIONS**

      *[11th Circuit Pattern Jury Instruction - 1.1 General Preliminary Instruction]*

Members of the Jury:

      Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

      It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence:</u>

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations. Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw

or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Charles Negy, claims the Defendants, S. Kent Butler, Alexander Cartwright, Tosha Dupras, Michael Johnson, and Nancy Myers, retaliated against Negy for his protected speech by initiating an investigation into his classroom conduct for which he was ultimately terminated.

The Defendants deny Negy's claims and maintains that all actions they each individually took, which vary from person to person, with respect to Plaintiff's employment were for legitimate, non-retaliatory reasons.

Burden of proof:

Negy has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Negy must prove that, in light of all the evidence, what he claims is more likely true than not.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," the Defendants have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Defendants must prove for any affirmative defense. After considering all the evidence, if you decide that the Defendants have successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking

face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial</u>:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove. Next, Negy will present his witnesses and ask them questions. After Negy questions the witness, Defendants may ask the witness questions – this is called "cross-examining" the witness. Then Defendants will present their witnesses, and Negy may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

*[11th Circuit Pattern Jury Instruction - 1.4 Jury Questions, adopted 05/29/2013]*

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any
  questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror
  questions. If you have a question for a particular witness, you must

submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

*[11th Circuit Pattern Jury Instruction - 1.5 Interim Statements]*

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

*[11th Circuit Pattern Jury Instruction – 3.1 Introduction]*

It's my duty to instruct you on the rules of law that you must use in deciding

this case.  After I have finished all the instructions, and after you have heard the parties'

closing arguments, you will go to the jury room and begin your discussions, sometimes

called deliberations.

*[11th Circuit Pattern Jury Instruction – 3.2 The Duty to Follow Instructions – No Corporate
Party Involved]*

Your decision must be based only on the evidence presented here. You must
not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—
and you must follow all of my instructions as a whole. You must not single out or
disregard any of the instructions on the law.

*[11th Circuit Pattern Jury Instruction – 3.3 Consideration of Direct and Circumstantial
Evidence; Argument of Counsel; Comments by the Court]*

As I said before, you must consider only the evidence that I have admitted in
the case. Evidence includes the testimony of witnesses and the exhibits admitted. But
anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about
any factual issue in this case. Except for my instructions to you on the law, you should
disregard anything I may have said during the trial in arriving at your own decision
about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence, you may use reasoning and common sense to make
deductions and reach conclusions. You shouldn't be concerned about whether the
evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has
actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that
tend to prove or disprove a fact. There's no legal difference in the weight you may give
to either direct or circumstantial evidence.

*[11th Circuit Pattern Jury Instruction – 3.4 Credibility of Witnesses]*

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?
2. Did the witness have any particular reason not to tell the truth?
3. Did the witness have a personal interest in the outcome of the case?
4. Did the witness seem to have a good memory?
5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
6. Did the witness appear to understand the questions clearly and answer them directly?
7. Did the witness's testimony differ from other testimony or other evidence?

*[11th Circuit Pattern Jury Instruction – 3.5.1 Impeachment of Witnesses Because of
Inconsistent Statements]*

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time, a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

*[11th Circuit Pattern Jury Instruction – 3.7.1 Responsibility of Proof – Plaintiff's Claims –
Preponderance of the Evidence]*

In this case it is the responsibility of Plaintiff, Charles Negy, to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Negy's claims are more likely true than not true.

If the proof fails to establish any essential part of Negy's claims by a preponderance of the evidence, you should find for Defendants (and against Negy) as to those claims.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Negy's claims by a preponderance of the evidence, you should find for Defendants as to that claim(s).

*[11th Circuit Pattern Jury Instruction – 3.7.2 Responsibility of Proof – Affirmative Defenses*
*Preponderance of the Evidence]*

In this case, the Defendants, S. Kent Butler, Alexander Cartwright, Tosha Dupras, Michael Johnson, and Nancy Myers assert the affirmative defense of same decision defense. Even if the Plaintiff proves his claims by a preponderance of the evidence, the Defendants can prevail in this case if they can individually prove an affirmative defense by a preponderance of the evidence.

You should consider each individual Defendant separately.

I caution you that the Defendants do not have to disprove the Plaintiff's claims, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

## ADDITIONAL INSTRUCTION

You must consider <u>Plaintiff's claims against each Defendant separately and individually</u>. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendants.  <u>If</u> you find <u>a </u>defendant liable for compensatory or punitive damages<u>, that must not affect your verdict</u>  as to any other defendants.


Modeled after *Ninth Circuit Pattern Instruction* 1.13 and *Eleventh Circuit Pattern Instruction* B10.4.

**COUNT I**

*[11th Circuit Pattern Jury Instruction – 4.1 Public Employee – First Amendment Claim – Discharge or Failure to Promote – Free Speech on Matter of Public Concern – Including "Same Decision" Defense]*

**PLAINTIFF'S PROPOSED INSTRUCTION 4.1**

In this case, Negy claims that Dupras, Cartwright, Johnson, Butler, and/or Myers, while acting "under color" of state law, intentionally deprived Negy of his constitutional right to free speech by investigating and/or terminating him from employment for statements he made on a matter of public concern on X, formerly Twitter.

Dupras, Cartwright, Johnson, Butler, and Myers deny Negy's claims and assert that Negy was investigated and/or terminated for legitimate, non-retaliatory reasons (including, by example, engaging in discriminatory harassment in the classroom, and failing to report sexual harassment or misconduct by a teaching assistant).

Under the First Amendment to the Constitution of the United States, a public employee has a right to freedom of speech on matters of public concern. It is unlawful for a public employer to take action against a public employee because the employee exercises his First Amendment rights by speaking on a matter of public concern.

To succeed on his claim, Negy must prove each of the following facts by a

preponderance of the evidence:

First:    Butler's, Cartwright's, Dupras's, Johnson's, and/or Myers' actions were "under color" of state law;

Second:  Negy engaged in protected activity, i.e., made statements on a matter of public concern via his personal X, formerly Twitter, account;

Third:   Butler, Cartwright, Dupras, Johnson, and/or Myers made the decision to investigate and/or terminate Negy;

Fourth: Negy's protected activity was a motivating factor in Butler's, Cartwright's, Dupras's, Johnson's, and/or Myers's decision to investigate and/or terminate Negy; and

Fifth:   Negy suffered damages because of Butler's, Cartwright's, Dupras's, Johnson's, and/or Myers' actions.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, the parties have agreed that Butler, Cartwright, Dupras, Johnsons, and Myers acted "under color" of state law so you should accept that as a true and proven fact.

For the second element, the parties have also agreed that Negy's X, formerly Twitter, posts were statements on a matter of public concern, so you should accept that as a true and proven fact.

For the third element, you must decide whether Cartwright, Johnson, Dupras, Myers, or Butler made the decision to investigate and/or terminate Negy from employment.

For the fourth element, you must decide whether Negy's protected speech was

a "motivating factor" in Butler's, Cartwright's, Dupras', Johnson's, or Myers'
decisions. To prove that Negy's protected speech was a substantial or motivating
factor in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decisions, Negy does
not have to prove that his protected speech was the only reason for Butler's,
Cartwright's, Dupras', Johnson's, or Myers' actions. It is enough if Negy proves that
his protected speech influenced Butler's, Cartwright's, Dupras', Johnson's, or
Myers' decisions. If Negy's protected speech made a difference in Butler's,
Cartwright's, Dupras', Johnson's, or Myers' decisions, you may find that it was a
motivating factor in the decision.

Butler, Cartwright, Dupras, Johnson, and Myers claim Negy's protected
speech was not a motivating factor in their decisions and that Negy was investigated
and/or terminated for his discriminatory harassment in the classroom. A public
employer may not take action against a public employee because the employee
exercised protected First Amendment rights. But a public employer may investigate
and terminate a public employee for any other reason, good or bad, fair or unfair. If
you believe any Defendant's reason for the decision to investigate and/or terminate
Negy, and you find that the decision was not motivated by Negy's protected speech,
you must not second guess this decision and you must not substitute your own
judgment for any of the Defendants' judgment – even if you do not agree with it.

As I have explained, Negy has the burden to prove that his protected speech

was a motivating factor in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decision to investigate and/or terminate Negy. I have explained to you that evidence can be direct or circumstantial. To decide whether Negy's protected speech was a motivating factor in any Defendant's decision to investigate and/or terminate Negy, you may consider the circumstances of Butler's, Cartwright's, Dupras', Johnson's, or Myers' decision. For example, you may consider whether you believe the reason Butler, Cartwright, Dupras, Johnson, or Myers gave for their individual decision. If you do not believe the reason they gave for their individual decision, you may consider whether the reason was so unbelievable that it was a cover-up to hide the true unconstitutional reasons for the decision.

If you find that Negy's protected speech was a "motivating" factor in the decision to investigate and/or terminate Negy, you must decide whether Negy suffered damages as a result. If the damages would not have existed except for the investigation and/or termination, then you may find that Negy suffered those damages because of the investigation and/or termination.

If you find in Negy's favor for each fact he must prove, you must decide whether Butler, Cartwright, Dupras, Johnson, or Myers has shown by a preponderance of the evidence that he or she would have made the same decision even if he or she had not taken Negy's protected speech into account. If you find that Negy would have been investigated and/or terminated for reasons other than his

protected speech, your verdict should be for Butler, Cartwright, Dupras, Johnson, and/ or Myers .

If you find for Negy and against Butler, Cartwright, Dupras, Johnson, and/ or Myers on this defense, you must consider Negy's compensatory damages.

When considering the issue of Negy's compensatory damages, you should determine what amount, if any, has been proven by Negy by a preponderance of the evidence as full, just and reasonable compensation for all of Negy's damages as a result of the investigation or termination, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Butler, Cartwright, Dupras, Johnson, and/ or Myers. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Negy has proved them by a preponderance of the evidence, and no others:

(a) The value of out-of-pocket losses or expenses; and
(b) Emotional pain and mental anguish.

Negy is not claiming any lost wages or benefits.  To determine the amount of Negy's out of pocket losses or expenses against each Defendant, if any, you should consider evidence of the actual economic loss sustained by Negy.

To determine whether and how much Negy should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Negy does not have to introduce evidence of a monetary

value for intangible things like mental anguish. You will determine what amount fairly compensates him for his claim. There is no exact standard to apply, but the award should be fair in light of the evidence.Negy also claims that Butler's, Cartwright's, Dupras', Johnson's, or Myers' acts were done with malice or reckless indifference to Negy's federally protected rights, which would entitle him to punitive damages in addition to compensatory damages. Negy must prove by a preponderance of the evidence that he is entitled to punitive damages. You will only reach the issue of punitive damages if you find that Negy has proved the elements of his claim against Butler, Cartwright, Dupras, Johnson, or Myers, and you award Negy compensatory damages against that particular Defendant.

If you find for Negy and find that Butler, Cartwright, Dupras, Johnson, and/or Myers acted with malice or reckless indifference to Negy's federally protected rights, the law allows you, in your discretion, to award Negy punitive damages as a punishment, and as a deterrent to others.

A person acts with malice if the person's conduct is motivated by evil intent or motive. A person acts with reckless indifference to the protected federal rights of another person when the person engages in conduct with a callous disregard for whether the conduct violates those protected federal rights.

If you find that punitive damages should be assessed, you may consider the evidence regarding Butler's, Cartwright's, Dupras', Johnson's, or Myers' financial

resources in fixing the amount of such damages. You also may assess punitive damages against one or more of the individual Defendants, and not others, or against more than one individual defendant in different amounts.

*Summary of Defendants' Objections*:

Defendants maintain the instruction should include directions addressing mitigation, as modified from Model Instruction 4.1. Defendants raised mitigation as an affirmative defense in their Answers, but because Plaintiff is not claiming lost wages or benefits, its own instruction is modified to address other failures to mitigate. (Docs. 42-46). Additionally, Supreme Court case law directs that the only compensatory damages awardable for constitutional violations are those that are caused by the constitutional violation. *See also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986)("Consequently, 'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'") (quoting *Carey v. Piphus*, 435 U.S., at 254, 98 S.Ct., at 1047). As set forth in their Motion in Limine, Plaintiff's alleged losses from the sale of his home were self-inflicted, voluntary losses that were not caused by any alleged violation of his First Amendment rights. Moreover, the instruction is inconsistent with other instructions to the extent it does not require the jury to consider the claims for

punitive damages against each defendant individually, including, if applicable,

their individual resources.

**DEFENDANTS' PROPOSED INSTRUCTION 4.1**

In this case, Negy claims that Dupras, Cartwright, Johnson, Butler, and/or Myers, while acting "under color" of state law, intentionally deprived Negy of his constitutional right to free speech by investigating and/or terminating him from employment for statements he made on a matter of public concern on X, formerly Twitter.

Dupras, Cartwright, Johnson, Butler, and Myers deny Negy's claims and assert that Negy was investigated and/or terminated for legitimate, non-retaliatory reasons (including, by example, engaging in discriminatory harassment in the classroom, and failing to report sexual harassment or misconduct by a teaching assistant).

Under the First Amendment to the Constitution of the United States, a public employee has a right to freedom of speech on matters of public concern. It is unlawful for a public employer to take action against a public employee because the employee exercises his First Amendment rights by speaking on a matter of public concern.

To succeed on his claim, Negy must prove each of the following facts by a preponderance of the evidence:

First:   Butler's, Cartwright's, Dupras's, Johnson's, and/or Myers' actions were "under color" of state law;

Second: Negy engaged in protected activity, i.e., made statements on a matter of public concern via his personal X, formerly Twitter,

account;

Third:    Butler, Cartwright, Dupras, Johnson, and/or Myers made the
decision to investigate and/or terminate Negy;

Fourth:    Negy's protected activity was a motivating factor in Butler's,
Cartwright's, Dupras's, Johnson's, and/or Myers's decision to
investigate and/or terminate Negy; and

Fifth:    Negy suffered damages because of Butler's, Cartwright's,
Dupras's, Johnson's, and/or Myers' actions.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, the parties have agreed that Butler, Cartwright, Dupras, Johnsons, and Myers acted "under color" of state law so you should accept that as a true and proven fact.

For the second element, the parties have also agreed that Negy's X, formerly Twitter, posts were statements on a matter of public concern, so you should accept that as a true and proven fact.

For the third element, you must decide whether Cartwright, Johnson, Dupras, Myers, or Butler made the decision to investigate and/or terminate Negy from employment.

For the fourth element, you must decide whether Negy's protected speech was a "motivating factor" in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decisions. To prove that Negy's protected speech was a substantial or motivating factor in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decisions, Negy does

not have to prove that his protected speech was the only reason for Butler's, Cartwright's, Dupras', Johnson's, or Myers' actions. It is enough if Negy proves that his protected speech influenced Butler's, Cartwright's, Dupras', Johnson's, or Myers' decisions. If Negy's protected speech made a difference in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decisions, you may find that it was a motivating factor in the decision.

Butler, Cartwright, Dupras, Johnson, and Myers claim Negy's protected speech was not a motivating factor in their decisions and that Negy was investigated and/or terminated for his classroom misconduct. A public employer may not take action against a public employee because the employee exercised protected First Amendment rights. But a public employer may investigate and terminate a public employee for any other reason, good or bad, fair or unfair. If you believe any Defendant's reason for the decision to investigate and/or terminate Negy, and you find that the decision was not motivated by Negy's protected speech, you must not second guess this decision and you must not substitute your own judgment for any of the Defendants' judgment – even if you do not agree with it.

As I have explained, Negy has the burden to prove that his protected speech was a motivating factor in Butler's, Cartwright's, Dupras', Johnson's, or Myers' decision to investigate and/or terminate Negy. I have explained to you that evidence can be direct or circumstantial. To decide whether Negy's protected speech was a

motivating factor in any Defendant's decision to investigate and/or terminate Negy, you may consider the circumstances of Butler's, Cartwright's, Dupras', Johnson's, or Myers' decision. For example, you may consider whether you believe the reason Butler, Cartwright, Dupras, Johnson, or Myers gave for their individual decision. If you do not believe the reason they gave for their individual decision, you may consider whether the reason was so unbelievable that it was a cover-up to hide the true unconstitutional reasons for the decision.

If you find that Negy's protected speech was a "motivating" factor in the decision to investigate and/or terminate Negy, you must decide whether Negy suffered damages as a result. If the damages would not have existed except for the investigation and/or termination, then you may find that Negy suffered those damages because of the investigation and/or termination.

If you find in Negy's favor for each fact he must prove, you must decide whether Butler, Cartwright, Dupras, Johnson, or Myers has shown by a preponderance of the evidence that he or she would have made the same decision even if he or she had not taken Negy's protected speech into account. If you find that Negy would have been investigated and/or terminated for reasons other than his protected speech, your verdict should be for Butler, Cartwright, Dupras, Johnson, and/ or Myers .

If you find for Negy and against Butler, Cartwright, Dupras, Johnson, and/ or

Myers on this defense, you must consider Negy's compensatory damages.

When considering the issue of Negy's compensatory damages, you should determine what amount, if any, has been proven by Negy by a preponderance of the evidence as full, just and reasonable compensation for all of Negy's damages as a result of the investigation or termination, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Butler, Cartwright, Dupras, Johnson, and/ or Myers. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Negy has proved them by a preponderance of the evidence, and no others:

(a) The value of out-of-pocket expenses; and
(b) Emotional pain and mental anguish.

Negy is not claiming any lost wages or benefits. To determine the amount of Negy's out of pocket expenses against each Defendant, if any, you should consider evidence of the actual economic loss sustained by Negy that was caused by the constitutional deprivation.

To determine whether and how much Negy should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Negy does not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly compensates him for his claim. There is no exact standard to apply, but the

award should be fair in light of the evidence.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Negy to be reasonably diligent in avoiding actions that would increase his damages. To prove that Negy failed to mitigate damages, Defendants must prove by a preponderance of the evidence that Negy did not make reasonably diligent efforts avoid actions that would increase his damages.

If you find that Defendants proved by a preponderance of the evidence that Negy failed to mitigate damages, then you should reduce the amount of Negy's damages by the amount of losses Negy reasonably could have avoided if he had not taken actions that unnecessarily increased his damages. Negy also claims that Butler's, Cartwright's, Dupras', Johnson's, or Myers' acts were done with malice or reckless indifference to Negy's federally protected rights, which would entitle him to punitive damages in addition to compensatory damages. Negy must prove by a preponderance of the evidence that he is entitled to punitive damages. You will only reach the issue of punitive damages if you find that Negy has proved the elements of his claim against Butler, Cartwright, Dupras, Johnson, or Myers, and you award Negy compensatory damages against that particular Defendant.

If you find for Negy and find that Butler, Cartwright, Dupras, Johnson, and/

or Myers acted with malice or reckless indifference to Negy's federally protected rights, the law allows you, in your discretion, to award Negy punitive damages as a punishment, and as a deterrent to others.

A person acts with malice if the person's conduct is motivated by evil intent or motive. A person acts with reckless indifference to the protected federal rights of another person when the person engages in conduct with a callous disregard for whether the conduct violates those protected federal rights.

If you find that punitive damages should be assessed, you may consider the evidence regarding Butler's, Cartwright's, Dupras', Johnson's, or Myers' individual financial resources in fixing the amount of such damages. You also may assess punitive damages against one or more of the individual Defendants, and not others, or against more than one individual defendant in different amounts.

*See also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986)("Consequently, 'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'") (quoting *Carey v. Piphus*, 435 U.S., at 254, 98 S.Ct., at 1047)

*Summary of Plaintiff's Objections*: Plaintiff believes the jury should be entitled to consider both his losses (such as the loss of equity in his home) and his expenses (such as his moving expenses), while Defendants believe they should be entitled to consider only his expenses. Defendants have also requested an instruction on mitigation that deviates significantly from the Eleventh Circuit pattern instructions. The Eleventh Circuit pattern instructions on mitigation pertain only to discharge or

failure to promote and specifically relate to a Plaintiff's efforts to mitigate by being reasonably diligent in seeking suitable alternative employment. Here, because Plaintiff was reinstated with back pay following arbitration, he is not seeking any lost wages, and the pattern instruction on mitigation is inapplicable. Instead, Defendants request a novel mitigation instruction asking whether Plaintiff has been "reasonably diligent in avoiding actions that would increase his damages." Defendants' request contains vague and confusing language not found in the pattern instructions and should be denied. Finally, Defendants have requested that the jury be instructed to consider whether economic losses sustained by Negy were caused by the constitutional deprivation. To the extent that Defendants intend to argue that Negy's economic losses were caused by the denial of 6 months' notice of termination rather than the termination itself, and that the denial of 6 months' notice was a contractual rather than a constitutional violation, Plaintiff contends this is a question of law for the Court and not one that should be part of the jury instructions.

*[11th Circuit Pattern Jury Instruction – 3.8.1 Duty to Deliberate When Only the Plaintiff
Claims Damages]*

Of course, the fact that I have given you instructions concerning the issue of
Plaintiff's damages should not be interpreted in any way as an indication that I believe
that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree, but you
are to consider each Defendant individually and their separate actions against the
Defendant. Your deliberations are secret, and you'll never have to explain your verdict
to anyone.

Each of you must decide the case for yourself, but only after fully considering
the evidence with the other jurors. You must discuss the case with one another and try
to reach an agreement. While you're discussing the case, don't hesitate to reexamine
your own opinion and change your mind if you become convinced that you were
wrong. But don't give up your honest beliefs just because others think differently or
because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your
only interest is to seek the truth from the evidence in the case.

*[11th Circuit Pattern Jury Instruction – 3.9 Election of Foreperson Explanation of Verdict Forms]*

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it, and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court deputy. The court deputy will bring it to me, and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.